# EXHIBIT A

Law Division Motion Section Initial Case Management Dates for CALENDARS (A,B,C,D,E,F,H,R,X,Z) will be heard In Person.
All other Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https.//www.cookcountycourt,org/HOME Zoom-Links Agg4906_SelectTab/12
Court Date: CmsHearingStart

FILED
11/7/2024 3:06 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L012540
Calendar, Y
30087176

FILED DATE: 11/7/2024 3:06 PM 2024L012540

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| KINGSBRIDGE HOLDINGS, LLC, and TRILOGY LEASING CO., LLC. | ) | |
| Plaintiff, | ) | |
| v. | ) | No. _______________ |
| PITNEY BOWES, INC., and PITNEY BOWES PRESORT SERVICES, LLC | ) | |
| Defendants. | ) | |

**COMPLAINT AT LAW**

Plaintiffs KINGSBRIDGE HOLDINGS, LLC, ("KINGSBRIDGE") and TRILOGY LEASING, CO., LLC, by their attorneys Hinshaw & Culbertson LLP, complains of Defendant PITNEY BOWES, INC. ("PBI") and PITNEY BOWES PRESORT SERVICES, LLC ("PBPS") as follows.

*Breach of Contract*

1. KINGSBRIDGE is a Nevada limited liability company registered to do business in Illinois, with its principal place of business in Lake Forest, Lake County, Illinois. KINGSBRIDGE is directly and indirectly (through subsidiaries) in various lines of business, including equipment leasing and servicing.

2. Trilogy Leasing Co., LLC ("TRILOGY") is a New Jersey limited liability company with offices in Cranbury, New Jersey and its corporate headquarters in Lake Forest, Illinois. Trilogy is in the equipment leasing business. TRILOGY is indirectly owned by, and controlled by, KINGSBRIDGE.

FILED DATE: 11/7/2024 3:06 PM 2024L012540

3. PBI is a Delaware corporation registered to do business in Illinois (since 1941), with its headquarters in Stamford, Connecticut. PBI regularly does business in Illinois, and has had a longstanding presence in the Chicago area, with Cook County offices in downtown Chicago (230 W. Monroe St.) and Elk Grove Village (2001 Arthur Avenue), as well as a DuPage County facility in Lisle (2200 Western Court).

4. PBPS is a Delaware limited liability company registered to do business in Illinois, with its corporate headquarters in Stamford, Connecticut. PBPS is a subsidiary or affiliate controlled by PBI and, like PBI, regularly does business in Illinois from its sorting facility in Aurora Illinois and from PBI's Cook County offices.

5. DRF Logistics, LLC is a Delaware limited liability company with its principal place of business in Cranbury, New Jersey. DRF, LLC is a Texas limited liability company with its principal place of business in Austin, Texas. DRF, LLC is a wholly owned subsidiary of DRF Logistics, LLC. These entities are collectively referred to as "DRF," and both are affiliates directly or indirectly controlled by PBI. DRF is the corporate vehicle for PBI's failed e-commerce business arm.

6. PBI and PBPS are subject to personal jurisdiction in this Court because they regularly do business in Illinois.

7. Venue is proper in this County under 735 ILCS 5/2-101(1), PBI does business and has multiple offices in Cook County.

8. On or about November 2, 1999, TRILOGY and PBI entered into a Master Lease Agreement, which was amended from time to time thereafter, the terms of which were expressly incorporated into any equipment supplement entered into between TRILOGY and PBI, to be executed from time to time ("Equipment Supplements"). A copy of the Master Lease Agreement

FILED DATE: 11/7/2024 3:06 PM 2024L012540

is attached as Exhibit A. Per the terms of the Master Lease Agreement and by reference in each of the Equipment Supplements, PBI is primarily liable for all leases entered into with its subsidiaries and affiliates. The named lessees under the Equipment Supplements are either PBI or subsidiaries or affiliates of PBI as co-lessees, and have effectively (and with explicit authority; see Amendment 2 below) acted as PBI's agents in dealing with TRILOGY and KINGSBRIDGE.

9. PBPS is a co-lessee with PBI on certain of the Equipment Supplements, and thus jointly and severally liable with PBI on those leases.

10. Amendment 2 to the Master Lease Agreement (on page 7 of 74), entered into on or about May 20, 2020, provides as follows:

> Lessor and PBI Bowes Inc. acknowledge and agree that any of PBI Bowes Inc.'s subsidiaries or affiliates (an entity in which PBI Bowes Inc. owns a controlling interest) may enter directly into an Equipment Supplement, and PBI Bowes Inc. shall be jointly and severally liable with said subsidiary or affiliate for the obligations under such Equipment Supplement and the Master Lease as it relates to such Equipment Supplement and the Equipment described therein. Such subsidiary or affiliate shall be considered an additional Lessee with PBI Bowes Inc. for the purposes of said Equipment Supplement.

11. Under the Master Lease Agreement, as amended, PBI's subsidiaries and affiliates can bind PBI by executing Equipment Supplements with TRILOGY, and any default on any Equipment Supplement renders PBI liable on the Equipment Supplements with TRILOGY. This is true whether or not PBI itself signed any given Equipment Supplement.

12. DRF collectively and cumulatively executed approximately 80 Equipment Supplements, copies of which are attached as Group Exhibit B.

13. TRILOGY subsequently assigned each of the Equipment Supplements included in Exhibit B to KINGSBRIDGE. Copies of those assignments are attached as Group Exhibit C.

14. PBPS executed approximately an additional 30 other Equipment Supplements with TRILOGY. Copies of those Equipment Supplements are attached as Exhibit D.

FILED DATE: 11/7/2024 3:06 PM 2024L012540

15. TRILOGY subsequently assigned all of those Equipment Supplements to KINGSBRIDGE as well, and those assignments are included in Exhibit C.

16. KINGSBRIDGE and its assignor TRILOGY have fully performed all of their obligations under the Master Lease Agreement and all the Equipment Supplements.

17. On July 24, 2024, PBI and its affiliates Pitney Bowes Global Logistics LLC, and Pitney Bowes Global Ecommerce Inc. entered into an Asset Purchase Agreement with Stord Fulfillment, LLC ("Stord"). Certain of the assets which PBI and its affiliates purported to sell to Stord were equipment and other property leased to PBI and its affiliates under the Master Lease Agreement and Equipment Supplements. This purported sale was consummated without notice to or consent from TRILOGY or KINGSBRIDGE, and constitutes an event of default under the lease documents.

18. On or about August 8, 2024, PBI sold its controlling interest in DRF Logistics, LLC to Hilco Commercial Industrial, LLC, which also constitutes an event of default under the lease documents.

19. On August 8, 2024, DRF (both entities) filed a voluntary Chapter 11 bankruptcy in the US Bankruptcy Court for the Western District of Texas.

20. All of the Equipment Supplements attached as Group Exhibit B are in default as of the bankruptcy filing, which is an event of default, and also, payments have ceased and other events of default such as the transfer of substantially all of the assets of an entity to which a particular Equipment Supplement relates and the attempted repudiation and/or recharacterization of the leases have occurred.

21. PBI is liable to KINGSBRIDGE and/or TRILOGY on each of the leases in Group Exhibit B, for all amounts due and owing thereunder, including accelerated rent and other charges

FILED DATE: 11/7/2024 3:06 PM 2024L012540

provided for in the Master Lease Agreement (Exhibit A) and the Equipment Supplements (Exhibit B).

22. On or about October 3, 2024, KINGSBRIDGE delivered to PBI a demand letter, a copy of which is attached as Exhibit E.

23. As set forth in the demand letter, there is due and owing from PBI to KINGSBRIDGE on the DRF leases a total of approximately $75M, plus other charges which continue to accrue.

24. There is a further approximately $20M due and owing from Defendants to Plaintiffs on the non-DRF Equipment Supplements (Exhibit D).

WHEREFORE, KINGSBRIDGE and TRILOGY pray the Court for judgment against PBI in excess of $50,000, including all charges accruing under the relevant leases, and including but not limited to the cost to recover Equipment, plus interest as provided for in the lease documents, plus its attorneys' fees and costs of suit, per the lease documents.

KINGSBRIDGE HOLDINGS, LLC and
TRILOGY LEASING CO., INC.

By: /s/ Marcos Reilly

Dated: November 7, 2024

Marcos Reilly
HINSHAW & CULBERTSON LLP
151 N. Franklin St., Suite 2500
Chicago, IL 60606
(312) 704-3779
mreilly@hinshawlaw.com
Firm ID # 90384

Law Division Motion Section Initial Case Management Dates for CALENDARS (A,B,C,D,E,F,H,R,X,Z) will be heard In Person.
All other Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https.//www.cookcountycourt,org/HOME Zoom-Links Agg4906_SelectTab/12
Court Date: CmsHearingStart

FILED
11/7/2024 3:06 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L012540
Calendar, Y
30087176

FILED DATE: 11/7/2024 3:06 PM 2024L012540

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| KINGSBRIDGE HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. ______________ |
| | ) | |
| PITNEY BOWES, INC., and PITNEY BOWES PRESORT SERVICES, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT A TO COMPLAINT**

MASTER LEASE AGREEMENT

FILED DATE: 11/7/2024 3:06 PM 2024L012540

# Trilogy Leasing Co., LLC

I, Lori Ann Eilbacher, Chief Administrative Officer of Trilogy Leasing Co., LLC, hereby certify as of the 29th day of April, 2024, that the attached is (i) a true and complete copy of the original Master Equipment Lease Agreement dated November 2, 1999 between Trilogy Leasing Co., LLC, and Pitney Bowes Inc. and (ii) the Certificate of Authority executed and delivered to the undersigned.

Lori Ann Eilbacher
Chief Administrative Officer

2551 Route 130 ▲ Cranbury, NJ 08512 ▲ Tel: 609-860-9900 ▲ Fax: 609-860-9974 ▲ www.trilogyleasing.com

DocuSign Envelope ID: 11A6AFFA-F293-433C-B6C3-868813301287

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

FILED DATE: 11/7/2024 3:06 PM 2024L012540

Trilogy Leasing Co., LLC

Counterpart No.___ of 3 serially numbered and manually executed counterparts. No security interest may be created through the transfer and possession of any counterpart other than Counterpart No. 1.

Amendment Number 3 dated November 10, 2022 ("Amendment"), to Master Equipment Lease Agreement ("Master Lease") dated as of November 2, 1999, by and between Trilogy Leasing Co., LLC ("Lessor") and Pitney Bowes Inc. (the "Lessee" or "PB") as amended by Amendment Number 1 dated as of February 25, 2019, and Amendment Number 2 dated as of May 24, 2020. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Master Lease as amended.

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree to clarify and amend the Master Lease as follows:

**SECTION 6. INDEMNITY**

The following shall be added as the last sentence to the first paragraph of Section 6:

"Notwithstanding the immediately preceding sentence, PB's right to defer payment or discharge any claim or demand referred to in Section 6 is only applicable if PB has (a) bonded over any exposure of Lessor or its assigns with respect to such claim (as reasonably requested by Lessor or its assigns) and has paid actual expenses of Lessor or its assigns incurred in connection with any such claim."

**SECTION 11. CASUALTY OCCURRENCES AND OBSOLESCENCE AND SETTLEMENT THEREFOR**

The following language shall be added to the end of Section 11.2.

"Notwithstanding the foregoing, the rights afforded to PB under this Section 11.2 shall not be available to PB for any Equipment that is the subject of Equipment Supplement Numbers 47, 50, 51 and 77 and any Equipment Supplement entered into after August 1, 2022."

**SECTION 14. DEFAULTS.**

The following additional language shall be added to Section 14.1 captioned "Events of Default" after section (e) of such section:

"(f) The following additional events shall be considered Events of Default under Equipment Supplement Numbers 47, 50, 51 and 77 and any Equipment Supplement entered into after August 1, 2022 (but, except as expressly set forth herein, not any Equipment Supplement entered into prior to such date):

(1) PB ceases to do business as a going concern.

(2) PB defaults under any other contractual obligation to Lessor (including any assignee of Lessor which becomes Lessor) and such default has not been cured within the prescribed period(s) permitted under the contract related to such obligation.

(3) A Material Adverse Effect occurs. Material Adverse Effect means, with respect to PB, a material adverse effect on the business, financial condition or results of operations of PB and its subsidiaries, taken as a whole.

COPY VIEW

DocuSign Envelope ID: 11A6AFFA-F293-433C-B6C3-868813301287
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

FILED DATE: 11/7/2024 3:06 PM 2024L012540



(4) If PB (i) takes any action that does or will result in a change of ownership of twenty-five percent (25%) or more of PB (except for any such change resulting solely from a Merger Event (as and to the extent set forth, conditioned, and defined in this paragraph)), (ii) transfers substantially all the assets of an entity to which a particular Equipment Supplement relates, (iii) transfers substantially all of its assets to one person, unless, in each case (A) such person executes and delivers to Lessor an agreement satisfactory in form and substance to Lessor, in its reasonable discretion, containing such person's effective assumption of, and its agreement to pay, perform, comply with and otherwise be liable for, in a due and punctual manner, all of PB's obligations having previously arisen, or then or thereafter arising, under the Lease ("Assumption Acknowledgment"); and (B) Lessor is satisfied, in its reasonable discretion, as evidenced in writing by Lessor, as to the creditworthiness of such person and as to such person's conformance to the other standard criteria then used by Lessor for such purposes (subclauses (A) and (B) are hereinafter the "Change Event Conditions"). Any merger or consolidation of PB with any other entity (any such transaction, a "Merger Event") shall not be a violation of this Section if (1) no Event of Default has occurred and is then continuing, (2) PB gives Lessor notice no later than 10 days after the consummation of such transaction, and (3) the Change Event Conditions set forth in this section have been fully satisfied."

The following additional remedy shall be added to Section 14.2 captioned "Remedies":

"(f) Solely in respect of Equipment Supplement Numbers 47, 50, 51 and 77 and any Equipment Supplement entered into after August 1, 2022, Lessor and its assigns shall have the right to accelerate all Periodic Rents under the Equipment Supplement that is the subject of the Event of Default and demand immediate payment thereof."

COPY VIEW

**SECTION 21. MISCELLANEOUS**

The following is added as Section 21.13:

"21.13 Neither PB nor any guarantor ("Guarantor") of PB's obligations hereunder, if applicable, shall allow a Blocked Person to have an ownership interest in or control of PB or any Guarantor; provided, however, that the Parties acknowledge and agree that PB, as a publicly traded company, shall not be deemed in violation of this provision to the extent that Block Persons purchase shares of PB's stock on the NYSE exchange. "Blocked Person" means any person or entity that is now or at any time (i) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectorial sanctions identification list, or (ii) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government or (iii) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over banks or other financial institutions who commonly act as collateral assignees of Lessor (collectively, "Financial Institutions"), to be a person with whom such Financial Institutions are not permitted to extend credit to or with regard to whom, a lessee relationship may result in penalties against such Financial Institutions or limitations on a lessor's or Financial Institutions' ability to enforce a transaction."

DocuSign Envelope ID: 11A6AFFA-F293-433C-B6C3-868813301287

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

FILED DATE: 11/7/2024 3:06 PM 2024L012540

Trilogy Leasing Co., LLC



Except as herein modified, the terms and conditions of the Master Lease shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed. Each party warrants and represents that its respective signatories whose signatures appear below have been and are hereunder duly authorized to execute this Amendment.

**Lessor: Trilogy Leasing Co., LLC**

By: DocuSigned by: Jeffrey A. Liebenthal 9C5B679D58024B9...

