UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KINGSBRIDGE HOLDINGS, LLC and TRILOGY LEASING CO., LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PITNEY BOWES INC. and PITNEY BOWES PRESORT SERVICES, LLC, <br><br> Defendants. | No. 24 C 12906 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

After a former subsidiary of Pitney Bowes Inc. ("PBI") entered bankruptcy and the business relationship between the parties broke down, Plaintiffs Kingsbridge Holdings, LLC ("Kingsbridge") and Trilogy Leasing Co., LLC ("Trilogy") filed the instant action against PBI and Pitney Bowes Presort Services, LLC ("Presort"). Kingsbridge and Trilogy allege that PBI and Presort violated a series of contracts between the parties. Now, PBI and Presort move to dismiss Trilogy from this case for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and dismiss parts of the breach of contract claim against them based on Federal Rule of Civil Procedure 12(b)(6). PBI and Presort also request that this Court stay this case pending the resolution of an adversary proceeding in the Southern District of Texas. Because Trilogy lacks standing to bring this case, but the complaint adequately states a claim for breach of contract, the Court grants in part, and denies in part, Defendants' motion to dismiss, and denies Defendants' motion to stay [14].

# BACKGROUND[1]

PBI is a Delaware corporation, with its corporate headquarters in Connecticut, which regularly does business in Illinois. Presort is a subsidiary of PBI, registered in Delaware and with its corporate headquarters in Connecticut, which also does business in Illinois. In November 1999, PBI entered into a Master Lease Agreement with Trilogy, an equipment leasing business. Trilogy is a New Jersey limited liability company with its corporate headquarters in Illinois. The Master Lease Agreement provided terms for PBI or its subsidiaries to lease equipment from Trilogy through separate lease agreements called "Equipment Supplements." Doc. 1-1 at 21. Specifically, the Master Lease Agreement provides that:

> This Master Lease, and each of the terms, covenants, conditions, provisions, and agreements herein contained will be incorporated in each Equipment Supplement thereby in full to the same extent as if each of the terms, covenants, conditions, provisions and agreements had been repeated and set forth in full therein, except to the extent that the Master Lease may conflict, or be inconsistent with the terms and provisions of such Equipment Supplement. In the event of any inconsistency or conflict between the terms and provisions of the Master Lease and terms and provisions of an Equipment Supplement, the terms and provisions of such Equipment Supplement shall prevail. It is the intention of the parties hereto that each Equipment Supplement shall constitute a separate lease, apart and distinct from the Master Lease or any other Equipment Supplement thereto.

*Id.*

---

[1] The Court takes the facts from Plaintiffs' complaint and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court also considers the agreements attached as exhibits to the complaint and the record in the U.S. Bankruptcy Court for the Southern District of Texas adversary proceeding, *DRF, LLC v. Trilogy Leasing Co.*, No. 24-03205 (Bankr. S.D. Tex. Oct. 1, 2024). *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[W]hen a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint."); *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.").

2

In February 2019, Trilogy and PBI executed "Amendment Number 1" to the Master Lease Agreement, which amended the Master Lease Agreement to permit electronic execution of Equipment Supplements. In May 2020, Trilogy and PBI executed "Amendment Number 2" to the Master Lease Agreement, which contained two key modifications. First, it permitted "subsidiaries and affiliates of Lessee [to] enter into Equipment Supplements on their own and [to] be treated as a 'Lessee' for purpose of the Equipment Supplement without the need for [PBI] to also execute the Equipment Supplement." Doc. 1-1 at 14. Second, Amendment Number 2 stated that:

> Lessor and [PBI] acknowledge and agree that any of [PBI]'s subsidiaries or affiliates (an entity in which [PBI] owns a controlling interest) may enter directly into an Equipment Supplement, and [PBI] shall be jointly and severally liable with said subsidiary or affiliate for the obligations under such Equipment Supplement and Master Lease as it relates to such Equipment Supplement and the Equipment described therein. Such subsidiary or affiliate shall be considered an additional Lessee with [PBI] for the purposes of said Equipment Supplement.