Name: Jeffrey A. Liebenthal

Title: President and Chief Executive Officer

**Lessee: Pitney Bowes Inc.**

By: DocuSigned by: Ana Maria Chadwick AFFCA1C1F387462... DS RP

Name: Ana Maria Chadwick

Title: Executive Vice President and Chief Financial Officer

COPY VIEW

FILED DATE: 11/7/2024 3:06 PM 2024L012540

DocuSign

## Certificate Of Completion

Envelope Id: 11A6AFFAF293433CB6C3868813301287
Status: Completed
Subject: PB MLA AMEND 3
Vault with eOriginal: Yes
Source Envelope:
Document Pages: 3
Signatures: 2
Certificate Pages: 5
Initials: 1
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Envelope Originator:
Lori Ann Eilbacher
150 N. Field Drive
Suite 193
Lake Forest, IL 60045
leilbacher@trilogyleasing.com
IP Address: 73.150.110.100

## Record Tracking

| Status | Holder | Location |
|---|---|---|
| Status: Original<br>11/10/2022 6:45:42 PM | Holder: Lori Ann Eilbacher<br>leilbacher@trilogyleasing.com | Location: DocuSign |
| Status: Authoritative Copy (1 of 1 documents)<br>11/17/2022 8:52:36 AM | Holder: Lori Ann Eilbacher<br>leilbacher@trilogyleasing.com | Location: DocuSign |
| Status: Receipt Confirmed<br>11/17/2022 8:53:01 AM | Holder: Lori Ann Eilbacher<br>leilbacher@trilogyleasing.com | Location: Vaulting - Trilogy |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Robert Prussin<br>Robert.Prussin@pb.com<br>Security Level: Email, Account Authentication (None) | DS<br>RP<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 136.226.72.109 | Sent: 11/10/2022 6:48:25 PM<br>Viewed: 11/11/2022 10:00:00 AM<br>Signed: 11/11/2022 10:00:11 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 11/11/2022 10:00:00 AM<br>ID: c5773151-3ade-4970-8f0d-7fb49693ed47 | | |
| Ana Maria Chadwick<br>Ana.Chadwick@pb.com<br>EVP & CFO, Pitney Bowes<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Ana Maria Chadwick<br>AFFCA1C1F387462...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 136.226.74.110 | Sent: 11/11/2022 10:00:15 AM<br>Viewed: 11/17/2022 7:23:23 AM<br>Signed: 11/17/2022 8:15:05 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 11/17/2022 7:23:23 AM<br>ID: 86bfffdb-89f1-4f42-8c83-a252e0464a07 | | |
| Jeffrey Liebenthal<br>jliebenthal@trilogyleasing.com<br>Pres<br>Trilogy Leasing Co., LLC<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Jeffrey A. Liebenthal<br>9C5B679D58024B9...<br><br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 38.107.249.53 | Sent: 11/17/2022 8:15:07 AM<br>Viewed: 11/17/2022 8:52:07 AM<br>Signed: 11/17/2022 8:52:30 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 4/7/2022 5:40:59 PM<br>ID: 987dff36-6c31-4581-8d87-c0422d16f937 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

FILED DATE: 11/7/2024 3:06 PM 2024L012540

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| alicia Jones<br>ajones@trilogyleasing.com<br>CA<br>TLC<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | COPIED | Sent: 11/17/2022 8:52:32 AM<br>Viewed: 11/17/2022 9:02:12 AM |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 11/10/2022 6:48:25 PM |
| Certified Delivered | Security Checked | 11/17/2022 8:52:07 AM |
| Signing Complete | Security Checked | 11/17/2022 8:52:30 AM |
| Completed | Security Checked | 11/17/2022 8:52:32 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

FILED DATE: 11/7/2024 3:06 PM 2024L012540

# Trilogy Leasing Co., LLC

Counterpart No. 1 of 3 serially numbered and manually executed counterparts. No security interest may be created through the transfer and possession of any counterpart other than Counterpart No. 1.

Amendment Number 2 dated May 4, 2020 ("Amendment"), to Master Equipment Lease Agreement ("Master Lease") dated as of November 2, 1999, by and between Trilogy Leasing Co., LLC ("Lessor") and Pitney Bowes Inc. ("Lessee"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Master Lease.

Lessor and Lessee acknowledge and agree that in accordance with the Master Lease, subsidiaries and affiliates of Lessee may enter into Equipment Supplements on their own and be treated as a "Lessee" for purposes of the Equipment Supplement without the need for Pitney Bowes Inc. to also execute the Equipment Supplement. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree to clarify and amend the Master Lease as follows:

**ADDITIONAL LESSEES**

Lessor and Pitney Bowes Inc. acknowledge and agree that any of Pitney Bowes Inc.'s subsidiaries or affiliates (an entity in which Pitney Bowes Inc. owns a controlling interest) may enter directly into an Equipment Supplement, and Pitney Bowes Inc. shall be jointly and severally liable with said subsidiary or affiliate for the obligations under such Equipment Supplement and the Master Lease as it relates to such Equipment Supplement and the Equipment described therein. Such subsidiary or affiliate shall be considered an additional Lessee with Pitney Bowes Inc. for the purposes of said Equipment Supplement.

Except as herein modified, the terms and conditions of the Master Lease shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed. Each party warrants and represents that its respective signatories whose signatures appear below have been and are hereunder duly authorized to execute this Amendment.

**Lessor: Trilogy Leasing Co., LLC**

DocuSigned by:
By: Jeffrey A. Liebenthal
9C5B679D58024B9...

Name: Jeffrey A. Liebenthal

Title: President and Chief Executive Officer

**Lessee: Pitney Bowes Inc.**

DocuSigned by:
By: Stanley J. Sutula III
3C3D343AC5D942D...

Name: Stanley J. Sutula III

Title: Executive Vice President
and Chief Financial Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

DocuSign SECURED

## Certificate Of Completion

Envelope Id: 46CFDEA336B240F7B168905958E5B623 Status: Completed
Subject: Please DocuSign: EQUIPMENT SUPPLEMENT 22 (SAVOY) AND RELATED DOCUMENTS, PLUS AMENDMENT TO THE MLA
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 29 | Signatures: 22 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 1 | Lori Eilbacher |
| AutoNav: Enabled | | 2551 Route 130 |
| EnvelopeId Stamping: Enabled | | Suite 2 |
| Time Zone: (UTC-05:00) Eastern Time (US & Canada) | | Cranbury, NJ 08152 |
| | | leilbacher@trilogyleasing.com |
| | | IP Address: 50.239.88.22 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>5/14/2020 1:59:15 PM | Holder: Lori Eilbacher<br>leilbacher@trilogyleasing.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Peter Panzarella<br>peter.panzarella@pb.com<br>Security Level: Email, Account Authentication (None) | DS<br>PP<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 70.40.101.181 | Sent: 5/15/2020 6:54:51 AM<br>Viewed: 5/15/2020 6:55:42 AM<br>Signed: 5/15/2020 6:56:49 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 5/15/2020 6:55:42 AM<br>ID: de76977b-9ece-496b-ba8b-32ffdbd1ce98 | | |
| Stanley J. Sutula III<br>stan.sutula@pb.com<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Stanley J. Sutula III<br>3C3D343AC5D942D...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 75.134.7.67 | Sent: 5/15/2020 6:56:51 AM<br>Viewed: 5/15/2020 7:33:12 AM<br>Signed: 5/15/2020 7:33:56 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 5/15/2020 7:33:12 AM<br>ID: 00e09b8a-ad2b-428e-9d35-c13a27dcc5c5 | | |
| Jeffrey Liebenthal<br>jliebenthal@trilogyleasing.com<br>Pres<br>Trilogy Leasing Co., LLC<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Jeffrey A. Liebenthal<br>9C5B679D58024B9...<br><br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 69.112.166.180 | Sent: 5/15/2020 7:33:59 AM<br>Viewed: 5/15/2020 8:29:02 AM<br>Signed: 5/15/2020 8:32:24 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 12/12/2012 10:19:28 PM<br>ID: a3435cd9-afc4-4bac-bc99-6a278e0ed6f4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

FILED DATE: 11/7/2024 3:06 PM 2024L012540

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |
| Robert Prussin<br>robert.prussin@pb.com<br>Security Level: Email, Account Authentication (None) | VIEWED<br><br>Using IP Address: 70.40.101.181 | Sent: 5/14/2020 2:14:16 PM<br>Viewed: 5/15/2020 6:54:51 AM |

**Electronic Record and Signature Disclosure:**
Accepted: 5/15/2020 6:54:51 AM
ID: a9c2babc-4d8a-4faa-b391-6a35b395e22b

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |
| Robert Prussin<br>robert.prussin@pb.com<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 5/15/2020 8:32:26 AM |

**Electronic Record and Signature Disclosure:**
Accepted: 5/15/2020 6:54:51 AM
ID: a9c2babc-4d8a-4faa-b391-6a35b395e22b

| Witness Events | Signature | Timestamp |
| --- | --- | --- |

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 5/15/2020 8:32:26 AM |
| Certified Delivered | Security Checked | 5/15/2020 8:32:26 AM |
| Completed | Security Checked | 5/15/2020 8:32:26 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

FILED DATE: 11/7/2024 3:06 PM 2024L012540

**CONSUMER DISCLOSURE**

From time to time, Trilogy Leasing Co., LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through your DocuSign, Inc. (DocuSign) Express user account. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the Ã¦I agreeÃ† button at the bottom of this document.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. For such copies, as long as you are an authorized user of the DocuSign system you will have the ability to download and print any documents we send to you through your DocuSign user account for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign Ã´Withdraw ConsentÃ¶ form on the signing page of your DocuSign account. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use your DocuSign Express user account to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through your DocuSign user account all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

FILED DATE: 11/7/2024 3:06 PM 2024L012540

**How to contact Trilogy Leasing Co., LLC:**
You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: dfong@trilogyleasing.com

**To advise Trilogy Leasing Co., LLC of your new e-mail address**
To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at dfong@trilogyleasing.com and in the body of such request you must state: your previous e-mail address, your new e-mail address. We do not require any other information from you to change your email address..
In addition, you must notify DocuSign, Inc to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in DocuSign.
**To request paper copies from Trilogy Leasing Co., LLC**
To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to dfong@trilogyleasing.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.
**To withdraw your consent with Trilogy Leasing Co., LLC**
To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your DocuSign account, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
ii. send us an e-mail to dfong@trilogyleasing.com and in the body of such request you must state your e-mail, full name, IS Postal Address, telephone number, and account number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

| | |
|---|---|
| Operating Systems: | Windows2000Â¬ or WindowsXPÂ¬ |
| Browsers (for SENDERS): | Internet Explorer 6.0Â¬ or above |
| Browsers (for SIGNERS): | Internet Explorer 6.0Â¬, Mozilla FireFox 1.0, NetScape 7.2 (or above) |
| Email: | Access to a valid email account |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Ã² Allow per session cookies<br>Ã² Users accessing the internet behind a Proxy Server must enable HTTP 1.1 settings via proxy connection |

** These minimum requirements are subject to change. If these requirements change, we will provide you with an email message at the email address we have on file for you at that time providing you with the revised hardware and software requirements, at which time you will have the right to withdraw your consent.
**Acknowledging your access and consent to receive materials electronically**
To confirm to us that you can access this information electronically, which will be similar to

other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the Ã¦I agreeÃ† button below.
By checking the Ã¦I AgreeÃ† box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Trilogy Leasing Co., LLC as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by Trilogy Leasing Co., LLC during the course of my relationship with you.

FILED DATE: 11/7/2024 3:06 PM 2024L012540

# Trilogy Leasing Co., LLC

Counterpart No. 1 of 3 serially numbered and manually executed counterparts. No security interest may be created through the transfer and possession of any counterpart other than Counterpart No. 1.

Amendment Number 1 dated February 25, 2019 ("Amendment"), to Master Equipment Lease Agreement ("Master Lease") dated as of November 2, 1999, by and between Trilogy Leasing Co., LLC ("Lessor") and Pitney Bowes Inc. ("Lessee"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Master Lease.

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree to amend the Master Lease as follows:

ELECTRONIC SIGNATURE: Lessor and Lessee agree and consent that Equipment Supplements and related documents to the Master Lease may be signed via an electronic signature program, such as Adobe Sign, DocuSign, and HelloSign, by which such Equipment Supplements and related documents shall be executed or converted, stored and assigned in such a manner that, pursuant to Section 9-105 of the Uniform Commercial Code, the electronic signature program shall be deemed to have control of the single authoritative copy of such E-document and such electronic signatures shall be deemed and treated as legal, valid and binding and "Original" documents (if designated as such) as if manual signatures were personally delivered and shall be admissible as evidence thereof.

Except as herein modified, the terms and conditions of the Master Lease shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed. Each party warrants and represents that its respective signatories whose signatures appear below have been and are hereunder duly authorized to execute this Amendment.

**Lessor: Trilogy Leasing Co., LLC**

By: Jeffrey A. Liebenthal

Name: Jeffrey A. Liebenthal

Title: President and Chief Executive Officer

**Lessee: Pitney Bowes Inc.**

By: Stanley J. Sutula

Name: Stanley J. Sutula III

Title: Chief Financial Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

ORIGINAL

Rev: 11/1/99

# MASTER EQUIPMENT LEASE AGREEMENT

THIS MASTER EQUIPMENT LEASE, (the "Master Lease") dated as of November 2, 1999 by and between Pitney Bowes Inc., a Delaware corporation, or any of its subsidiaries or affiliates, as the case may be (hereinafter "PB") and Trilogy Leasing Co., LLC, a New Jersey limited liability company (hereinafter "Lessor").

**WITNESSETH:**

## SECTION 1. MASTER LEASE AND EQUIPMENT SUPPLEMENTS

This Master Lease contemplates that the Lessor shall lease and let to PB the equipment ("Equipment") listed in, and as more fully described in Schedule 1 to any Equipment or other Supplement hereto ("Equipment Supplement") that may contemporaneously herewith or hereafter be executed by Lessor and PB in accordance with the terms and conditions of such Equipment Supplement. This Master Lease, and each of the terms, covenants, conditions, provisions, and agreements herein contained will be incorporated in each Equipment Supplement thereby in full to the same extent as if each of the terms, covenants, conditions, provisions and agreements had been repeated and set forth in full therein, except to the extent that the Master Lease may conflict, or be inconsistent with the terms and provisions of such Equipment Supplement. In the event of any inconsistency or conflict between the terms and provisions of the Master Lease and terms and provisions of an Equipment Supplement, the terms and provisions of such Equipment Supplement shall prevail. It is the intention of the parties hereto that each Equipment Supplement shall constitute a separate lease, apart and distinct from the Master Lease or any other Equipment Supplement thereto. The form of Equipment Supplement, together with all Schedules and Exhibits thereto, is annexed hereto and made part hereof. This Master Lease has been executed solely for incorporation purposes and does not constitute a lease of equipment, in and of itself. An Equipment Supplement and the Master Lease are together sometimes hereinafter referred to as the "Lease".

## SECTION 2. LEASE TERM

The lease term for the Equipment ("Lease Term") is defined and shall commence upon the installation by the Equipment manufacturer's or other installer's field engineering staff or delivery by the Equipment Manufacturer or other vendor as indicated in an Equipment Supplement and acceptance by PB (the "Commencement Date") and shall expire on the "Expiration Date" as set forth in Schedule 2 to such Equipment Supplement unless earlier terminated, renewed or extended and the Equipment returned, all according to the terms of the Master Lease and such Equipment Supplement (together, the "Lease").

PB will signify its acceptance of the Equipment by the execution and delivery to the Lessor of a Certificate of Acceptance substantially in the form of Exhibit 1 attached to such Equipment Supplement and made a part thereof.

PB's execution and delivery to the Lessor of the Certificate of Acceptance with respect to the Equipment shall conclusively establish as between the Lessor and PB that the Equipment is acceptable to and accepted by PB under the Lease, notwithstanding any defect with respect to design, manufacture, condition or in any other respect, and that the Equipment is in good order and condition and appears to conform to the specifications applicable thereto.

## SECTION 3. RENTS AND PAYMENT DATES

Rent for the Equipment and Rent Payment Dates. PB agrees to pay the Lessor "Periodic Rent" for each Item of Equipment computed as follows:

(a) On the Periodic Rent Payment Date as set forth in Schedule 2 to an Equipment Supplement next succeeding the Commencement Date thereof ("First Periodic Rent Payment Date") the sum of (i) an amount equal to the "Daily Lease Rate Factor" as set forth in Schedule 2 multiplied by the Manufacturer's Invoice Cost of such

FILED DATE: 11/7/2024 3:06 PM 2024L012540

Item of Equipment for each day elapsed from and including the Commencement Date to the First Periodic Rent Payment Date for such Item of Equipment plus (ii) an amount equal to the "Periodic Lease Rate Factor" as set forth in such Schedule 2 multiplied by the Manufacturer's Invoice Cost of such Item of Equipment.

(b) On each Periodic Rent Payment Date thereafter to and including the "Last Periodic Rent Payment Date" as set forth in such Schedule 2 an amount equal to the Periodic Lease Rate Factor as set forth in such Schedule 2 multiplied by the Manufacturer's Invoice Cost of such Item of Equipment.

The Periodic Rent amount above may be changed in accord with the terms of the Lease including early termination, casualty, renewal, and similar provisions hereof. However, any such revision as a result of the above provisions shall be in writing between the parties either in the form of a lease amendment or other appropriate documentation.

Subject to the provisions of the Lease, PB agrees that its obligation to pay the Periodic Rent, Casualty Value, Termination Value, and other sums payable by it hereunder is unconditional and absolute and is not subject to abatement, offset or counterclaim for any reason whatsoever.

Without it being a condition to payment, Lessor agrees prior to each due date to render to PB a statement for each installment of Periodic Rent which will set forth the amount of such installment together with any sales or use tax payable to the State in which the Equipment may be located from time to time.

The amount of any installment of Periodic Rent remaining unpaid more then ten (10) days after the due date thereof shall bear interest at the prime rate of interest then in effect at Citibank, NA, in New York City plus 2% or the maximum allowable rate under law (the "Penalty Rate"), from and after the due date of such installment.