*Id.* Further, in November 2022, Trilogy and PBI executed "Amendment Number 3," which stated, among other provisions that:

> The following additional events shall be considered Events of Default under Equipment Supplement Numbers 47, 50, 51 and 77 and any Equipment Supplement entered into after August 1, 2022 (but, except as expressly set forth herein, not any Equipment Supplement entered into prior to such date):
> (1) PB ceases to do business as a going concern.
> (2) PB defaults under any other contractual obligation to Lessor (including any assignee of Lessor which becomes Lessor) and such default has not been cured within the prescribed period(s) permitted under the contract related to such obligation.

*Id.* at 9.

After PBI entered the Master Lease Agreement with Trilogy, Presort executed approximately thirty Equipment Supplements with Trilogy (the "Presort Supplements"). PBI itself executed more than ten Equipment Supplements with Trilogy (the "PBI Supplements").

At the time it entered the Master Lease Agreement, PBI owned a controlling interest in DRF Logistics, LLC. DRF Logistics, LLC wholly owns subsidiary DRF, LLC (together DRF Logistics, LLC and DRF, LLC are "DRF"[2]). DRF contained PBI's e-commerce business arm. DRF executed approximately eighty Equipment Supplements with Trilogy (the "DRF Supplements").

Kingsbridge is a Nevada company, with its principal place of business in Illinois, which indirectly owns and controls Trilogy. Between 2018 and 2024, Trilogy assigned all of the Equipment Supplements at issue in this case to Kingsbridge. The assignment agreements between Trilogy and Kingsbridge contain the following assignment language:

> Seller hereby unconditionally and irrevocably assigns and sets over unto Buyer, all of its right, title and interest in, under and to the Lease and all of Seller's rights and interests in the Lease, and the Equipment, including without limitation that number of consecutive monthly lease payments each in the amount and payable commencing as set forth in said Lease[.]

*See, e.g.*, Doc. 1-3 at 11, 55, 215.

In July 2024, PBI entered into an Asset Purchase Agreement with Stord Fulfillment, LLC ("Stord"), attempting to sell the equipment that Trilogy leased to PBI and its affiliates under the Equipment Supplements. PBI entered into the Asset Purchase Agreement with Stord without notice to or consent from Trilogy or Kingsbridge. In August 2024, PBI sold its controlling interest in DRF Logistics, LLC to a third-party. After that sale, DRF filed a voluntary Chapter

---

[2] Based on the parties' allegations, DRF was previously known as Pitney Bowes Global Logistics LLC and Newgistics, Inc.

4

11 bankruptcy petition in Texas.³ As of the time of the bankruptcy filing, a group of the Equipment Supplements were in default, and payments on those Equipment Supplements had ceased. On October 3, 2024, after Trilogy had assigned the Equipment Supplements to Kingsbridge, Trilogy sent PBI a demand letter regarding the Equipment Supplements.

In October 2024, in the pending DRF bankruptcy, DRF instituted an adversary proceeding against Trilogy, seeking to: (1) recharacterize the DRF Supplements as fixture purchase agreements, rather than leases; (2) determine the amount owed thereunder; and (3) clawback certain payments. That adversary proceeding remains pending with a trial date of January 29, 2026, and the bankruptcy court has granted PBI's motion to intervene in that case. Trilogy has moved to dismiss that adversary proceeding, arguing that it is not the proper defendant in that adversary proceeding because it assigned each of the DRF Supplements to Kingsbridge. That motion to dismiss remains pending at the time of this Court's opinion.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Where, as here, the defendants argue that a "plaintiff lacks standing even if the well-pleaded allegations in the complaint are taken as true," defendants are making a facial challenge. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (quoting *Flynn v. FCA U.S. LLC*, 39 F.4th 946, 952 (7th Cir. 2022)).