**SECTION 4. ADDITIONAL SUMS PAYABLE BY PB**

In addition to the Periodic Rent payable by PB under the provisions of Section 3 hereof:

(a) Taxes. PB agrees (i) to pay any and all taxes, assessments, fees and other governmental charges of whatever kind or character and by whomever payable on or relating to each Item of Equipment and on the sale, ownership, use, shipment, transportation, delivery or operation thereof or the exercise of any option, election or performance of an obligation by PB or the Lessor under the Lease, including any penalties or interest thereon to the extent occasioned by PB, which are levied, assessed or imposed during the Lease Term, (ii) to pay all taxes, assessments and charges of the kind above referred to, including any penalties or interest thereon to the extent occasioned by PB, which remain unpaid as of the date of delivery of such Item of Equipment to PB irrespective of when the same may have been levied, assessed or imposed and (iii) to pay all taxes or like charges levied, assessed or imposed on or measured by the rents or other sums payable under the Lease, including any penalties or interest thereon to the extent occasioned by PB, whether such taxes are payable by the Lessor or PB. The foregoing obligations of PB shall include preparation and submission of all necessary filings to the applicable taxing authorities whether such filings shall be, under applicable law, the obligation of the Lessor or PB, and Lessor hereby appoints PB its agent and attorney-in-fact for the purpose of making such filings on behalf of Lessor. Lessor agrees to cooperate fully with PB by executing any documents prepared by PB for filing (where the taxing authority will not accept PB's appointment as agent for Lessor) and forwarding promptly to PB any assessments, tax bills or other correspondence received in connection therewith.

This Section 4(a) shall not be deemed to obligate PB to pay (i) any taxes, fees, assessments and charges which may have been included in the cost of each Item of Equipment as set forth in Schedule 1 to an Equipment Supplement, or (ii) any taxes, fees or other charges based on or measured by net income incurred as the result (whether solely or in part) of business or transactions unrelated to this Lease, or (iii) any income, franchise, and like taxes against the Lessor on or measured by the net income from the rents; provided, however, that PB agrees to pay any such taxes on or measured by rents payable hereunder or the net income therefrom which are in substitution for or relieve PB from any tax which PB would otherwise be obligated to pay under the terms of this Section.

FILED DATE: 11/7/2024 3:06 PM 2024L012540

PB shall not be obligated to pay any amount under this Section 4(a) so long as it shall, in good faith and by appropriate proceedings, be contesting the validity or the amount thereof unless such contest would adversely affect the title of Lessor to an Item of Equipment or would subject it to forfeiture or sale. PB agrees to indemnify and defend the Lessor against any loss, claim, demand or expense including any reasonable legal expense resulting from such non-payment or contest.

The obligations and liabilities of PB under this Section 4(a) which arise during the term of the Lease shall continue in full force and effect notwithstanding the termination of the Lease or the termination of the term thereof whether by expiration of time, by operation of law or otherwise unless and until expressly released by the Lessor.

(b) Cost of Delivery or Installation. The Equipment is to be delivered or installed, as the case may be, on the premises indicated on Schedule 1 to an Equipment Supplement, and PB agrees that it shall pay all costs incurred in transporting and delivering the Equipment to such premises and of any installation (including all rigging and draying charges) or preparation for operation and usage (including any licensing, inspection, customization or similar fees) and shall hold Lessor harmless from any claims for the payment of such costs and charges.

(c) Maintenance, Servicing and Assignment of Warranty. PB agrees to pay all costs, expenses, fees and charges incurred in connection with the use and operation of each Item of Equipment during the Lease Term thereof, including but not limited to, repairs, maintenance, storage and servicing. The Lessor hereby transfers and assigns to PB for and during the term of the Lease, but only so long as PB is not in default thereunder, all of its rights, title and interest in, under and to any manufacturer's warranty in respect of each Item of Equipment, to the extent the same are assignable, and agrees to execute and deliver such further instruments as may be reasonably necessary to enable PB to obtain customary warranty service furnished for each Item of Equipment by the manufacturer thereof ("Manufacturer").

PB agrees to execute at its own expense a Maintenance Contract with the Manufacturer of the Equipment and to keep said contract in force until Equipment is surrendered to the Lessor, and to adhere to the Manufacturer's recommended schedule of preventive maintenance with respect to the Equipment. Said Maintenance Contract shall provide for at least the same services by the Manufacturer as those furnished under the Manufacturer's standard Maintenance Contract for reasonable commercial use of the Equipment, and shall provide for the incorporation of such engineering changes and improvements in the Equipment which are available without additional charge as part of such services. A Maintenance Contract for the Equipment may not be entered into with other than the Manufacturer of the Equipment without the approval of the Lessor which approval will not be unreasonably withheld.

## SECTION 5. PLACE OF PAYMENT OF RENTALS

All Rents payable by PB under Section 3 hereof and all amounts payable by PB under any other Section hereof or under an Equipment Supplement shall be paid to the Lessor at 2551 Route 130, Cranbury, NJ 08512 or at such other place as the Lessor or its assigns may hereafter direct.

## SECTION 6. INDEMNITY

PB does hereby assume, and does hereby agree to indemnify, protect, defend, save and keep harmless the Lessor and any secured assignee referred to in Section 14 hereof and their respective agents and servants, and any assigns of the Lessor from and against any and all losses, damages, injuries, claims (including claims in strict liability or product liability), demands and expenses, including legal expenses, of whatsoever nature arising on account of the use of the Equipment by PB (including incorporation by PB of an invention or attachment to the Equipment resulting in a claimed infringement of patent), or the condition (including without limitation latent or other defects and whether or not discoverable by PB) or operation of the Equipment or any part thereof, and by whomsoever used or operated, during the Lease Term in respect to such Equipment. PB shall not, however, be required to pay or discharge any claim or demand referred to in this Section 6 so long as the validity or the amount

FILED DATE: 11/7/2024 3:06 PM 2024L012540

thereof shall be contested in good faith and by appropriate proceedings in any reasonable manner which will not adversely affect the title of the Lessor to the Equipment or subject the Equipment to forfeiture or sale.

The indemnities and assumptions of liability in this Section 6 shall continue in full force and effect notwithstanding the termination of the Lease, or the termination of the term hereof in respect of the Equipment, whether by expiration of time, by operation of law or otherwise; provided, however, the indemnity and assumption of liability against any claims for patent infringements shall not apply to any alterations or modifications to such Item of Equipment after the Equipment has been returned to Lessor under the provision of the Lease. The Lessor shall give to PB prompt notice of any claim or liability hereby indemnified against, and thereupon PB shall be entitled to control and shall assume full responsibility for the defense of such matter.

**SECTION 7. QUIET ENJOYMENT**

Lessor hereby represents and warrants to PB that Lessor has the full right and authority to enter into this Master Lease and any Equipment Supplement on the terms herein and therein stated, and that, conditioned upon PB performing all of the terms, covenants and conditions of the Lease, and so long as no Event of Default (as defined in Section 14) shall have occurred and be continuing, PB shall peaceably and quietly hold, possess and use the Equipment during the term of the Lease as against any interruptions by Lessor or any person claiming solely by, through, or under Lessor.

**SECTION 8. USE OF THE EQUIPMENT**

PB agrees that, subject to the provisions of Section 19 in respect of permitted subleases, the Equipment will be used principally in the conduct of PB's and/or their direct subsidiary or affiliate(s') business and will at all times be and remain in the possession and control of PB at the Original Site shown in Schedule 1 to an Equipment Supplement or at such other location as PB shall determine, provided that PB shall give written notice promptly to Lessor of any change in location from the State of Original Location of the Equipment. PB shall not permit the removal of the Equipment from its control, or its use or operation outside the continental limits of the United States without the prior written consent of the Lessor, which shall not be unreasonably withheld provided all transportation, site preparation and delivery or installation, as the case may be, shall be at the risk and expense of PB and in accordance with applicable Manufacturer's specifications. PB, however, may permit persons other than its trained employees to use or operate the Equipment provided such persons have appropriate supervision within the control of PB. In connection with any relocation or sublease of the Equipment permitted hereunder or under Section 20 hereof, PB acknowledges that Lessor may execute and file such Uniform Commercial Code Notification or Financing Statements as are necessary for the purpose of protecting and perfecting the interests of Lessor and its assigns in and to the Equipment or Lease, and PB hereby appoints Lessor its agent and attorney-in-fact for the purpose of making any such filings on behalf of PB. PB shall not permit the use or operation of any Item of Equipment in violation of, or contrary to, any applicable insurance coverage.

PB warrants that the Equipment will at all times be used and operated under and in compliance with the laws of the jurisdictions in which the Equipment may be resident or operated, and in compliance with all lawful acts, rules and regulations and orders of any commissions, boards, agencies or other legislative, executive or judicial bodies or officers having power to regulate or supervise the use of such property; provided, however, that PB may in good faith and by appropriate proceedings contest the application of any such rule, regulation or order in any reasonable manner which will not adversely affect the title of the Lessor to the Equipment or subject the same to forfeiture or sale. The Lessor agrees to join in any proceedings in the event such joinder shall be necessary for the proper prosecution of any such proceedings; provided, however, that the Lessor shall have been fully indemnified to its satisfaction against all costs and expenses in connection therewith.

PB warrants that it shall protect Lessor's continuing interest in all Equipment by providing all necessary security measures to adequately safeguard all Equipment from loss due to theft, damage, destruction, conversion, seizure, abandonment, confiscation, sale or concealment by PB or its agents or employees, or any unauthorized use, at all times during the term of the Lease and PB shall promptly reimburse Lessor to the extent of any such loss.

FILED DATE: 11/7/2024 3:06 PM 2024L012540

PB agrees not to cause or permit the placement of any advertising lettering, or other insignia or device on any Item of Equipment without the prior written consent of Lessor, which consent Lessor agrees shall not be unreasonably withheld.

PB further agrees that: (i) it will not permit its rights or interest under the Lease to be subject to any lien, charge or encumbrance; (ii) it will keep the Equipment free and clear of any and all liens, charges and encumbrances which may be levied against or imposed upon it as a result of the failure of PB for any reason to perform or observe any of the covenants and agreements required to be performed or observed by PB under the Lease; (iii) it will keep the Equipment free and clear of any liens, charges, encumbrances or claims of the owner or owners of any interests in the real estate on which it may be installed and any purchaser of or present or future creditor obtaining a lien on such real estate, and will, if requested by the Lessor, obtain and deliver to the Lessor concurrently with the delivery of the Equipment or any portion thereof a waiver of any such liens or claims as to the Equipment in recordable form satisfactory to Lessor; and (iv) it will not assign this Lease or any of its rights under the Lease. Any purported assignment in violation of this Section shall be void and of no force and effect.

**SECTION 9. RISK OF LOSS, REPAIR, DAMAGE AND DESTRUCTION**

PB shall bear the risk of damage, loss, theft or destruction, partial or complete, of the Equipment, subject to the terms of the Lease, from whatsoever source arising (including, but not limited to, collision, malicious mischief, vandalism, falling objects, missiles, glass breakage, fire, smoke, or water damage, riot, war, insurrection or civil commotion), and any and all repairs of any part of the Equipment shall be at the cost and expense of PB and shall constitute accessions to the Equipment, and title thereto shall vest and remain in the Lessor. PB shall at all times, at its own expense, keep the Equipment in good and efficient working order, condition and repair, reasonable wear and tear excepted, and in the event any Item of Equipment is damaged in any respect, PB agrees that it will promptly repair such Item of Equipment at its sole cost and expense, provided, however, that if any Item of Equipment is lost, stolen, destroyed, damaged beyond repair, converted seized confiscated, or abandoned, PB shall not be required to repair the Equipment, and PB shall terminate the applicable Equipment Supplement pursuant to the provisions of Section 11.1 hereof.

Lessor agrees that PB shall be entitled to the proceeds of any claim or right of Lessor or PB against third persons for injury, damage or loss with respect to the Equipment or the use or operation thereof, and PB shall be subrogated to all the Lessor's right of recovery therefor against any other person, firm or corporation. The Lessor shall execute and deliver from time to time such instruments and do such other matters and things as may be necessary or appropriate more fully to vest in PB such proceeds or to effect such subrogation; provided, however, that all costs and expenses, including court costs and attorney's fees, in connection with enforcement of or realizing upon such right of subrogation, shall be borne and paid by PB.

**SECTION 10. ALTERATIONS AND MODIFICATIONS**

PB may make or have made on its behalf alterations or modifications in any Item of Equipment which in the opinion of the Manufacturer are necessary or desirable for the maintenance of the Equipment, provided that no such alteration, or modification, reduces the value or impairs the capabilities or efficiency of the Equipment. The Lessor shall, at PB's sole expense, execute and deliver from time to time such instruments, including but not limited to orders for alterations or modification, and do such other matters and things as may be necessary or appropriate to PB's rights under this Section 10. Any part, attachment, appurtenance or accessory constituting a physical part of the Equipment (whether as an alteration or modification of any existing attachment, appurtenance or accessory or in addition thereto) which is essential to the operation of the Equipment, or which cannot be detached from the Equipment without materially interfering with the operation of the Equipment shall be deemed to be an accession to the Equipment and shall from that time be deemed an Item of Equipment, with title thereto in the Lessor.

FILED DATE: 11/7/2024 3:06 PM 2024L012540

## SECTION 11. CASUALTY OCCURRENCES AND OBSOLESCENCE AND SETTLEMENT THEREFOR

### 11.1 Termination with Respect to Casualty Occurrence

In the event that the Equipment (or any Item of Equipment as shall render the Equipment unfit for permanent use) shall be or become lost, stolen, destroyed, or otherwise rendered unavailable to PB for the remainder of the Lease Term, or in the opinion of the Manufacturer, irreparably damaged, or shall be requisitioned or taken over for a period which exceeds the remaining term of the Lease by any Governmental authority under the power of eminent domain or otherwise during the term of the Lease (any such occurrence, except for any such requisition or taking which by its terms does not exceed the remaining term of the Lease, being hereinafter called a "Casualty Occurrence"), PB shall promptly (after it has knowledge of such Casualty Occurrence) and fully inform the Lessor in regard thereto. PB shall then (i) replace the Equipment with identical equipment or (ii) terminate the Equipment Supplement with respect to the Equipment by paying the Lessor, on the next Periodic Rent Payment Date for which a Casualty Value is shown in Schedule 3 to such Equipment Supplement, or if there be no such date, no later than one hundred twenty (120) days following the date of the Casualty Occurrence, an amount equal to the Casualty Value of the Equipment as indicated on such Schedule for the most recent previous month completed and for which Periodic Rent has been paid. Any installment of Periodic Rent paid by PB after the date of the Casualty Occurrence, up to the date of the payment of the Casualty Value by PB, shall be credited against such Casualty Value amount payable. Upon payment of such Casualty Value, the Equipment Supplement shall terminate in respect thereof and all remaining rights, title and interest of the Lessor, if any, in and to the Equipment shall vest in PB.

The "Casualty Value" of the Equipment shall mean the Casualty Value as defined in Schedule 3 to an Equipment Supplement.

In the event of a Casualty Occurrence as described above, the Casualty Value payment will be paid directly to Lessor by PB on the date required above. When, in the case of insurance proceeds or awards relating to a Casualty Occurrence such are to be paid directly to the Lessor and any Collateral Assignee named as an additional insured, PB shall be entitled to a credit at the time of settlement up to the amount of any Casualty Value payment less the amount of any Periodic Rent or other sums remaining unpaid under the Lease.

### 11.2 Termination with respect to Items of Equipment

If the Equipment or any Item of Equipment (together, in this Section 11.2 "Equipment") having a Manufacturer's Serial or other Identification Number and Invoice Cost as set forth in Schedule 1 to an Equipment Supplement describing such Equipment in excess of $100,000 shall be obsolete or surplus to PB's requirements, in PB's sole judgment, then, if there is provision therefor in such Equipment Supplement, PB may, at its option, upon not less than 90 days prior written notice to Lessor ("Notice of Termination"), terminate such Equipment Supplement with respect to such Equipment after the First Termination Date as contained in Schedule 2 to such Equipment Supplement or after any succeeding Periodic Rent Payment Date for which the Periodic Rent installment payment has been made ("Effective Date of Termination") provided that no Event of Default shall have occurred and be continuing.

During the period from the giving of such notice until the Effective Date of Termination, both Lessor and PB shall use their best efforts to solicit and to obtain firm written bids for the lease of such Equipment, for a term not to exceed the Expiration Date, and each shall promptly submit to the other a copy of each and every offer so received by it and the name and address of the party submitting such bid. On the Effective Date of Termination, Lessor shall lease ("New Lease") such Equipment to the bidder named in the highest certified bid as determined under the present value discount method set forth in this paragraph; provided, however, that any such New Lease, and the proposed Lessee thereunder, shall be subject to the prior written approval of any Assignee of Lessor, which approval PB and Lessor agree such Assignee may withhold in its reasonable discretion. The "Proceeds" of such New Lease shall be the present value of its non-terminable future rents discounted at 1% per annum above the Lease Debt Rate contained in the applicable Equipment Schedule after deducting all reasonable out-of-pocket

FILED DATE: 11/7/2024 3:06 PM 2024L012540

expenses incurred by Lessor in connection with such New Lease. If such Proceeds shall be less than the Termination Value for such Equipment, PB shall upon the Effective Date of Termination pay to Lessor in cash the amount equal to the excess of such Termination Value over the Proceeds. If the Proceeds of the disposition of such Equipment equal or exceed such Termination Value, then the Equipment Supplement shall be terminated with respect to such Equipment as of such date without additional payment by PB.