---

[3] The Court notes that in the complaint, Plaintiffs stated that DRF filed their bankruptcy petition in the U.S. Bankruptcy Court for the Western District of Texas, however publicly filed records in the bankruptcy proceeding show DRF filed their petition in the U.S. Bankruptcy Court for the Southern District of Texas. *See In re DRF Logistics, LLC*, No. 24-90447, Doc. 1 (Bankr. S.D. Tex. Aug. 8, 2024). For purposes of resolving this motion, the Court takes judicial notice of the pending DRF bankruptcy in the Southern District of Texas.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.      Standing**

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "Standing to sue is an important component of that limitation." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560–61). "To survive a facial challenge to standing, a plaintiff's complaint must 'allege sufficient factual matter to support the inference that standing

exists' and 'clearly allege facts demonstrating each element of standing.'" *Shirafkan v. Noem*, No. 24 C 11686, 2025 WL 1141180, at *2 (N.D. Ill. Apr. 16, 2025) (quoting *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th at 528).

The Court finds that Trilogy lacks standing in this lawsuit because it does not possess a legally protected interest in the contracts at issue. An injury in fact, for purposes of Article III standing, "is 'an invasion of a legally protected interest which is (a) concrete and particularized,' and '(b) actual or imminent, not conjectural or hypothetical.'" *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 598 (7th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560). Plaintiffs have not adequately alleged, based on their statements in the complaint, that Trilogy possesses a legally protected interest in the contracts at issue in this case. Plaintiffs admit that Trilogy assigned its interest in the Equipment Supplements to Kingsbridge and attached the assignment agreements to the complaint, which show that Trilogy "unconditionally and irrevocably" assigned "all of its right, title and interest in, under and to the" Equipment Supplements to Kingsbridge. *See, e.g.*, Doc. 1-3 at 11, 55, 215. Because Trilogy assigned its rights under the Equipment Supplements such that it does not possess any ongoing legally protected interest in those contracts, Trilogy has failed to establish standing. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009) (finding that where a letter indicated that the plaintiff had assigned all rights in the accounts receivable at issue to someone else, and plaintiff failed to rebut that evidence, the district court properly dismissed the plaintiff for lack of standing); *Midrad, LLC v. Dane Cnty.*, 676 F. Supp. 2d 795, 799 (W.D. Wis. 2009) ("Because the town does not suggest that is a party to that contract, it has no legally protected interest in seeing that plaintiff complies with the contract.").

In Plaintiffs' opposition to the motion to dismiss, Plaintiffs argue that "Trilogy arguably retains a reversionary interest in" the Equipment Supplements involved in this case. Doc. 18 at 1. However, Plaintiffs do not cite anything for this proposition or further develop the argument in their brief. "[I]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Sam Malone Hot Wheel LLC v. ASAP Trans Corp.*, No. 22 C 3572, 2023 WL 12039693, at *3 (N.D. Ill. June 13, 2023) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998)). The Court finds that the language of the assignment agreements contradicts Plaintiffs' assertions that Trilogy retains a reversionary interest because the assignment agreements expressly state that the assignments are "unconditional[] and irrevocabl[e]." *See, e.g.*, Doc. 1-3 at 11, 55, 215. Plaintiffs have also not developed any arguments explaining how Trilogy possesses a reversionary or residual interest in the contracts. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor [the Court of Appeals] are obliged to research and construct legal arguments for parties, especially when they are represented by counsel.").

Further, Trilogy also fails to persuade this Court that it is premature to rule on standing because Trilogy is the defendant in an adversary proceeding in the DRF bankruptcy case concerning the Equipment Supplements. Trilogy again does not cite any legal authority to support this argument. Moreover, Trilogy has moved to dismiss that proceeding, arguing that it is not the appropriate defendant because it has assigned its interest in the Equipment Supplements to Kingsbridge. *See DRF, LLC v. Trilogy Leasing Co.*, No. 24-90447, Doc. 18 at 5 (Bankr. S.D. Tex. Oct. 1, 2024); *Montgomery v. Markel Int'l Ins. Co.*, 259 F. Supp. 3d 857, 868 (N.D. Ill. 2017) ("Ensuring the existence of subject-matter jurisdiction is the court's first duty in

8

every lawsuit." (citation omitted)). In sum, the Court finds that Trilogy lacks standing to bring this lawsuit and grants Defendants' request to dismiss Trilogy from this case.[4]

## II. Sufficiency of the Allegations

Next, the Court turns to Defendants' arguments that the Court should dismiss Kingsbridge's[5] claims as to the PBI Supplements and Presort Supplements for failure to state a claim. However, before the Court can reach the merits of Defendants' arguments, it must determine what law governs the Equipment Supplements.