If there shall be no bid for the lease of the Equipment, PB may, within five (5) days prior to the Effective Date of Termination, revoke the Notice of Termination by giving written notice of such revocation to Lessor, thereby continuing all of its obligations under the Lease. If PB has not revoked its Notice of Termination and there has been, for whatever reason, no lease of the Equipment on the Effective Date of Termination, PB shall pay to Lessor an amount equal to the Termination Value for the Equipment, Lessor shall retain the Equipment, and the Equipment Supplement and all of PB's rights thereunder shall terminate with respect to the Equipment.

Notwithstanding the foregoing, Lessor may elect at any time prior to the Effective Date of Termination not to re-lease the Equipment as provided above. In such event, PB shall surrender such Equipment to the Lessor on the Effective Date of Termination and the "Proceeds" of such Equipment shall be computed using the highest certified bid, in the manner set forth above.

The "Termination Value" of Equipment shall be an amount determined as of the Effective Date of Termination equal to that percentage of the Manufacturer's Invoice Cost of the Equipment as set forth in Schedule 3 to the Equipment Supplement.

11.3 In the event that during the term of the Lease the Equipment requisitioned or taken by any Governmental authority under the power of eminent domain or otherwise for a period which does not exceed the remaining term of the Lease, PB's duty to pay rent shall continue for the duration of such requisitioning or taking. PB shall be entitled to receive and retain for its own account all sums payable for any such period by such Governmental authority as compensation for requisition or taking of possession to an amount equal to the rent paid or payable hereunder for such period, and the balance, if any, shall be payable to and retained by the Lessor as its property.

**SECTION 12. OWNERSHIP**

PB acknowledges and agrees that it has not, and by the execution of the Lease it does not have or obtain, and by payments and performance under the Lease it does not and will not have or obtain any title to the Equipment, nor any property right or interest, legal or equitable therein, except solely as PB under the Lease and subject to all the terms thereof. PB will keep the Equipment free from any markings or labeling which might be interpreted as a claim of ownership thereof by PB or any party other than the Lessor or its assigns.

It is expressly understood that the Equipment shall be and remain personal property notwithstanding the manner in which it may be attached or affixed to, or located upon, realty, and that upon termination of the Lease Term, PB shall have the duty and the Lessor shall have the right to remove the Equipment from the premises whereon the same is located (whether or not affixed or attached to the realty or any building) at the sole cost and expense of PB. The Lessor shall not be liable for any damage caused to the realty or any building by the removal of the Equipment, and PB shall save harmless and indemnify Lessor from any such liability excluding, however, the wrongful acts or negligence of Lessor, its agents or servants.

**SECTION 13. ASSIGNMENT BY LESSOR**

13.1 Subject to the terms of the Lease, Lessor may transfer and make an absolute assignment of its rights to the Equipment and the Lease to a third party assignee, who shall assume all the rights and obligations of Lessor thereunder. The Lessor may also collaterally assign the Lease and the rents and other sums at any time due or to become due at any time owing or payable by PB to the Lessor under any of the provisions of the Lease.

FILED DATE: 11/7/2024 3:06 PM 2024L012540

13.2 No such assignee for collateral purposes shall be obligated to perform any duty, covenant or condition required to be performed by the Lessor under any of the terms of the Lease, but on the contrary, PB by its execution of the Lease acknowledges and agrees that notwithstanding any such assignment each and all such covenants, agreements, representations and warranties of the Lessor shall survive any such assignment and shall be and remain the sole liability of the Lessor and of every person, firm or corporation succeeding (by merger, consolidation, purchase of assets or otherwise) to all or substantially all of the business assets or goodwill of the Lessor. Without limiting the foregoing, PB further acknowledges and agrees that from and after the receipt by PB of written notice of an assignment from the Lessor or the Assignee (i) if so directed, all rents and other sums which are the subject matter of the assignment shall be paid to the assignee thereof at the place of payment designated in the notice, (ii) if such assignment was made for collateral purposes, the rights of any such assignee in and to the rents and other sums payable by PB under any provisions of the Lease shall be absolute and unconditional and shall not be subject to any abatement whatsoever by reason of any damage to or loss or destruction of the Equipment (except as otherwise provided in Section 11 hereof) or by reason of any defect in or failure of title of the Lessor to the Equipment or any interruption from whatsoever cause (other than from the wrongful act of such assignee) in the use, operation or possession of the Equipment or by reason of any indebtedness or liability howsoever and whenever arising of the Lessor to PB or to any other person, firm, corporation or governmental agency or taxing authority or for any other reason or by reason of any willful misconduct or gross negligence of the Lessor; and (iii) the assignee shall have the sole right to exercise all rights, privileges and remedies (either in its own name or in the name of the Lessor for the use and benefit of the assignee) which by the terms of the Lease or by applicable law are permitted or provided to be exercised by the Lessor.

13.3 It is further understood and agreed that if a security interest in the Equipment is granted to an assignee of the rents as additional security for indebtedness of the Lessor, the security agreement covering the Equipment shall expressly provide that the right, title and interest of the secured party thereunder is subject to the right, title and interest of PB in and to the Equipment.

## SECTION 14. DEFAULT

If during the continuance of the Lease, one or more of the following events (hereinafter sometimes called "Events of Default") shall occur:

14.1 Events of Default

(a) Default shall be made in the payment of any part of the rental provided in Section 3 hereof and the Equipment Supplement, and such default shall continue for 15 days after written notice from Lessor to PB specifying such default.

(b) PB shall make or permit any unauthorized assignment or transfer of the Lease or of possession of the Equipment to any party.

(c) Default shall be made in the observance or performance of any other of the covenants, conditions and agreements on the part of PB contained in the Lease and such default shall continue for 30 days after written notice from Lessor to PB specifying such default and demanding the same be remedied. If any event of default is of such a nature that with due diligence and adequate resources it cannot be cured within 10 days, then PB, provided that efforts to cure the default have been commenced, shall not be deemed in final default until 60 days after the initial 10 day period provided herein.

(d) PB shall (1) apply for or consent to the appointment of a receiver, trustee or liquidator of PB or of all or a substantial part of the assets of PB, (2) be unable, or admit in writing its inability, to pay its debts as they mature, (3) make a general assignment for the benefit of creditors, (4) be adjudicated a bankrupt or insolvent or (5) file a voluntary position in bankruptcy or petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any insolvency law or an answer admitting the material allegations of a petition filed against PB in

FILED DATE: 11/7/2024 3:06 PM 2024L012540

any bankruptcy, reorganization or insolvency proceeding, or corporate action shall be taken by PB for the purpose of effecting any of the foregoing; or

(e) An order, judgment or decree shall be entered, without the application, approval or consent of PB hereunder, by any court of competent jurisdiction, approving a petition seeking reorganization of PB, or appointing a receiver, trustee, or liquidator of PB, or of all or a substantial part of the assets of PB, and such order, judgment or decree shall continue unstayed and in effect for any period of 60 consecutive days;

then, in any such case, Lessor, during the continuance of any such Event of Default, at its option, may do any one or more of the following:

14.2 Remedies

(a) Proceed by appropriate court action or actions either at law or in equity to enforce performance by PB, of the applicable covenants of the Lease or to recover damages for the breach thereof; or

(b) By notice in writing to PB terminate PB's rights under the Equipment Supplement with respect to the Equipment and sell the same at public or private sale, as Lessor may determine, provided that PB receives 15 days prior notice of such sale; except to the extent required by paragraph (e) below in the event Lessor elects to exercise its rights under said paragraph with respect to such Equipment in lieu of its rights under paragraph (d) below; or

(c) By notice in writing to PB, terminate PB's rights under the Equipment Supplement with respect to the Equipment and lease the same, as Lessor in its sole discretion may determine, free and clear of any rights of PB and with respect to such action or for any proceeds with respect thereto; except that PB's obligations to pay rent with respect to such Equipment for periods commencing after PB shall have been deprived of possession of such Equipment pursuant to this Section 15 shall be reduced by the net proceeds, if any, received by Lessor from leasing such Equipment to any person other than PB for the same period; or

(d) By notice in writing to PB terminate the Equipment Supplement as to the Equipment, whereupon all rights of PB to the use and possession of such Equipment shall absolutely cease and terminate as though such Equipment Supplement had never been made, but PB shall remain liable as hereinafter provided; and thereupon, Lessor may by its agents enter upon the premises of PB or other premises where any of the Equipment may be and take possession of and/or remove all or any of the Equipment, and PB shall save harmless and indemnify Lessor from any such liability (excluding, however, the wrongful acts or negligence of Lessor, its agents or servants), and thenceforth hold, possess, and enjoy the same free from any right of PB, or its successors or assigns, to use such Equipment for any purposes whatever, but Lessor shall nevertheless, have a right to recover from PB any and all amounts which under the terms of the Lease may be then due or which may have accrued to the date of such termination and also to recover forthwith from PB: (i) as damages for loss of the bargain and not as a penalty an amount which represents the present value at the time of such termination of all rentals for such Equipment which would otherwise have accrued hereunder from the date of such termination to the end of the term of the Lease as to such Equipment, such present value to be computed at an interest rate 2% per annum below the Lease Debt Rate contained in the applicable Equipment Schedule; Lessor will use its best efforts to re-lease the Equipment on such terms as are acceptable to Lessor and all net cash re-lease proceeds subsequently received by Lessor (after deducting all costs and expenses incurred by Lessor in connection with such re-lease) will be reimbursed to PB on account of its obligations hereunder; if the Equipment is re-leased, PB will only be credited with the net cash proceeds received by Lessor after a successful discounting by a third party lender of the remaining rents payable under the re-lease of the Equipment for the period from the commencement date of the re-lease to the scheduled expiration date of the original term of the

FILED DATE: 11/7/2024 3:06 PM 2024L012540

Equipment Schedule; and (ii) any damages in addition thereto which Lessor shall have sustained by reason of the breach of any covenant or covenants of the Lease; or

(e) In the event Lessor, pursuant to Paragraph (b) above, shall have sold any Equipment, Lessor, in lieu of exercising its rights under Paragraph (d) above with respect to such Equipment, may, if it shall so elect, demand that PB pay Lessor and PB shall pay to Lessor, as liquidated damages for loss of a bargain and not as a penalty (in lieu of Periodic Rent hereunder for such Equipment due for periods after the Periodic Rent Payment Date following the date on which such sale occurs), any unpaid Periodic Rent due for periods up to and including such Periodic Rent Payment Date plus the amount of any deficiency between the net proceeds of such sale and the Casualty Value (as provided for in Section 11.1 hereof) computed as of such Periodic Rent Payment Date, together with interest at the Penalty Rate on the amount of such deficiency from such Periodic Rent Payment Date until the date of actual payment.

The remedies of the Lease provided in favor of Lessor shall not be deemed exclusive, but shall be cumulative, and shall be in addition to all other remedies in its favor existing at law or in equity and shall include in all events the right to recover expenses (including reasonable attorney's fees) incurred in pursuing any remedy available to Lessor. However, Lessor shall at all times behave in a commercially reasonable manner so as to mitigate any damages to be paid by PB.

The failure or delay of Lessor in exercising any rights granted it hereunder upon any occurrence of any of the contingencies set forth herein shall not constitute a waiver of any such right upon the continuation or recurrence of any such contingencies or similar contingencies, and any single or partial exercise of any particular right by Lessor shall not exhaust the same or constitute a waiver of any other right provided herein.

**SECTION 15. SURRENDER**

At the expiration or termination of the Equipment Supplement in respect of the Equipment, whether by passage of time or otherwise, PB will surrender possession thereof to the Lessor in good working order and repair, ordinary wear and tear excepted, certified eligible for Manufacturer's maintenance agreement at then standard rates therefore, F.O.B. destination to a common carrier at the Original Site, crated and packed on board such carrier; or, if the Equipment has been moved to another location pursuant to a transfer under Section 8 hereof, then at the option of Lessor, the Equipment shall be surrendered as above either F.O.B. destination at such other location as the Equipment shall then be located, or F.O.B. destination the original location at PB's expense and Risk of Loss.

**SECTION 16. OPTION TO PURCHASE**

Provided PB is not in default under this Lease and notwithstanding any provision of the Equipment Schedule to the contrary, PB shall have the option to purchase all or any portion of the Equipment at the end of the Lease Term by delivering a written notice to Lessor of the exercise of the option to purchase (the "Purchase Notice") at least sixty (60) days prior to the purchase date set forth in the Notice.

The Purchase Notice shall also set forth the purchase price which shall be the Fair Market Value of the Equipment as of the date of purchase is to occur.

For purposes hereof "Fair Market Value" shall mean the purchase price that would be obtained in an arms-length transaction between an informed buyer and seller under no compulsion to buy or sell. If the parties are unable to agree on a Fair Market Value of the Equipment, such value shall be determined in accordance with the foregoing definition, by a panel of three (3) appraisers; one selected by PB, one selected by Lessor, and the third selected by the first two such appraisers, to make a written determination of such Fair Market Value within twenty (20) days of their selection. The costs of such appraisal shall be shared equally by Lessor and PB.

**SECTION 17. OPTION TO RENEW**

Provided PB is not in default under this Lease and notwithstanding any provision of the Lease or Equipment Schedule to the contrary, PB shall have the option to renew all or any portion thereof of the Equipment at the end of the Lease Term by delivering a written notice to Lessor of the exercise of the option to renew (the "Renewal Notice") not less than sixty (60) days prior to the date set forth in the Renewal Notice.

The Renewal Notice shall also set forth (a) the number of months in the Renewal Term, and (b) the Basic Rent for the Renewal Term, which shall be the Fair Market Lease Value of the Equipment as of the date of the extension is to occur.

For purposes hereof "Fair Market Lease Value" shall mean the Basic Rent that would be obtained in an arms-length transaction between an informed PB and Lessor under no compulsion to lease or provide leased equipment. If the parties are unable to agree on a Fair Market Lease Value of the Equipment, such leased value shall be determined in accordance with the foregoing definition, by a panel of three (3) appraisers; one selected by PB, one selected by Lessor, and the third selected by the first two appraisers; to make a written determination of such Fair Market Lease Value within twenty (20) days of their selection. The costs of such appraisal shall be shared equally by Lessor and PB.

**SECTION 18. RETURN OF EQUIPMENT**

Notwithstanding provisions in the Lease to the contrary, PB shall not more than one year prior to the Expiration Date, give Lessor at least 60 days notice in writing of its intention to return the Equipment to Lessor as of the Expiration Date or expiration of any renewal or extension in accordance with Section 17, Option to Renew, of the Lease. In the event PB shall fail to give Lessor such notice, the Lease shall be extended and continued at the same monthly rental as of rental in effect for the last month of the then current term through the end of the rental period. PB will ship within 250 miles of the original installed location or as directed by Lessor within such range 60 days after Lessor receives such notice in writing from PB.

**SECTION 19. INSURANCE**

PB agrees to maintain policies of insurance on the Equipment against risks and on terms and conditions applicable to other equipment owned or leased by PB and similar to the Equipment until the Equipment is surrendered to the Lessor as provided in Section 15 hereof. Such insurance will at a minimum include (i) physical damage and theft insurance in an amount at lease equal to the greater of the Stipulated Casualty Loss Value set forth on the Schedule or the Fair Market Value of the Equipment and (ii) comprehensive liability insurance in the amount of $1,000,000 per occurrence, in each case with deductibles not in excess of $100,000. PB may self-insure with respect to all or some of the risks described above on terms and conditions followed by PB with respect to other similar items of equipment owned or leased by PB. All policies (a) are to name lessor and its assignees as loss payees with respect to physical damage and theft and as additional insureds with respect to liability, as their interests may appear; and (b) are to provide that they may not be materially altered or canceled except upon fifteen (15) days prior written notice to Lessor and each of Lessor's assignees named as additional insured and loss payee. PB agrees to deliver to Lessor such certificates of insurance or self-insurance as Lessor may, from time to time, reasonably request.

**SECTION 20. PB'S RIGHT TO SUBLEASE**

Provided that PB is not in default under the Lease, PB shall have the right to sublease the Equipment for a term expiring on or before the day preceding the Expiration Date, either to its affiliates and subsidiaries, upon 10 days prior notice to the Lessor, or to any other third parties subject to the prior written approval of the Lessor, which approval shall not be unreasonably withheld. PB however, will remain responsible for all provisions and obligations of the Lease. However, no such sublease shall include the early termination provisions of Section 11.2 hereof or the sublease provisions of this Section 20 without the expressed approval of the Lessor, which approval Lessor may withhold in its sole discretion, it being agreed by the parties that such rights are included in the Lease to allow PB such early termination and sublease provisions based on Lessor's evaluation and understanding of PB's

FILED DATE: 11/7/2024 3:06 PM 2024L012540

use of the Equipment and PB's possible requirement during the Lease Term to obtain other equipment and thereby terminate or sublease this Equipment. However, such provisions requiring disposition of the Equipment by the Lessor to the other parties as in the case of Section 11.2 hereof or relocation and use of the Equipment as in the case of this Section 20 are not intended to allow such additional termination or relocation by subsequent subleases.