### A. Choice of Law

The Court begins by noting that each of the Master Lease Agreement and Equipment Supplements, by incorporation, contain a choice of law provision stating that "[t]he Lease shall be governed by and interpreted in accordance with the laws of Connecticut." *E.g.*, Doc. 1-1 at 33. The parties dispute whether Illinois or Connecticut law applies under the circumstances of this case, and so this Court must conduct a choice of law analysis.

Pursuant to *Erie Railroad Co. v. Tompkins*, federal courts with diversity jurisdiction must apply state law with respect to substantive matters. 304 U.S. 64, 78 (1938). To determine which state's substantive law applies, the Court must utilize the forum state's, Illinois', choice of law rules. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). Under the circumstances of this case, where the parties' memorialized their agreement in a contract with a choice of law provision, the Court follows Illinois choice of law rules:

> Under Illinois law[,] the contract's choice-of-law clause generally controls . . . . But there are two exceptions to this rule. [1] The law chosen by the parties cannot create a result that is contrary to the chosen state's fundamental public policy . . . and [2] the law

---

[4] The Court finds that it is appropriate to dismiss Trilogy without prejudice, as Trilogy may be able to amend its claims to properly allege standing.
[5] Because the Court is dismissing Trilogy from this action, the Court will refer to Kingsbridge as the remaining plaintiff for the remainder of the opinion.

> chosen by the parties cannot create a result that is contrary to the 'fundamental policy of a state which has a materially greater interest' in the subject matter of the litigation.

*Hendricks v. Novae Corp. Underwriting, Ltd.*, 868 F.3d 542, 545 (7th Cir. 2017) (quoting *Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Ill.*, 209 Ill. App. 3d 144, 154 (1990)).

In their reply, Defendants argue that Illinois law should apply because the Equipment Supplements at issue govern fixtures, which are part of real property, located in Illinois. In support of this argument, Defendants cite to a 1992 case regarding a real estate contract, which itself referred to the Restatement (Second) of Conflicts of Laws for the proposition that "it is a firmly established principle that questions involving interests in immovables are governed by the law of the situs." *Lake Cnty. Tr. Co. v. Two Bar B, Inc.*, 238 Ill. App. 3d 589, 595 (1992) (quoting Restatement (Second) of Conflict of Laws § 223, Introductory Note (1971)). Defendants' argument appears to be that the second exception to the general rule applies, because Illinois has a materially greater interest in the subject of this litigation because the Equipment Supplements concern fixtures to real property in Illinois.

In determining whether a state has a materially greater interest in the subject matter of litigation, courts look to "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." *Hendricks*, 868 F.3d at 545 (citation omitted). Here, the complaint and documents attached thereto do not contain any information on the place of contracting, negotiation, or performance, so those factors are neutral. *See id.* (finding that factors are neutral when the record does not contain any information on a factor). However, the Equipment Supplements contain information on the "State of Original Location" and "Original Installation Site" of the subject matter of the Equipment Supplements, which seem to be the location of the subject matter of the contract, and