**SECTION 21. MISCELLANEOUS**

21.1 Time is of the essence, and no delay or omission to exercise any right, power or remedy accruing to the Lessor upon any breach or default by PB under the Lease shall impair any such right power or remedy of the Lessor, nor shall any such delay or omission be construed as a waiver of any breach or default, or of any similar breach or default thereafter occurring; nor shall any waiver of a single breach or default be deemed a waiver of any subsequent breach or default. All waivers under the Lease must be in writing. Any provision of the Lease prohibited by law shall be ineffective to the extent of such provision, without invalidating the remaining provisions thereof.

21.2 PB acknowledges and agrees (i) that the Equipment is of a size design, capacity and manufacturer selected by PB, (ii) that the Lessor is not a manufacturer thereof nor a dealer in property of such kind, (iii) THAT AS TO LESSOR, PB LEASES THE EQUIPMENT AS- IS AND THAT LESSOR HAS NOT MADE, AND DOES NOT HEREBY MAKE, ANY REPRESENTATION OR WARRANTY OR COVENANT WITH RESPECT TO FITNESS, MERCHANTABILITY, CONDITION, QUALITY, DURABILITY OR SUITABILITY OF THE EQUIPMENT IN ANY RESPECT OR IN CONNECTION WITH, OR FOR THE PURPOSES AND USES OF PB, OR ANY OTHER REPRESENTATION OR WARRANTY OR COVENANT OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT THEREOF, and (iv) that Lessor shall in no event be liable for consequential, indirect, punitive or exemplary damages, even if Lessor has been advised of the possibility of such damages.

21.3 PB agrees to furnish to the Lessor upon request:

(a) A copy of the annual report as made available to its stockholders.

(b) Such additional information as the Lessor or any assignee may reasonably request concerning the Lease in order to enable the Lessor or assignee to determine whether the covenants, terms and provisions of the Lease have been complied with by PB.

21.4 Subject to giving PB reasonable notice, the Lessor (or such persons as the Lessor may designate) shall have the right to inspect the Equipment at any reasonable time or times during the continuance of the Lease and for this purpose to enter upon any building or place where the Equipment is located. PB shall furnish to the Lessor such information and data as the Lessor may from time to time reasonably request as to the existence and status of any claims for damages (whether against the Equipment or against the Lessor or PB) arising out of the use, operation or condition of the Equipment, the taxes of the nature provided to be paid by PB under the provisions of paragraph (a) of Section 4 which have been assessed and the amount of such taxes paid, and such other data pertinent to the Equipment and the condition, use and operation thereof as the Lessor may from time to time reasonably request.

21.5 If PB shall fail to comply with the covenants herein contained with respect to the maintenance of insurance, the payment of taxes, assessments and other charges of keeping the Equipment in repair and free of liens, charges and encumbrances, the Lessor, upon 10 days prior notice to PB, may but shall not be obligated to make advances to perform the same, and all sums so advanced shall be payable to the Lessor upon demand as so much additional rent with interest thereon from the time of advancement at the Penalty Rate. No such advance shall be deemed to relieve PB from any default hereunder.

21.6 Any notices provided for in the Lease shall be in writing and shall be deemed to have been duly given (i) when delivered personally or (ii) when sent by United States Mail, registered, postage prepaid, effective upon receipt, or (iii) when sent by recognized overnight courier, effective upon receipt, addressed as follows:

FILED DATE: 11/7/2024 3:06 PM 2024L012540

| | |
|---|---|
| Lessor: | Jeffrey A. Liebenthal<br>Trilogy Leasing Co., LLC<br>2251 Route 130<br>Cranbury, NJ 08512 |
| With a copy to | Michael A. Slutsky, Esq.<br>48 Old Highway<br>Wilton, CT 06897 |
| PB: | Pitney Bowes Inc.<br>World Headquarters<br>One Elmcroft Rd<br>Stamford, CT 06926<br>Attn: Director, Computer Contracts, & Finance |

or at such other place as either party may designate to the other by notice given in accordance with this Section.

21.7 The Lease shall be binding upon PB and its successors and assigns and shall inure to the benefit of the Lessor and its successors and assigns.

21.8 The Lease may be executed in any number of counterparts, each counterpart constituting an original, but all together one and the same instrument and contract. The Lessor and PB agrees to execute, acknowledge and deliver such further counterparts of the Lease or financing statements which in the opinion of counsel for the Lessor may be reasonably required at any time in order to comply with the provisions of any applicable law or laws at any time in force requiring the recording or filing of the Lease or a copy thereof or a notification statement in connection therewith in any public office of the United States or of any state or of any political or governmental subdivision. The Lease is a contract of lease only and nothing therein shall create in Lessor a security interest, or give PB an equity or other property interest in the Equipment except as specifically provided in the Lease. Uniform Commercial Code Notification Statements may be filed with respect to the Lease in order to give public notice of Lessor's ownership of the Equipment, but such filing shall not be construed as evidence that any security interest was intended to be created thereby.

21.9 The Lease shall be governed by and interpreted in accordance with the laws of Connecticut.

21.10 This Master Lease may be terminated by either party upon prior written notice, provided that any such termination shall not precede the expiration or other termination of an Equipment Supplement hereunder, and provided further that any provision hereof which by its terms survives the termination hereof shall not be terminated by any such termination.

21.11 This Master Lease shall apply to Equipment Supplements executed between Lessor, as the case may be, where the Equipment is initially to be located in the state of Connecticut, and to Equipment Supplements executed between Lessor and PB, as the case may be, where the Equipment is initially to be located in other jurisdictions.

21.12 Lessor and PB agree that no rights and remedies set forth in Article 2A of the Uniform Commercial Code shall be conferred upon PB as against the Lessor or the Assignee, and PB waives any and all rights and remedies conferred upon a lessee by said Section 2A, unless expressly granted in this Lease.

FILED DATE: 11/7/2024 3:06 PM 2024L012540

**IN WITNESS WHEREOF,** the Lessor and PB have caused this instrument to be duly executed, all as of the day and year first written above.

PITNEY BOWES INC.

By: [signature]

M.J. GALATY, JR.

Title: DIRECTOR, COMPUTER CONTRACTS & FINANCE

Date: 11/4/99

Trilogy Leasing Co., LLC

By: Jeffrey Liebenthal

Title: Pres + CEO

Date: 11/2/99

FILED DATE: 11/7/2024 3:06 PM 2024L012540

**EQUIPMENT SUPPLEMENT NO.______________**
**Dated as of ____________**

**between**

**PITNEY BOWES INC.**
**Lessee**

**and**

**Trilogy Leasing Co., LLC**
**Lessor**

THIS EQUIPMENT SUPPLEMENT (the "Equipment Supplement") dated as of __________ between Pitney Bowes Inc. a Delaware corporation (the "Lessee") and (the "Lessor").

**WITNESSETH**

1. This Equipment Supplement has been entered into by Lessor and PB pursuant to Master Equipment Lease Agreement No.____________ dated as of __________ ("the Master Lease") between Lessor and PB. The Master Lease, and each of the terms, covenants, conditions, provisions and agreements therein contained, is hereby by this reference, incorporated herein in full to the same extent as if each of such terms, covenants, conditions, provisions and agreements had been repeated and set forth in full herein, except to the extent that the same may be inconsistent with the terms and provisions hereof. In the event of any conflict between such terms and provisions and the terms and provisions of the Master Lease, the terms and provisions hereof shall prevail. It is the intention of the parties hereto that this instrument shall constitute a separate lease, apart and distinct from the Master Lease, and the rights, powers, privileges and remedies of the parties hereto shall be limited to the terms and provisions hereof, except to the extent that specific terms and provisions of the Master Lease have been incorporated by reference herein.

2. The Lessor does hereby lease and let to PB ______________ (the "Equipment") manufactured by __________________________(the "Manufacturer") as more fully described in Schedule 1 hereto together with all attachments, instruments and accessions now and hereafter made thereon. All items or parts of the Equipment, whether a part of the Equipment at the time of acceptance thereof by PB pursuant to Section 2 of the Master Lease or becoming a part of the Equipment by accession thereto pursuant to Section 10 of the Master Lease are sometimes hereinafter referred to as an "Item of Equipment" or "Items of Equipment".

3. The Lease term for the Equipment ("Lease Term") is defined and shall commence upon the installation by __________________________ field engineering staff and acceptance by PB (the "Commencement Date") and shall expire on the "Expiration Date" as set forth in Schedule 2 hereto unless earlier terminated, renewed or extended and the Equipment returned, all according to the terms of this Lease.

4. The Periodic Rent and Daily Rent for each Item of Equipment shall be calculated using the Lease rate factors set forth in Schedule 2.

5. PB will signify its acceptance of the Equipment by the execution and delivery to the Lessor of a Certificate of Acceptance substantially in the form of Exhibit 1 attached hereto and made a part hereof.

6. PB shall have the right to maintain the equipment in Schedule 1 hereof by the manufacturer of such equipment on a time and materials basis. Upon return of the equipment to Lessor in accordance with Section 18 of the Lease, the equipment shall be in the same operating, order, repair, condition and appearance as on the

FILED DATE: 11/7/2024 3:06 PM 2024L012540

Installation Date for such Equipment, reasonable wear and tear excepted, with all engineering damages prescribed by the manufacturer incorporated therein, and PB shall arrange and pay for such repairs (if any) as are necessary for the manufacturer to accept the equipment under maintenance contract at its then standard rate.

7. At the expiration of any lease term, PB shall have the right to substitute unit(s) of equipment whose manufacturer, machine number, and model number, and features are identified to those unit(s) of equipment being terminated only whose serial number(s) are different from these listed in the certificate of Acceptance Exhibit 1.

8. At the expiration of the initial Lease term, PB may exercise its Option to Renew for a term of 6 months or longer at the Fair Market Value per Section 17 of the Master Lease Agreement. Said Fair Market Value Rental shall not exceed 90% of the current rental in this Equipment Schedule.

**IN WITNESS WHEREOF,** the Lessor and PB have caused this instrument to be duly executed, all as of the day and year first written above.

| | |
|---|---|
| PITNEY BOWES INC.<br>Lessee | Trilogy Leasing Co., LLC<br>Lessor |
| By: ________________________ | By: ________________________ |
| Title: ______________________ | Title: ______________________ |

FILED DATE: 11/7/2024 3:06 PM 2024L012540

**SCHEDULE 1**

This Schedule is appended to and made a part of Equipment Supplement No.______________ dated as of ____________ to Master Equipment Lease Agreement No.__________________ dated as of _____________ between Pitney Bowes Inc., and ______________________.

State of Original Location:

Original Installation Site:

**EQUIPMENT**

| Manufacturer's Description | Machine Type | Model/ Feature | Serial Number | Invoice Cost |
|---|---|---|---|---|

PITNEY BOWES INC.
Lessee

By:_________________________

Title:________________________

Lessor

By:___________________________

Title:__________________________

FILED DATE: 11/7/2024 3:06 PM 2024L012540

## SCHEDULE 2

**To Equipment Supplement No.__________________**
**Dated as of _____________**

## PAYMENT DATES

First Periodic Rent Payment Date: ________________________

Periodic Rent Payment Dates: ________________________

First Termination Date: ________________________

Last Periodic Rent Payment Date: ________________________

Expiration Date: ________________________

## LEASE RATE FACTORS

Daily Lease Rate Factor: ________________________

Periodic Lease Rate Factor: ________________________

## RENT PAYMENT

Monthly Rent Payment ________________________

| PITNEY BOWES INC.<br>Lessee | Lessor |
|---|---|
| By:________________________ | By:___________________________ |
| Title:_____________________ | Title:________________________ |

FILED DATE: 11/7/2024 3:06 PM 2024L012540

**SCHEDULE 3**

**Equipment Supplement No._______________**
**Dated as of _____________**

**CASUALTY VALUES**

**(STATED AS A PERCENTAGE OF MANUFACTURER'S INVOICE COST)**

| After Month and Payment No. | Casualty Value | After Month and Payment No. | Casualty Value |
|---|---|---|---|

PITNEY BOWES INC.
Lessee

Lessor

By:________________________ By:______________________

Title:_____________________ Title:_____________________

**EXHIBIT 1**

**CERTIFICATE OF ACCEPTANCE**
**UNDER EQUIPMENT SUPPLEMENT NO.**

To:______________________________ ("Lessor")

I, a duly appointed inspector and authorized representative of Pitney Bowes Inc.("Lessee"), do hereby certify that I have inspected, received, approved and accepted delivery on behalf of PB under Equipment Supplement No.______________ dated as of ________________ to Master Equipment Lease Agreement No. __________ dated as of ________________, between Lessor and PB, the following Items of Equipment.

| Description | Machine Type | Model/ Feature | Serial Number |
|---|---|---|---|

ORIGINAL INSTALLATION SITE:

PLACE ACCEPTED:

DATE ACCEPTED:

The execution of this Certificate will in no way relieve or decrease the responsibility of the Manufacturer of the Items of Equipment for any warranties it has made with respect to the Items of Equipment.

Dated: ____________________

____________________________
Inspector and Authorized Representative of
Pitney Bowes Inc.

FILED DATE: 11/7/2024 3:06 PM 2024L012540

EX-21 5 pbi20171231ex21.htm EXHIBIT 21

**Exhibit 21**

**PITNEY BOWES INC.**
**SUBSIDIARIES OF REGISTRANT**
The Registrant, Pitney Bowes Inc., a Delaware Corporation, has no parent
The following are subsidiaries of the Registrant
(as of December 31, 2017)

| Subsidiary Name | Country or state of incorporation |
|---|---|
| Alternative Mail & Parcels Investments Ltd | United Kingdom |
| AtLast Holdings Inc. | Colorado |
| B. Williams Funding Corp. | Delaware |
| Borderfree Canada, Inc. | Canada |
| Borderfree Limited | Ireland |
| Borderfree Research and Development Ltd. | Israel |
| Borderfree Trading (Shanghai) Co., Ltd. | China |
| Borderfree UK Limited | United Kingdom |
| Borderfree, Inc. | Delaware |
| BoxHop LLC | Delaware |
| Elmcroft Road Realty Corporation | Connecticut |
| Enroute Systems Corporation | Deleware |
| FSL Holdings Inc. | Connecticut |
| FSL Risk Managers Inc. | New York |
| Group 1 Software China Ltd. | Hong Kong |
| Harvey Company, L.L.C | Delaware |
| Intreprinderea Cu Capital Strain "Tacit Knowledge" S.R.L (Moldova) | Republic of Moldova |
| MapInfo Realty LLC | New York |
| MOUNT VERDE INSURANCE COMPANY, INC. | Vermont |
| Newgistics, Inc. | Delaware |
| NGS Holdings, Inc. | Delaware |
| NGS Intermediate Holdings, Inc. | Delaware |
| OLDEMT LIMITED | United Kingdom |
| OldEurope Limited | United Kingdom |
| OldMS Limited | United Kingdom |
| OLDPBIMS Limited | United Kingdom |
| OldPBSL | United Kingdom |
| PB Can LP II | Canada |
| PB Can US Holding LLC | Delaware |
| PB Equipment Management Inc. | Delaware |
| PB European UK LLC | Delaware |
| PB Nova Scotia Holding Inc. | Delaware |
| PB Nova Scotia Holdings ULC | Canada |
| PB Nova Scotia II ULC | Canada |
| PB Nova Scotia VI ULC | Canada |
| PB Nova Scotia VII ULC | Canada |
| PB Professional Services Inc. | Delaware |
| PB US Can LLC | Delaware |
| PB Worldwide Inc, | Delaware |

FILED DATE: 11/7/2024 3:06 PM 2024L012540

**From:** Stan Sutula <STAN.SUTULA@pb.com>
**Date:** May 19, 2020 at 6:34:56 PM EDT
**To:** "Jeffrey A. Liebenthal" <JLiebenthal@trilogyleasing.com>
**Cc:** Peter Panzarella <peter.panzarella@pb.com>, Robert Prussin <Robert.Prussin@pb.com>
**Subject: CERTIFICATE OF AUTHORITY FOR NEWGISTICS**

To Whom it May Concern,

This email shall serve to confirm that I, Stanley J. Sutula III, pursuant to Pitney Bowes Inc. and Newgistics, Inc. respective organizational documents, have sufficient authority, as Executive Vice President and Chief Financial Officer of Pitney Bowes Inc., to act on behalf of and to bind Pitney Bowes Inc. and Newgistics, Inc. (which is a wholly owned subsidiary of Pitney Bowes Inc.) with respect to transactions involving leasing of equipment under the Master Lease Agreement dated November 2, 1999, between Trilogy Leasing Co., LLC, as Lessor and Pitney Bowes Inc. and Newgistics, Inc. as Lessees, and related documents and that the execution by me related to such transactions constitute the legally binding and enforceable obligations of Pitney Bowes Inc. and Newgistics, Inc. and such authority shall remain in full force and effect until notice of revocation is provided to Trilogy Leasing Co., LLC.