10

which include addresses in more than ten different states, including both Illinois and Connecticut. *See, e.g.*, Doc. 26 at 97; Doc. 29 at 27, 77, 119; Doc. 42 at 15, 27, 58; Doc. 55 at 5, 26. Because the Equipment Supplements contain locations of the subject matter of the contracts in both states, and many other states, the Court finds this factor is also neutral. *See S&C Elec. Co. v. Earthshine Corp.*, No. 21 C 02872, 2025 WL 963984, at *5 (N.D. Ill. Mar. 31, 2025) (finding that neither state had a materially greater interest in the subject matter of the litigation where the subject matter of the contract involved both states at issue). Further, the location of incorporation and place of business for the parties factor is also neutral as the complaint states the following information about the parties, which shows that neither state's interest deserves greater weight: Kingsbridge is incorporated in Nevada with its principal place of business in Illinois; Trilogy is incorporated in New Jersey with its principal place of business in Illinois; PBI is a Delaware corporation with its principal place of business in Connecticut; and Presort is a Delaware company with its principal place of business in Connecticut. *See Hendricks*, 868 F.3d at 545 (finding the domicile, residence, and place of business factor neutral where one party had its principal place of business in one state at issue, and a different party had its headquarters in the other state at issue). Because each of the factors is neutral, the Court finds that Illinois does not have a materially greater interest in the subject matter of the litigation than Connecticut, and it is appropriate to apply Connecticut law. *See S&C Elec. Co.*, 2025 WL 963984, at *5 (finding that where the factors were neutral, no state had a materially greater interest in the outcome of the case, and it was proper to follow the contract's choice-of-law clause).

Additionally, the Court finds that it is not appropriate at this phase to accept Defendants' argument that the Equipment Supplements govern fixtures located in Illinois. Under either Illinois or Connecticut law, a "fixture" is personal property that becomes incorporated or

strongly connected to realty. *See, e.g.*, *Wind Colebrook S., LLC v. Town of Colebrook*, 344 Conn. 150, 171 (2022) ("A fixture is 'a piece of personal property [that] has become so connected to realty . . . as to have lost its character as personalty[.]" (citation omitted)); *Sw. Bank of St. Louis v. Poulokefalos*, 401 Ill. App. 3d 884, 889 (2010) ("A fixture is an item of personal property which is incorporated into or attached to realty."). Based on the complaint and the Equipment Supplements, the Court does not have sufficient information to determine whether the Equipment Supplements govern fixtures located in Illinois, as many of the Equipment Supplements support that the items they govern were located in states other than Illinois and do not contain information on moving the items. Because it is not appropriate for the Court to determine this factual issue at this time, the Court rejects Defendants' arguments concerning fixtures and finds it appropriate to apply Connecticut law to resolve the motion to dismiss. *See, e.g.*, *Cuenca v. Harris & Harris, Ltd.*, No. 16 C 5385, 2017 WL 1196922, at *3 (N.D. Ill. Mar. 31, 2017) (refusing to decide a factual question at the motion to dismiss stage because such a determination would be inappropriate); *United States v. LaSalle Bank, N.A.*, No. 07 C 6196, 2008 WL 4874169, at *2 (N.D. Ill. July 29, 2008) (accumulating cases and explaining that a court should not resolve factual disputes at the motion to dismiss stage).

### B. Breach of Contract

Next, the Court moves on to the merits of Defendants' breach of contract arguments. In short, Defendants argue that Kingsbridge fails to state a claim as to the PBI and Presort Supplements because the language of the Equipment Supplements and the allegations in the complaint do not support that PBI and Presort breached the PBI and Presort Supplements, and without a plausible allegation that PBI and Presort breached the PBI and Presort Supplements, the Court should dismiss those claims.

The elements of a breach of contract under Connecticut law are: (1) the formation of an agreement, (2) one party performing under the agreement, (3) the other party breaching the agreement, and (4) damages. *See Meyers v. Livingston, Adler, Paulda, Meiklejohn, & Kelly, P.C.*, 311 Conn. 282, 291 (2014). Where a contract's terms are "clear and unambiguous," a court deciding a motion to dismiss a breach of contract claim must give the contract "effect according to its terms, and the determination of the parties' intent is a question of law." *Prysmian Cables & Sys. USA LLC v. ADT Com. LLC*, 665 F. Supp. 3d 236, 244 (D. Conn. 2023) (quoting *Nation-Bailey v. Bailey*, 316 Conn. 182, 192 (2015)). However, if the contract's language is ambiguous, it raises a question of fact that is not appropriate for the Court to determine at the motion to dismiss stage. *See id.* A contract's terms are unambiguous "if the contract language has a definite and precise meaning . . . and concerning which there is no reasonable basis for a difference of opinion." *Walker v. People's United Bank*, 305 F. Supp. 3d 365, 374 (D. Conn. 2018) (citation omitted) (applying Connecticut law). Here, Defendants take issue with the breach element of Kingsbridge's breach of contract claim.