**Stan Sutula**
Executive Vice President & Chief Financial Officer
**T:** 203.351.6031 | **M:** 203.968.3155 | stan.sutula@pb.com
3001 Summer Street | Stamford, CT 06926

pitney bowes
100 years

FILED DATE: 11/7/2024 3:06 PM 2024L012540

**Cherri Ann Spinola**

**From:** Lori Ann Eilbacher
**Sent:** Friday, July 26, 2019 12:10 PM
**To:** Jeffrey A. Liebenthal
**Cc:** Cherri Ann Spinola
**Subject:** FW: PITNEY BOWES INC - SIGNING AUTHORITY

Jeff,

We are ok with Sutula....

Lori

**From:** Hob Jordan [mailto:hjordan@kingsbridgeholdings.com]
**Sent:** Wednesday, March 06, 2019 11:35 AM
**To:** Lori Ann Eilbacher <LEilbacher@trilogyleasing.com>
**Subject:** Re: PITNEY BOWES INC - SIGNING AUTHORITY

We are OK with Mr. Sutula III signing on behalf of Pitney Bowes without a COA.

Horace (Hob) W. Jordan, Jr.
Executive Vice President & General Counsel
Kingsbridge Holdings, LLC
150 N. Field Drive, Suite 193
Lake Forest, IL 60045
847-457-4739

On Mar 6, 2019, at 8:58 AM, Lori Ann Eilbacher <LEilbacher@trilogyleasing.com> wrote:

Hob,

We currently have a transaction direct with Pitney Bowes ($100K conveyor system) with documentation in their possession. Our signing authorities are older and I believe the person that will be signing these documents is the CFO. We can confirm his title on the Pitney Bowes website (see below). Would it be possible to accept the documentation, executed by the CFO without a signing authority?

Can we discuss? Lori

# Stanley J. Sutula III

## Executive Vice President and Chief Financial Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

<image001.jpg>

Stanley J. Sutula III is Executive Vice President and Chief Financial Officer at Pitney Bowes, responsible for the financial operations of the company on a global basis, which includes treasury, audit, investor relations, and tax functions.

Before joining Pitney Bowes, Stan spent 28 years at IBM Corporation. His tenure includes financial management experience of increasing responsibility, most recently serving as its Vice President and Controller. Stan is a skilled and experienced executive who has led large, global, corporate and business unit teams and brings an extensive background in finance, accounting, treasury, financial planning and analysis, audit, risk and compliance.

Stan graduated from Northeastern University in 1988 with a Bachelor of Science degree in Finance and Management. He went on to receive a Masters of Business Administration in Finance from the Fordham Gabelli School of Business in 1995.

**Lauren Freeman-Bosworth**
Executive Vice President
General Counsel and Corporate Secretary

pitney bowes

FILED DATE: 11/7/2024 3:06 PM 2024L012540

## CERTIFICATION OF AUTHORITY

The undersigned, Executive Vice President and General Counsel and Corporate Secretary of Pitney Bowes Inc., a Delaware Corporation (the "Corporation") does hereby certify:

The following listed people serve in the respective capacity set forth opposite the respective names below.

The named individuals are authorized on behalf of the Corporation to negotiate, execute, and deliver agreements by and between the Corporation and third-party leasing companies:

| Name | Title |
|---|---|
| Jason Dies | Interim Chief Executive Officer (>$10,000,000) |
| John Witek | Interim Chief Financial Officer (up to $10,000,000) |
| Adam David | VP, Financial Planning & Analysis (up to $500,000) |
| Matt Daw | CFO, Presort Services (up to $100,000) |
| Russel Williams | CFO, Global E-Commerce (up to 100,000) |
| Christopher Krize | CFO, Sending Technology Solutions (up to $100,000) |
| Thomas Niglio | VP, Enterprise Procurement (up to $100,000) |
| Cynthia Toscano-Lopez | Director, Procurement (up to $50,000) |

IN WITNESS WHEREOF, I have here unto set my hand as Executive Vice President and General Counsel and Corporate Secretary this 24th day of April.

[signature]

Lauren Freeman-Bosworth

**Pitney Bowes**
3001 Summer Street
Stamford, CT 06926-0700
pitneybowes.com

**T** +1 203 351 7577
Lauren.freeman-bosworth@pb.com

**Daniel J. Goldstein**
Executive Vice President
Chief Legal Officer and Corporate Secretary

pitney bowes

FILED DATE: 11/7/2024 3:06 PM 2024L012540

## CERTIFICATION OF AUTHORITY

The undersigned, Chief Legal Officer and Corporate Secretary of Pitney Bowes Inc., a Delaware Corporation (the "Corporation") does hereby certify:

The following listed people serve in the respective capacity set forth opposite the respective names below.

The named individuals are authorized on behalf of the Corporation to negotiate, execute, and deliver agreements by and between the Corporation and third-party leasing companies:

| **Name** | **Title** |
|---|---|
| Ana Chadwick | Chief Financial Officer, Pitney Bowes Inc. (greater than $500,000) |
| Adam David | VP, Financial Planning & Analysis (up to $500,000) |
| Matt Daw | CFO, Presort Services (up to $100,000) |
| Russel Williams | CFO, Global E-Commerce (up to $100,000) |
| Vinay Gandhi | CFO, Sending Technology Solutions (up to $100,000) |
| John Witek | Global Business Services Leader (up to $100,000) |
| Thomas Niglio | VP, Enterprise Procurement (up to $100,000) |
| Christopher Reinke | Senior Director, Global Procurement (up to $50,000) |

IN WITNESS WHEREOF, I have here unto set my hand as Chief Legal Officer and Corporate Secretary this 27th day of March 2023.

[signature]

Daniel J. Goldstein

**Pitney Bowes**
3001 Summer Street
Stamford, CT 06926-0700
pitneybowes.com

**T** +1 203 351 6770
daniel.goldstein@pb.com

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

FILED DATE: 11/7/2024 3:06 PM 2024L012540

pitney bowes

**Pitney Bowes Inc.**
27 Waterview Drive
Shelton, CT 06484

## CERTIFICATION OF AUTHORITY

The undersigned, Chief Financial Officer of Pitney Bowes Inc., a Delaware Corporation (the "Corporation") does hereby certify:

The following listed people serve in the respective capacity set forth opposite the respective names below;

The named individuals are authorized on behalf of the Corporation to negotiate, execute and deliver agreements by and between the Corporation and third-party leasing companies:

| Name | Title |
|---|---|
| Ana Chadwick | Chief Financial Officer, Pitney Bowes Inc. (greater than $500,000) |
| Adam David | VP, Financial Planning & Analysis (up to $500,000) |
| Matt Daw | CFO, Presort Services (up to $100,000) |
| Russel Williams | CFO, Global E-Commerce (up to $100,000) |
| Vinay Gandhi | CFO, Sending Technology Solutions (up to $100,000) |
| John Witek | Global Business Services Leader (up to $100,000) |
| Thomas Niglio | VP, Enterprise Procurement (up to $100,000) |
| Christopher Reinke | Senior Director, Global Procurement (up to $50,000) |

IN WITNESS WHEREOF, I have here unto set my hand as Chief Financial Officer this 31st day of January 2023.

DocuSigned by:
Ana Maria Chadwick
AFFCA1C1F387462...

Ana Chadwick
Executive Vice President and Chief Financial Officer

COPY VIEW

FILED DATE: 11/7/2024 3:06 PM 2024L012540

pitney bowes

**Pitney Bowes Inc.**
27 Waterview Drive
Shelton, CT 06484

**CERTIFICATION OF AUTHORITY**

The undersigned, Chief Financial Officer of Pitney Bowes Inc., a Delaware Corporation (the "Corporation") does hereby certify:

The following listed people serve in the respective capacity set forth opposite the respective names below;

The named individuals are authorized on behalf of the Corporation to negotiate, execute and deliver agreements by and between the Corporation and third-party leasing companies:

| Name | Title |
|---|---|
| Ana Chadwick | Chief Financial Officer, Pitney Bowes Inc. (greater than $500,000) |
| Adam David | VP, Financial Planning & Analysis (up to $500,000) |
| Matt Daw | CFO, Presort Services (up to $100,000) |
| Russel Williams | CFO, Global E-Commerce (up to $100,000) |
| Vinay Gandhi | CFO, Sending Technology Solutions (up to $100,000) |
| John Witek | Global Business Services Leader (up to $100,000) |
| Thomas Niglio | VP, Enterprise Procurement (up to $100,000) |
| Christopher Reinke | Senior Director, Global Procurement (up to $50,000) |

IN WITNESS WHEREOF, I have here unto set my hand as Chief Financial Officer this 27 day of January 2023.

[signature]

Ana Chadwick
Executive Vice President and Chief Financial Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

pitney bowes

**Pitney Bowes Inc.**
27 Waterview Drive
Shelton, CT 06484

**CERTIFICATION OF AUTHORITY**

The undersigned, Chief Financial Officer of Pitney Bowes Inc., a Delaware Corporation (the "Corporation") does hereby certify:

The following listed people serve in the respective capacity set forth opposite the respective names below;

The named individuals are authorized on behalf of the Corporation to negotiate, execute and deliver agreements by and between the Corporation and third-party leasing companies:

| **Name** | **Title** |
|---|---|
| Ana Chadwick | Chief Financial Officer, Pitney Bowes Inc. (greater than $500,000) |
| Adam David | VP, Financial Planning & Analysis (up to $500,000) |
| Vinay D. Gandhi | CFO, Presort Services (up to $100,000) |
| Scott Read | CFO, Global E-Commerce (up to $100,000) |
| John Witek | CFO, SendTech Services (up to $100,000) |
| Thomas Niglio | VP, Enterprise Procurement (up to $100,000) |
| Christopher Reinke | Senior Director, Global Procurement (up to $50,000) |

IN WITNESS WHEREOF, I have here unto set my hand as Chief Financial Officer this 11 day of October 2022.

[signature]

Ana Chadwick
Executive Vice President and Chief Financial Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

pitney bowes

**Pitney Bowes Inc.**
27 Waterview Drive
Shetlon, CT 06484

## CERTIFICATION OF AUTHORITY

The undersigned, Chief Financial Officer of Pitney Bowes Inc., a Delaware Corporation (the "Corporation") does hereby certify:

The following listed people serve in the respective capacity set forth opposite the respective names below;

The named individuals are authorized on behalf of the Corporation to negotiate, execute and deliver agreements by and between the Corporation and Trilogy Leasing Co., LLC, as of January 15, 2020.

| Name | Title |
|---|---|
| Ken Franke | Director, Finance (up to $250,000) |
| Vinay D. Gandhi | CFO, Presort Services (up to $250,000) |
| Peter Panzarella | Vice President of Procurement and Global Finance Services |
| Frank Parker | CFO, Global Ecommerce (up to $250,000) |
| Scott Read | Vice President Client Strategy & Sales Operations (up to $250,000) |
| Christopher Reinke | Senior Director, Global Procurement |
| John A. Witek | CFO, STS and GFS |

In WITNESS WHEREOF, I have here unto set my hand as Chief Financial Officer this 23rd day of January, 2020.

Stanley J. Sutula III
Executive Vice President and Chief Financial Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

pitney bowes

**Pitney Bowes Inc.**
27 Waterview Drive
Shetlon, CT 06484

# CERTIFICATION OF AUTHORITY

The undersigned, Chief Financial Officer of Pitney Bowes Inc., a Delaware Corporation (the "Corporation") does hereby certify:

The following listed people serve in the respective capacity set forth opposite the respective names below;

The named individuals are authorized on behalf of the Corporation to negotiate, execute and deliver agreements by and between the Corporation and Trilogy Leasing Co., LLC, as of January 1, 2020.

| **Name** | **Title** |
|---|---|
| Ken Franke | Director, Finance (up to $250,000) |
| Vinay D. Gandhi | CFO, Ecommerce (up to $250,000) |
| Peter Panzarella | Vice President of Procurement and Global Finance Services |
| Frank Parker | CFO, Ecommerce (up to $250,000) |
| Scott Read | CFO, Presort (up to $250,000) |
| Christopher Reinke | Senior Director, Global Procurement |
| John A. Witek | CFO, STS and GFS |

In WITNESS WHEREOF, I have here unto set my hand as Chief Financial Officer this 2nd day of January, 2020.

Stanley J. Sutula III
Chief Financial Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

pitney bowes

**Pitney Bowes Inc.**
27 Waterview Drive
Shetlon, CT 06484

## CERTIFICATION OF AUTHORITY

The undersigned, Chief Financial Officer of Pitney Bowes Inc., a Delaware Corporation (the "Corporation") does hereby certify:

The following listed people serve in the respective capacity set forth opposite the respective names below. The named individuals are authorized on behalf of the Corporation to negotiate, execute and deliver agreements by and between the Corporation and Trilogy Leasing Co., LLC, as of the signature date below, up to an amount not exceeding the amount set next to the respective name below.

| **Name** | **Title** | **Authorization** |
|---|---|---|
| Ken Franke | Director, Finance | $250,000 |
| Vinay D. Gandhi | CFO, Cross-Border Solutions | $250,000 |
| Frank Parker | Vice President, Finance | $250,000 |
| Scott Reed | CFO, Presort | $250,000 |

In WITNESS WHEREOF, I have here unto set my hand as Chief Financial Officer this 23 day of August, 2019.

Stanley J. Sutula III
Chief Financial Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

pitney bowes

**Pitney Bowes Inc.**
27 Waterview Drive
Shetlon, CT 06484

## CERTIFICATION OF AUTHORITY

The undersigned, Chief Financial Officer of Pitney Bowes Inc., a Delaware Corporation (the "Corporation") does hereby certify:

The following listed people serve in the respective capacity set forth opposite the respective names below and the respective signatures appearing opposite each name are true and correct signatures;

The named individuals are authorized on behalf of the Corporation to negotiate, execute and deliver agreements by and between the Corporation and Trilogy Leasing Co., LLC, as of April 4, 2019.

| Name | Title | Signature |
|---|---|---|
| Peter Panzarella | Vice President of Procurement and Global Finance Services | [signature] |
| Christopher Reinke | Senior Director, Global Procurement | [signature] |
| Amy S Rizzo | CFO, Software | [signature] |
| Benjamin C. Wade | CFO, Commerce Services and Presort | [signature] |
| John A. Witek | CFO, SMB and GFS | [signature] |

In WITNESS WHEREOF, I have here unto set my hand as Chief Financial Officer this 22 day of May, 2019.

[signature]

Stanley J. Sutula III
Chief Financial Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

pitney bowes

Christopher Reinke
**Pitney Bowes Inc.**
27 Waterview Drive
Shetlon, CT 06484

## CERTIFICATION OF AUTHORITY

The undersigned Senior Director of Indirect Global Strategic Sourcing and Procurement of Pitney Bowes Inc., a Delaware Corporation (the "Corporation") does hereby certify:

The following listed people serve in the respective capacity set forth opposite the respective names below and the respective signatures appearing opposite each name are true and correct signatures;

The named individuals are authorized on behalf of the Company to negotiate, execute and deliver agreements by and between the Company and Trilogy Leasing Co., LLC as of January 17, 2019.

| Name | Title | Authorization | Signature |
|---|---|---|---|
| Ben Wade | Chief Financial Officer, Newgistics | $500,000 | [signature] |

In WITNESS WHEREOF, I have here unto set my hand as Senior Director of Indirect Global Strategic Sourcing and Procurement of this Corporation this _____ Day of January 2019.

[signature]

**Christopher Reinke**
Sr. Director, Global Strategic Sourcing and Procurement
Enterprise Procurement

FILED DATE: 11/7/2024 3:06 PM 2024L012540

pitney bowes

CERTIFICATION OF AUTHORITY

The undersigned Vice President of Indirect Procurement of Pitney Bowes Inc., a Delaware Corporation (the "Company"), does hereby certify that:

1. The following listed people serve in the respective capacity set forth opposite the respective names below and the respective signatures appearing opposite each name are true and correct signatures;
2. The named individuals are authorized on behalf of the Company to negotiate, execute and deliver agreements by and between the Company and Trilogy Leasing Co., LLC as of September 1, 2015.

| Name | Title | Authorization | Signature |
| --- | --- | --- | --- |
| Michael Rollo | V.P IT | $1 Million | |

In WITNESS WHEREOF, I have here unto set my hand as Vice President Indirect Procurement of this Corporation this __ Day of November, 2015.

Mel Ohl
Vice President, Indirect Procurement

FILED DATE: 11/7/2024 3:06 PM 2024L012540

Pitney Bowes

**CERTIFICATION OF AUTHORITY**

The undersigned Vice President and Chief Procurement Officer of Pitney Bowes Inc., a Delaware Corporation (the "Company"), does herby certify that:

1. The following listed people serve in the respective capacity set forth opposite the respective names below and the respective signatures appearing opposite each name are true and correct signatures;
2. The named individuals are authorized, on behalf of the Company to negotiate, execute and deliver agreements by and between the Company and Trilogy Leasing Co., LLC as of July 1, 2012.

| NAME | TITLE | Authorization | Signature |
|---|---|---|---|
| J. Larry Kinnear | Manager, BPO-IT | $1 million | [signature] |

In WITNESS WHEREOF, I have here unto set my hand as Vice President and Chief Procurement Officer of the Corporation this 4 day of September, 2012.