In the complaint, among other allegations, Kingsbridge alleges that PBI entered into an asset purchase agreement with Stord attempting to sell the "equipment and other property leased to PBI and its affiliates under the Master Lease Agreement and Equipment Supplements." Doc. 1-1 at 5. Kingsbridge alleges that this purported sale breached the Equipment Supplements. Taking the facts pleaded in the complaint in the light most favorable to Kingsbridge, at the time that PBI entered the agreement with Stord, PBI controlled both Presort and DRF, such that PBI may have possessed authority to enter a binding agreement with Stord on their behalf. Further, the Court finds, based on its review of the Master Lease Agreement and Equipment Supplements, that this is a plausible argument, which unambiguous language of the contracts do

13

not foreclose. Therefore, altogether, because Kingsbridge alleges that PBI possessed the authority to enter agreements on its behalf and on behalf of Presort and DRF; PBI entered into an agreement with Stord purporting to sell the property subject to the PBI, Presort, and DRF Supplements; and entering into such an agreement was a breach of the Equipment Supplements, Kingsbridge adequately pleads breach of contract claims for the PBI Supplements and Presort Supplements.

Additionally, in the complaint, Kingsbridge alleges that:

> All of the Equipment Supplements attached as Group Exhibit B are in default as of the bankruptcy filing, which is an event of default, and also, payments have ceased and other events of default such as the transfer of substantially all of the assets of an entity to which a particular Equipment Supplement relates and the attempted repudiation and/or recharacterization of the leases have occurred.

Doc. 1-1 at 5. Group Exhibit B includes some of the Presort Supplements. *See, e.g.*, Doc. 23 at 6; Doc. 24 at 3, 22, 42; Doc. 26 at 28, 51. While Presort is not in bankruptcy, taking the allegation in the light most favorable to Kingsbridge, the Court understands Kingsbridge to allege that Presort ceased payments on its Equipment Supplements included in Group Exhibit B. Under the terms of the Master Lease and the Equipment Supplements, the Court finds this a plausible allegation of breach of some of the Presort Supplements. *See* Doc. 1-1 at 28–29.

Defendants argue that Kingsbridge's allegations regarding PBI selling the property leased under the Master Lease Agreement and Equipment Supplements and ceasing payments on the Equipment Supplements in Group Exhibit B only relate to the DRF Equipment Supplements such that Kingsbridge did not allege any breaches concerning the PBI and Presort Equipment Supplements. The Court finds that this argument fails based on the terms of the complaint, when interpreted in the light most favorable to Kingsbridge. The language used in the complaint to describe PBI entering into an agreement with Stord to sell "equipment and other property leased

14

to PBI and its affiliates under the Master Lease Agreement and Equipment Supplements" does not limit PBI's alleged actions to merely the DRF Supplements. *See id.* at 5. Rather, it is expansive in such a way that its natural meaning encompasses the PBI Supplements and Presort Supplements, noting that PBI entered into an agreement to sell "*its and its affiliates*" leased equipment. *Id.* (emphasis added). The Court can also reasonably infer that because PBI controlled its subsidiary Presort, that PBI's agreement with Stord also encompassed the Presort Supplements and was an attempted sale of the leased equipment by Presort through PBI. Further, while Kingsbridge refers to Group Exhibit B in the complaint as containing the DRF Supplements, Group Exhibit B contains DRF Supplements and some Presort Supplements. *Compare id.* at 4 ("DRF collectively and cumulatively executed approximately 80 Equipment Supplements, copies of which are attached as Group Exhibit B."), *with* Doc. 24 at 28, 52 (containing Presort Supplements). Because Group Exhibit B contains some Presort Supplements, it follows that Kingsbridge's allegations that payments ceased on the Equipment Supplements in Group Exhibit B cover those Presort Supplements.