[signature]

Peter Panzarella

Vice President and Chief Procurement Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

Pitney Bowes

## CERTIFICATION OF AUTHORITY

The undersigned Vice President and Chief Procurement Officer of Pitney Bowes Inc., a Delaware Corporation (the 'Company"), does hereby certify that:

1. The following listed people serve in the respective capacity set forth opposite the respective names below and the respective signatures appearing opposite each name are true and correct signatures;

2. The named individuals are authorized, on behalf of the Company to negotiate, execute and deliver agreements by and between the Company and Trilogy Leasing Co., LLC as of September 26, 2009.

| NAME | TITLE | Authorization | Signature |
| --- | --- | --- | --- |
| Marisa S. Scott | Manager, IT Strategic Sourcing | $1 million | [signature] |

In WITNESS WHEREOF, I have here unto set my hand as the Vice President and Chief Procurement Officer of the Corporation this 21 day of April, 2010.

[signature]

Peter Panzarella
Vice President and Chief Procurement Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

PITNEY BOWES INC.

ASSISTANT SECRETARY CERTIFICATE

The undersigned duly appointed Assistant Secretary of Pitney Bowes Inc., a Delaware corporation (the "Corporation"), hereby certifies that Russell Bruneau, is an employee of the corporation and holds the title of Vice President, Indirect Procurement and Strategic Alliances as of the date hereof.

IN WITNESS WHEREOF, I have hereunto set my hand this 22nd day of January, 2008.

Patricia M. Johnson
Assistant Secretary

(S E A L)

FILED DATE: 11/7/2024 3:06 PM 2024L012540

## CERTIFICATION OF AUTHORITY

The undersigned Vice President and Chief Procurement Officer of Pitney Bowes Inc., a Delaware Corporation (the 'Company"), does hereby certify that:

1. The following listed people serve in the respective capacity set forth opposite the respective names below and the respective signatures appearing opposite each name are true and correct signatures;

2. The named individuals are authorized, on behalf of the Company to negotiate, execute and deliver agreements by and between the Company and Trilogy Leasing Co., LLC as of January 1, 2008.

| NAME | TITLE | Authorization | Signature |
|---|---|---|---|
| Russell Bruneau | Vice President, Indirect Procurement and Strategic Alliances | $25 million | Russell J. Bruneau |
| James DeFilippo | Director, IT Strategic Sourcing | $1 million | [signature] 2/27/08 |
| Marisa S. Mansfield | Manager, IT Strategic Sourcing | $1 million | [signature] |

In WITNESS WHEREOF, I have here unto set my hand as the Vice President and Chief Procurement Officer of the Corporation this 21 day of February, 2008.

[signature]

Peter Panzarella
Vice President and Chief Procurement Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

# CERTIFICATE

I, Patricia Johnson, Assistant Secretary of Pitney Bowes, Inc., do hereby certify that:

1. I am familiar with the seal and minute books of Pitney Bowes Inc. (the "Company"), and I am authorized to issue certificates with respect to the contents of such books and to affix such seal to such certificates;

2. The following Company employee holds the position within the Company's Enterprise Procurement Department set forth opposite their name below, the signature set forth opposite their name below is their true and genuine signature, and said person is authorized for, on behalf of, and in the name of the Company to:

(A) Negotiate and execute and lease, procurement financing agreement, purchase orders and/or any related and similar agreement with Trilogy Leasing Co., LLC, its successors or assigns ("Trilogy Leasing"), up to an amount not exceeding the amounts set next to respective name and in the aggregate at any one time outstanding, and

(B) Execute in such form as may be required by Trilogy Leasing all ancillary documents and other evidences of such agreements and all related instruments of pledge, assignments or lien.

| **Name** | **Title** | **Authorization** | **Signature** |
|---|---|---|---|
| Nicholas D. Kydes | Sr. Manager IT Strategic Sourcing | $1 million | [signature] |

IN WITNESS WHEREOF I have hereunto set my hand as the Assistant Secretary of the Corporation this 11th day of January, 2006.

(Corporate Seal)

[signature]
Patricia Johnson
Assistant Secretary

FILED DATE: 11/7/2024 3:06 PM 2024L012540

## CERTIFICATE

I, Robbie E. B. Narcisse, Assistant Secretary of Pitney Bowes Inc., do hereby certify that:

1. I am familiar with the seal and minute books of Pitney Bowes Inc. (the "Company"), and I am authorized to issue certificates with respect to the contents of such books and to affix such seal to such certificates;

2. The following Company employee holds the position within the Company's Enterprise Procurement Department set forth opposite her name below, the signature set forth opposite her name below is her true and genuine signature, and said person is authorized for, on behalf of, and in the name of the Company to:

(A) Negotiate and execute any lease, procurement financing agreement, purchase orders and/or any related and similar agreement with Trilogy Leasing Co., LLC, its successors or assigns ("Trilogy Leasing"), up to an amount not exceeding the amounts set next to respective name and in the aggregate at any one time outstanding, and

(B) Execute in such form as may be required by Trilogy Leasing all ancillary documents and other evidences of such agreements and all related instruments of pledge, assignments or lien.

| Name | Title | Authorization | Signature |
|---|---|---|---|
| Carol Danoff | Vice President, Strategic Sourcing | $25 million | Carol Danoff |

IN WITNESS WHEREOF I have hereunto set my hand as the Assistant Secretary of the Corporation this 18th day of February, 2005.

(Corporate Seal)

Robbie Narcisse
Robbie E. B. Narcisse
Assistant Secretary

{C0046869.1 }S:\robbie\dox\hyster certification

FILED DATE: 11/7/2024 3:06 PM 2024L012540

# CERTIFICATION OF AUTHORITY

I, Robbie E. B. Narcisse, do certify that I am the duly appointed and qualified Assistant Secretary of Pitney Bowes Inc. (the "Corporation"), a corporation organized and existing under the laws of the State of Delaware, and that the person named below has been duly appointed to the position set opposite his name, that he continues to hold same and that the signature set forth opposite his name is his true and genuine signature.

I further certify that the employee named below is authorized to negotiate, execute and deliver agreements with TRILOGY LEASING CO., LLC whereby the Corporation will lease from time to time various items of property to be used in the operation of the business of the Corporation, under terms and conditions which shall be determined by the Corporation to be advisable and in its best interests, the execution of such agreements by said employee being conclusive evidence of approval thereof by the Corporation.

| NAME | TITLE | SIGNATURE |
|---|---|---|
| David G. Gallaer | Director, IT Procurement | [signature] |

IN WITNESS WHEREOF, I have subscribed my name as Assistant Secretary of the Corporation and have caused the corporate seal of the Corporation to be affixed hereto this 3rd day of October, 2001.

(CORPORATE SEAL)

By: [signature]

Robbie E. B. Narcisse
Assistant Secretary
Pitney Bowes Inc.

FILED DATE: 11/7/2024 3:06 PM 2024L012540

# CERTIFICATE OF INCUMBENCY

The Undersigned Assistant Secretary of Pitney Bowes Inc., A Delaware Corporation (the "Company") does hereby certify that:

1. The following listed person serve in the respective capacity set forth opposite the respective name below and the respective signature appearing opposite each name is the true and correct signature;

2. The individual is authorized, on behalf of Pitney Bowes to negotiate, execute and deliver the Schedules of the Master Lease Agreement dated as of November 4, 1999, by and between the Company and Trilogy Leasing Co., LLC, as of this date.

| | NAME | TITLE | SIGNATURE |
|---|---|---|---|
| 3. | M. J. Galaty, Jr. | Director, Computer Contracts & Finance | [signature] |

WITNESS MY HAND and the Corporate Seal of the Company this 14th day of January, 2000.

[signature]
Robbie Narcisse
Assistant General Counsel and
Assistant Secretary

Seal

[redacted]

FILED DATE: 11/7/2024 3:06 PM 2024L012540

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**Lien Solutions**
Representation of filing

**This filing is Completed**
File Number : 20237521668
File Date : 04-Nov-2023

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT SUBMITTER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 13337 - TRILOGY

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

95874505
DEDE

File with: Secretary of State, DE

**SEE BELOW FOR SECURED PARTY CONTACT INFORMATION**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE NUMBER
20188253052 11/29/2018 SS DE

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record
AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. COLLATERAL CHANGE: Check only one box: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
Trilogy Leasing Co., LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA: Debtor Name: Pitney Bowes Global Logistics LLC
95874505 000/0000 Newgistics, Inc.



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

FILED DATE: 11/7/2024 3:06 PM 2024L012540

[redacted]

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 13337 - TRILOGY

Lien Solutions 79648164
P.O. Box 29071 DEDE
Glendale, CA 91209-9071

File with: Secretary of State, DE

**Lien Solutions**
Representation of filing

**This filing is Completed**
File Number : 20212381359
File Date : 26-Mar-2021

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE NUMBER
20188253052 11/29/2018 SS DE

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☒ PARTY INFORMATION CHANGE:
Check one of these two boxes: This Change affects ☒ Debtor or ☐ Secured Party of record
AND Check one of these three boxes to: ☒ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c ☐ ADD name: Complete item 7a or 7b, and item 7c ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
Newgistics, Inc.

OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
Pitney Bowes Global Logistics LLC

OR 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7171 Southwest Parkway Bldg. 300, Suite 400 | Austin | TX | 78735 | USA |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
Trilogy Leasing Co., LLC

OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA: Debtor Name: Pitney Bowes Global Logistics LLC
79648164 000/0000 Newgistics, Inc.



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

FILED DATE: 11/7/2024 3:06 PM 2024L012540

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
LIEN SOLUTIONS 800-331-3282

B. E-MAIL CONTACT AT FILER (optional)
UCCFILINGRETURN@WOLTERSKLUWER.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

P.O. BOX 29071
GLENDALE, CA 91209-9071
US

Delaware Department of State
U.C.C. Filing Section
Filed: 01:01 PM 11/29/2018
U.C.C. Initial Filing No: 2018 8253052

Service Request No: 20187870799

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: NEWGISTICS, INC.

OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7171 SOUTHWEST PARKWAY BLDG. 300, SUITE 400 | AUSTIN | TX | 78735 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: TRILOGY LEASING CO., LLC

OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2551 ROUTE 130 | CRANBURY | NJ | 08512 | US |

4. COLLATERAL: This financing statement covers the following collateral:

All present and future Goods, including but not limited to various computer equipment, personal computers, laptops, peripherals and software, and any replacement, substitution, addition, attachment, modification, update, revisions, enhancement, accessory, insurance proceeds and the cash proceeds of and Goods, wherever located, leased by Trilogy Leasing Co., LLC, as Lessor ("Lessor") to Pitney Bowes Inc., as Debtor/Lessee ("Debtor/Lessee") pursuant to the Master Lease Agreement dated November 2, 1999 between Lessor and Debtor/Lessee. This UCC filing is intended to be for informational and precautionary purposes only and to give notice of Lessor's ownership of the Goods and the existence of a true lease. If any transaction entered into under the Master Lease Agreement is deemed to be other than a true lease, then it is the intention of the parties that Lessor has a properly perfected security interest under the Uniform Commercial Code in the Goods subject to the Master Lease Agreement, or any Schedule entered into pursuant thereto, now or hereafter.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
DE-0-67551312-56208668

FILED DATE: 11/7/2024 3:06 PM 2024L012540

[redacted]

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 13337 - TRILOGY

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

74652077
DEDE

File with: Secretary of State, DE

**Lien Solutions**
Representation of filing

**This filing is Completed**
File Number : 20202683417
File Date : 14-Apr-2020

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: PITNEY BOWES INC.

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 27 Waterview Drive | Shelton | CT | 06484 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME:

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: Trilogy Leasing Co., LLC

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2551 Route 130 | Cranbury | NJ | 08512 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All present and future Goods, including but not limited to various computer equipment, personal computers, laptops, peripherals and software, and any replacement, substitution, addition, attachment, modification, update, revisions, enhancement, accessory, insurance proceeds and the cash proceeds of and Goods, wherever located, leased by Trilogy Leasing Co., LLC, as Lessor ("Lessor") to Pitney Bowes Inc., as Debtor/Lessee ("Debtor/Lessee") pursuant to the Master Equipment Lease Agreement dated November 2, 1999, between Lessor and Debtor/Lessee. This UCC filing is intended to be for informational and precautionary purposes only and to give notice of Lessor's ownership of the Goods and the existence of a true lease. If any transaction entered into under the Master Lease Agreement is deemed to be other than a true lease, then it is the intention of the parties that Lessor has a properly perfected security interest under the Uniform Commercial Code in the Goods subject to the Master Lease Agreement, or any Schedule entered into pursuant thereto, now or hereafter.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☒ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
74652077 000/0000 Pitney Bowes Inc.



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

FILED DATE: 11/7/2024 3:06 PM 2024L012540

[redacted]

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 13337 - TRILOGY

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

90139557
DEDE

File with: Secretary of State, DE

**Lien Solutions**
Representation of filing

**This filing is Completed**
File Number : 20229876111
File Date : 30-Nov-2022

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE NUMBER
20202733600 4/16/2020 SS DE

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes: This Change affects ☐ Debtor or ☐ Secured Party of record
AND Check one of these three boxes to: ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c ☐ ADD name: Complete item 7a or 7b, and item 7c ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME

OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

8. ☒ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☒ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

All present and future Goods, including but not limited to various computer equipment, personal computers, laptops, peripherals and software, and any replacement, substitution, addition, attachment, modification, update, revisions, enhancement, accessory, insurance proceeds and the cash proceeds of and Goods, wherever located, leased by Trilogy Leasing Co., LLC, as Lessor ("Lessor") to Pitney Bowes Presort Services, LLC, as Debtor/Lessee ("Debtor/Lessee") pursuant to the Master Equipment Lease Agreement dated November 2, 1999, between Lessor and Debtor/Lessee. This UCC filing is intended to be for informational and precautionary purposes only and to give notice of Lessor's ownership of the Goods and the existence of a true lease. If any transaction entered into under the Master Equipment Lease Agreement is deemed to be other than a true lease, then it is the intention of the parties that Lessor has a properly perfected security interest under the Uniform Commercial Code in the Goods subject to the Master Equipment Lease Agreement, or any Equipment Supplements entered into pursuant thereto, now or hereafter.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
Trilogy Leasing Co., LLC

OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA: Debtor Name: PITNEY BOWES PRESORT SERVICES, LLC
90139557 000/0000 Pitney Bowes Presort Services,



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

FILED DATE: 11/7/2024 3:06 PM 2024L012540

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 13337 - TRILOGY

Lien Solutions 74686810
P.O. Box 29071 DEDE
Glendale, CA 91209-9071

File with: Secretary of State, DE

**Lien Solutions**
Representation of filing

**This filing is Completed**
File Number : 20202733600
File Date : 16-Apr-2020

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: PITNEY BOWES PRESORT SERVICES, LLC

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 3001 Summer Street | Stamford | CT | 06926 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME:

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: Trilogy Leasing Co., LLC

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 2551 Route 130 | Cranbury | NJ | 08512 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All present and future Goods, including but not limited to various computer equipment, personal computers, laptops, peripherals and software, and any replacement, substitution, addition, attachment, modification, update, revisions, enhancement, accessory, insurance proceeds and the cash proceeds of and Goods, wherever located, leased by Trilogy Leasing Co., LLC, as Lessor ("Lessor") to Pitney Bowes Presort Services, LLC, as Debtor/Lessee ("Debtor/Lessee") pursuant to the Master Equipment Lease Agreement dated November 2, 1990 between Lessor and Pitney Bowes Inc. or any of its subsidiaries or affiliates. This UCC filing is intended to be for informational and precautionary purposes only and to give notice of Lessor's ownership of the Goods and the existence of a true lease. If any transaction entered into under the Master Equipment Lease Agreement is deemed to be other than a true lease, then it is the intention of the parties that Lessor has a properly perfected security interest under the Uniform Commercial Code in the Goods subject to the Master Equipment Lease Agreement, or any Equipment Supplements entered into pursuant thereto, now or hereafter.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☒ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
74686810 000/0000 Pitney Bowes Presort Services, LLC



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

FILED DATE: 11/7/2024 3:06 PM 2024L012540

ACORD®

# EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

DATE (MM/DD/YYYY): 6/5/2024

**THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.**

PRODUCER NAME, CONTACT PERSON AND ADDRESS
PHONE (A/C, No, Ext): 646-572-7300
Lockton Companies
1185 Avenue of the Americas, Suite 2010
New York NY 10036

FAX (A/C, No):
E-MAIL ADDRESS:

CODE:
SUB CODE:

AGENCY CUSTOMER ID #:

COMPANY NAME AND ADDRESS: ***See Attached***
NAIC NO:

IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH

POLICY TYPE: Property

NAMED INSURED AND ADDRESS
1102440
PITNEY BOWES INC.
and its subsidiaries
World Headquarters
3001 SUMMER STREET
STAMFORD CT 06926

LOAN NUMBER:
POLICY NUMBER: SEE ATTACHED

EFFECTIVE DATE: 5/31/2024
EXPIRATION DATE: 5/31/2025
☐ CONTINUED UNTIL TERMINATED IF CHECKED

ADDITIONAL NAMED INSURED(S):

THIS REPLACES PRIOR EVIDENCE DATED:

## PROPERTY INFORMATION (ACORD 101 may be attached if more space is required) ☒ BUILDING OR ☒ BUSINESS PERSONAL PROPERTY

LOCATION / DESCRIPTION 001A

Re: All leased equipment under the Master Equipment Lease dated November 2, 1999 between Pitney Bowes Inc., or any of its subsidiaries or affiliates and Trilogy Leasing Co., LLC.

**THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.**

## COVERAGE INFORMATION

PERILS INSURED: ☐ BASIC ☐ BROAD ☒ SPECIAL

COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE: $ 100,000,000 DED:

| | YES | NO | N/A | | |
|---|---|---|---|---|---|
| ☒ BUSINESS INCOME ☒ RENTAL VALUE | X | | | If YES, LIMIT: | Actual Loss Sustained; # of months: |
| BLANKET COVERAGE | X | | | If YES, indicate value(s) reported on property identified above: $ | |
| TERRORISM COVERAGE | X | | | Attach Disclosure Notice / DEC | |
| IS THERE A TERRORISM-SPECIFIC EXCLUSION? | | | X | | |
| IS DOMESTIC TERRORISM EXCLUDED? | | | X | | |
| LIMITED FUNGUS COVERAGE | | | X | If YES, LIMIT: | DED: |
| FUNGUS EXCLUSION (If "YES", specify organization's form used) | | | X | | |
| REPLACEMENT COST | | | X | | |
| AGREED VALUE | | | X | | |
| COINSURANCE | | | X | If YES, % | |
| EQUIPMENT BREAKDOWN (If Applicable) | X | | | If YES, LIMIT: 100,000,000 | DED: |
| ORDINANCE OR LAW - Coverage for loss to undamaged portion of bldg | X | | | If YES, LIMIT: 100,000,000 | DED: |
| - Demolition Costs | X | | | If YES, LIMIT: 100,000,000 | DED: |
| - Incr. Cost of Construction | X | | | If YES, LIMIT: 100,000,000 | DED: |
| EARTH MOVEMENT (If Applicable) | X | | | If YES, LIMIT: 25,000,000 | DED: |
| FLOOD (If Applicable) | X | | | If YES, LIMIT: 25,000,000 | DED: |
| WIND / HAIL INCL ☒ YES ☐ NO Subject to Different Provisions: | X | | | If YES, LIMIT: Included | DED: |
| NAMED STORM INCL ☒ YES ☐ NO Subject to Different Provisions: | X | | | If YES, LIMIT: Included | DED: |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | | | X | | |

## CANCELLATION

**SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.**

## ADDITIONAL INTEREST

RK [D592441]

☐ CONTRACT OF SALE ☐ LENDER'S LOSS PAYABLE ☒ LOSS PAYEE
☐ MORTGAGEE

LENDER SERVICING AGENT NAME AND ADDRESS

NAME AND ADDRESS
832146
Trilogy Leasing Co., LLC
and its' Assigns, ATIMA
2551 Route 130
Cranbury, NJ 08512

AUTHORIZED REPRESENTATIVE

© 2003-2015 ACORD CORPORATION. All rights reserved.



The ACORD name and logo are registered marks of ACORD

FILED DATE: 11/7/2024 3:06 PM 2024L012540

**EVIDENCE OF COMMERCIAL PROPERTY INSURANCE-Including Special Conditions (Use only if more space is required)**

Earthquake Shock, annual aggregate, in NMSZ, PNWSZ, CA, HI, AK, Puerto Rico, Japan & Int'l. High Hazard Areas $15,000,000 (sublimited EQ to $10,000,000 for Japan; $5,000,000 in , MX, PR, China, New Zealand). $25,000,000 High Hazard Flood.
Trilogy Leasing Co., LLC and its' Assigns, ATIMA are included as loss payee as required by written contract.



Certificate Holder ID: 832146

FILED DATE: 11/7/2024 3:06 PM 2024L012540

| Carrier | Coverage | Layer | Part. (%) | Part. ($) | Paper Name | Policy Number |
|---|---|---|---|---|---|---|
| **All Risk Property** | | | | **$100,000,000** | | |
| Swiss Re | Property | $100M | 20% | $20,000,000 | Westport Insurance Corporation | NAP 0453189 15 |
| Allianz | Property | $100M | 20% | $20,000,000 | Allianz Global Risk US Insurance Company | USP00021824 |
| Liberty Mutual | Property | $100M | 10% | $10,000,000 | Ironshore Specialty Insurance Company | 1000659867-01 |
| C.N.A. | Property | $100M | 10% | $10,000,000 | Columbia Casualty Company | RMP-6073315816 |
| Sompo | Property | $100M | 10% | $10,000,000 | Endurance American Specialty Insurance Co. | ARP30007437703 |
| Everest RE | Property | $100M | 10% | $10,000,000 | Everest Indemnity Insurance Company | RP5P000132-241 |
| AIG | Property | $100M | 15% | $15,000,000 | AIG Specialty Insurance Company | 25032847 |
| AWAC US | Property | $100M | 5% | $5,000,000 | Allied World Assurance Company (U.S.), Inc. | 0313-8579-1A |
| **Standalone Terrorism** | | | | **$100,000,000** | | |
| Mosaic | Terrorism | $100M | 100% | $100,000,000 | Mosaic Americas Insurance Services LLC | B128411090L23 |

FILED DATE: 11/7/2024 3:06 PM 2024L012540

ACORD®

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY) 06/20/2023

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

PRODUCER
Willis Towers Watson Northeast, Inc.
c/o 26 Century Blvd
P.O. Box 305191
Nashville, TN 372305191 USA

CONTACT NAME: Willis Towers Watson Certificate Center
PHONE (A/C, No, Ext): 1-877-945-7378 FAX (A/C, No): 1-888-467-2378
E-MAIL ADDRESS: certificates@willis.com

| INSURER(S) AFFORDING COVERAGE | | NAIC # |
|---|---|---|
| INSURER A : | ACE American Insurance Company | 22667 |
| INSURER B : | Commerce & Industry Insurance Company | 19410 |
| INSURER C : | Indemnity Insurance Company of North Ameri | 43575 |
| INSURER D : | ACE Fire Underwriters Insurance Company | 20702 |
| INSURER E : | | |
| INSURER F : | | |

INSURED
Pitney Bowes Inc. and its Subsidiaries
3001 Summer Street
Stamford, CT 06926

COVERAGES CERTIFICATE NUMBER: W29364964 REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY; CLAIMS-MADE [ ] X OCCUR; GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY [ ] PRO-JECT [ ] LOC; OTHER: | Y | | HDO G72964366 | 07/01/2023 | 07/01/2024 | EACH OCCURRENCE | $ 2,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 2,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 4,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 4,000,000 |
| | | | | | | | | $ |
| A | AUTOMOBILE LIABILITY; X ANY AUTO; OWNED AUTOS ONLY; SCHEDULED AUTOS; HIRED AUTOS ONLY; NON-OWNED AUTOS ONLY | | | ISA H25579835 | 07/01/2023 | 07/01/2024 | COMBINED SINGLE LIMIT (Ea accident) | $ 3,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB X OCCUR; EXCESS LIAB [ ] CLAIMS-MADE; DED RETENTION $ | | | 032676463 | 07/01/2023 | 07/01/2024 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| | | | | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY; ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) Y/N: No; If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | WLR C70319536 | 07/01/2023 | 07/01/2024 | X PER STATUTE [ ] OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 2,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 2,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 2,000,000 |
| A | Workers Compensation and Employers' Liability Per Statute | | | WLR C70319573 | 07/01/2023 | 07/01/2024 | E.L. Each Accident | $2,000,000 |
| | | | | | | | E.L. Disease - EA Emp | $2,000,000 |
| | | | | | | | E.L. Disease-Pol LMT | $2,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

SEE ATTACHED

CERTIFICATE HOLDER

Trilogy Leasing Co., LLC and its
successors and or assigns ATIMA
2551 Route 130
Cranbury, NJ 08512

CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE

© 1988-2016 ACORD CORPORATION. All rights reserved.



The ACORD name and logo are registered marks of ACORD

SR ID: 24289227 BATCH: 3021245

FILED DATE: 11/7/2024 3:06 PM 2024L012540

AGENCY CUSTOMER ID: ______

LOC #: ______

ACORD®

# ADDITIONAL REMARKS SCHEDULE



| | |
|---|---|
| AGENCY<br>Willis Towers Watson Northeast, Inc. | NAMED INSURED<br>Pitney Bowes Inc. and its Subsidiaries<br>3001 Summer Street<br>Stamford, CT 06926 |
| POLICY NUMBER<br>See Page 1 | |
| CARRIER<br>See Page 1 / NAIC CODE<br>See Page 1 | EFFECTIVE DATE: See Page 1 |

## ADDITIONAL REMARKS

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: 25 FORM TITLE: Certificate of Liability Insurance

Equipment Being leased under the Master Equipment Lease Agreement Number PB-001 dated as of November 2, 1999 between Trilogy Leasing Co., LLC, and Pitney Bowes, Inc., or any of its subsidiaries or affiliates.
Trilogy Leasing Co., LLC and its successors and/or assigns are included as Additional Insureds as respects to General Liability and Auto Liability where required by written contract.
The Umbrella policy is Follows Form."

INSURER AFFORDING COVERAGE: ACE Fire Underwriters Insurance Company NAIC#: 20702
POLICY NUMBER: SCF C70319615 EFF DATE: 07/01/2023 EXP DATE: 07/01/2024

| TYPE OF INSURANCE: | LIMIT DESCRIPTION: | LIMIT AMOUNT: |
|---|---|---|
| Workers Compensation and | E.L. Each Accident | $2,000,000 |
| Employers' Liability | E.L. Disease - EA Emp | $2,000,000 |
| Per Statute | E.L. Disease-Pol LMT | $2,000,000 |

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

SR ID: 24289227 BATCH: 3021245 CERT: W29364964

FILED DATE: 11/7/2024 3:06 PM 2024L012540

## NOTICE TO OTHERS ENDORSEMENT – SCHEDULE

| Named Insured Pitney Bowes Inc | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G72491075 | Policy Period<br>7/1/2021 to 7/1/2022 | Effective Date of Endorsement<br>7/1/2021 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

A. If we cancel the Policy prior to its expiration date by notice to you or the first Named insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule that you or your representative provide or have provided to us (the "Schedule"). You or your representative must provide us with the physical and/or e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.

B. The Schedule must be initially provided to us within 15 days after:

   i. The beginning of the Policy period, if this endorsement is effective as of such date; or

   ii. This endorsement has been added to the Policy, if this endorsement is effective after the Policy period commences.

C. The Schedule must be in an electronic format that is acceptable to us; and must be accurate.

D. Our delivery of the notification as described in Paragraph A. of this endorsement will be based on the most recent Schedule in our records as of the date the notice of cancellation is mailed or delivered to the first Named Insured.

E. We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.

F. The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

G. We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with a Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.

H. We may arrange with your representative to send such notice in the event of any such cancellation.

I. You will cooperate with us in providing the Schedule, or in causing your representative to provide the Schedule.

J. This endorsement does not apply in the event that you cancel the Policy.

All other terms and conditions of the Policy remain unchanged.

Authorized Representative

FILED DATE: 11/7/2024 3:06 PM 2024L012540

1

# NOTICE TO OTHERS ENDORSEMENT – SCHEDULE

| | | | |
|---|---|---|---|
| Named Insured Pitney Bowes Inc. | | | Endorsement Number |
| Policy Symbol ISA | Policy Number H25550511 | Policy Period 7/1/2021 to 7/1/2022 | Effective Date of Endorsement 7/1/2021 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Enter ... the remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

A. If we cancel the Policy prior to its expiration date by notice to you or the first Named Insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule that you or your representative provide or have provided to us (the "Schedule"). You or your representative must provide us with the physical and/or e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.

B. The Schedule must be initially provided to us within 15 days after:

i. The beginning of the Policy period if this endorsement is effective as of such date; or

ii. This endorsement has been added to the Policy if this endorsement is effective after the Policy period commences.

C. The Schedule must be in an electronic format that is acceptable to us, and must be accurate.

D. Our delivery of the notification as described in Paragraph A. of this endorsement will be based on the most recent Schedule in our records as of the date the notice of cancellation is mailed or delivered to the first Named Insured.

E. We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.

F. The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

G. We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with a Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.

H. We may arrange with your representative to send such notice in the event of any such cancellation.

I. You will cooperate with us in providing the Schedule, or in causing your representative to provide the Schedule.

J. This endorsement does not apply in the event that you cancel the Policy.

All other terms and conditions of the Policy remain unchanged.

Authorized Representative

FILED DATE: 11/7/2024 3:06 PM 2024L012540

Trilogy Leasing Co., LLC

I, Thomas Halas, being Treasurer of Trilogy Leasing Co., LLC, hereby certify to Kingsbridge Holdings, LLC that the attached Secretary's Certificate dated October 27, 2014 is a true and complete copy of the original Secretary's Certificate which is in the possession of the undersigned and will be retained by the undersigned for the exclusive use and benefit of Kingsbridge Holdings, LLC and other assignees and owners of all equipment schedules entered into pursuant to the Master Lease.

Thomas Halas
Treasurer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

Trilogy Leasing Co., LLC

## SECRETARY'S CERTIFICATE

I, David J. Lieberman, Chief Financial Officer of Trilogy Leasing Co., LLC, a New Jersey Limited Liability Company, having been duly authorized by the Board of Managers, hereby certify that;

1. The following resolutions have been duly adopted by the Board of Managers of Trilogy Leasing Co., LLC and are in full force and effect and have not been amended:

RESOLVED: That the Limited Liability Company is authorized to enter into and perform certain Master Lease Agreements, Schedules, and Amendments thereto between Lessee and Trilogy Leasing Co., LLC as Lessor; and further

RESOLVED: That the officers listed below are hereby authorized to execute any documents necessary to carry out the purpose of the foregoing resolution, including debt agreements and instruments in connection with the assignment of lease rentals to a lender, their execution thereof to be conclusive evidence of their approval and the approval of the Board of Managers; and further

RESOLVED: That all acts authorized in the foregoing resolutions, but performed prior to the adoption of these resolutions, are hereby ratified and affirmed.

2. The persons named below are duly elected, qualified and acting officers of Trilogy Leasing Co., LLC holding the offices as listed below of the Limited Liability Company and the signature opposite their names are genuine signatures.

| Name | Office | Signature |
|---|---|---|
| Jeffrey A. Liebenthal | President and CEO | Jeffrey A. Liebenthal |
| Thomas Halas | Treasurer | Thomas Halas |
| Lori Ann Eilbacher | Chief Administrative Officer | Lori Ann Eilbacher |

IN WITNESS THEREOF, I have set my hand and affixed the seal on this 27th day of October, 2014

Chief Financial Officer

FILED DATE: 11/7/2024 3:06 PM 2024L012540

Trilogy Leasing Co., LLC

# SECRETARY'S CERTIFICATE

I, Lori Ann Eilbacher, Chief Administrative Officer of Trilogy Leasing Co., LLC, a New Jersey Limited Liability Company, having been duly authorized by the Board of Managers, hereby certify that;

1. The following resolutions have been duly adopted by the Board of Managers of Trilogy Leasing Co., LLC and are in full force and effect and have not been amended:

RESOLVED: That the Limited Liability Company is authorized to enter into and perform certain Master Lease Agreements, Schedules, and Amendments thereto between Lessee and Trilogy Leasing Co., LLC as Lessor: and further

RESOLVED: That the officers listed below are hereby authorized to execute any documents necessary to carry out the purpose of the foregoing resolution, including debt agreements and instruments in connection with the assignment of lease rentals to a lender, their execution thereof to be conclusive evidence of their approval and the approval of the Board of Managers; and further

RESOLVED: That all acts authorized in the foregoing resolutions, but performed prior to the adoption of these resolutions, are hereby ratified and affirmed.

2. The persons named below are duly elected, qualified and acting officers of Trilogy Leasing Co., LLC holding the offices as listed below of the Limited Liability Company and the signature opposite their names are genuine signatures.

| Name | Office | Signature |
| --- | --- | --- |
| Jeffrey A. Liebenthal | President and CEO | Jeffrey A. Liebenthal |
| David Lieberman | Chief Financial Officer | [signature] |
| Thomas Halas | Treasurer | Thomas Halas |

IN WITNESS THEREOF, I have set my hand and affixed the seal on this 27th day of October, 2014

[signature]

Chief Administrative Officer