Kingsbridge also alleges that it has adequately pleaded that PBI and Presort breached the PBI Supplements and Presort Supplements through its allegations that PBI sold its interest in DRF Logistics and DRF entered bankruptcy. Defendants argue that these allegations do not suffice because they only concern the DRF Supplements and the parties did not incorporate the cross-default provision in Amendment Number 3 into the PBI Supplements and Presort Supplements such that the PBI Supplements and Presort Supplements would be in default as a result of any default of the DRF Supplements. The Court need not resolve this issue at the motion to dismiss stage because Kingsbridge alleges that PBI and Presort engaged in breaches of the PBI Supplements and Presort Supplements through their other allegations that PBI and

15

Presort attempted to sell the leased equipment under the PBI Supplements and Presort Supplements, and that Presort ceased payment on some of the Presort Supplements. *See Prysmian Cables & Sys. USA LLC*, 665 F. Supp. 3d at 245 (declining to resolve a contract interpretation issue at the motion to dismiss stage where the plaintiff plausibly alleged that defendant violated a different clause in the contract such that plaintiff had adequately stated a breach of contract claim).

### III.  Motion to Stay

Finally, Defendants ask that the Court stay this case pending the resolution of the adversary proceeding in the DRF bankruptcy. District courts have inherent power to control their own dockets, including the power to stay proceedings before them. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). How best to manage the Court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). In determining whether to exercise its discretion to stay proceedings, the Court considers "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *Berkeley\*IEOR v. Teradata Operations, Inc.*, No. 17 C 7472, 2019 WL 1077124, at \*5 (N.D. Ill. Mar. 7, 2019).

The Court does not find it appropriate to stay this case pending the resolution of the DRF bankruptcy adversary proceeding. First, it does not appear that a stay would simplify the issues or streamline the trial in this case. While some issues in dispute in the DRF bankruptcy adversary proceeding may be relevant to topics before this Court, such as the issue of whether

16

the Equipment Supplements govern fixtures, the foundational issues in this case remain entirely different. A resolution of any of the claims in the DRF bankruptcy adversary proceeding would not resolve any outstanding portion of this case. *See Dacian Master Fund, LP v. Wander*, No. 24-1549, 2025 WL 1203106, at *2 (S.D. Ind. Feb. 11, 2025) (finding that a stay would not simplify the issues available for discovery when the cause of the requested stay could not limit or narrow the claims that would proceed). Defendants argue that if the bankruptcy court recategorizes the Equipment Supplements as fixture financing agreements, PBI will have additional defenses in this case, simplifying issues. However, Defendants' argument does not persuade the Court because the bankruptcy court adversary proceeding only includes the DRF Supplements, which would leave interpretation of the PBI Supplements and Presort Supplements unresolved; and Defendants already argue that the Equipment Supplements govern fixtures in this case. In short, Defendants will need to fully prove their defenses based on their assertion that the Equipment Supplements are fixture agreements in this case, regardless of the outcome of the DRF bankruptcy adversary proceeding. Second, a stay would not reduce the burden of litigation on the parties or the Court because, as discussed previously, the DRF bankruptcy adversary proceeding will not eliminate any of the claims, so this case will proceed to discovery regardless. Finally, the Court finds that the prejudice issue is neutral because the Court expects that the bankruptcy court will likely resolve the adversary proceeding in a timely manner such that neither party will face a tremendous burden from starting discovery in the meantime. In sum, the Court denies Defendants' motion to stay.

## CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendants' motion to dismiss, and denies Defendants' motion to stay [14]. The Court dismisses Trilogy from the case without prejudice.

Dated: July 15, 2025

_____
SARA L. ELLIS
United States District Judge