**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KINGSBRIDGE HOLDINGS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>PITNEY BOWES INC. and PITNEY BOWES PRESORT SERVICES, LLC,<br><br>*Defendants*.<br><br>PITNEY BOWES INC. and PITNEY BOWES PRESORT SERVICES, LLC,<br><br>*Counterclaim Plaintiffs*,<br><br>v.<br><br>KINGSBRIDGE HOLDINGS, LLC<br><br>*Counterclaim Defendant*. | Case No. 24-cv-12906<br>Hon. Sara L. Ellis |

**DEFENDANTS' ANSWER TO KINGSBRIDGE'S FIRST AMENDED COMPLAINT
WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Defendants Pitney Bowes Inc. ("PBI") and Pitney Bowes Presort Services, LLC ("PBPS") (together, "Pitney Bowes"), hereby respond to the Plaintiff Kingsbridge Holdings, LLC's ("Kingsbridge") First Amended Complaint, ECF. No 94 (the "Complaint").

1. Pitney Bowes lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 1 of the Complaint and, on that basis, denies them.

2. Pitney Bowes lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 2 of the Complaint and, on that basis, denies them. To the extent that Paragraph 2 of the Complaint asserts that Kingsbridge currently possesses "all of Trilogy's rights under the Master Lease Agreement and Equipment Supplements," Pitney Bowes denies the allegation because, on information and belief, Kingsbridge has assigned some or all of its rights to third parties.

3. Pitney Bowes admits the allegations in Paragraph 3 of the Complaint, except denies that PBI's headquarters is in Stamford, Connecticut and denies the characterization of a "longstanding presence in the Chicago area," which is too vague for Pitney Bowes to form a belief as to its truth or falsity and, on that basis, Pitney Bowes denies it.

4. Pitney Bowes admits the allegations in Paragraph 4 of the Complaint, except denies that PBPS's headquarters is in Stamford, Connecticut and denies the allegation that PBPS is "controlled by PBI" because it is a legal conclusion or characterization to which no responsive pleading is required. To the extent a response is required, Pitney Bowes denies the allegation, except admits only that PBPS is a subsidiary or affiliate of PBI.

5. Pitney Bowes admits the allegations in the first three sentences of Paragraph 5 of the Complaint. Pitney Bowes denies the allegations in the fourth and fifth sentences of Paragraph 5 of the Complaint.

6. Paragraph 6 of the Complaint contains legal conclusions or characterizations to which no responsive pleading is required. To the extent a response is required, Pitney Bowes

denies the allegations, except admits only that PBI is a Delaware corporation with its principal place of business in Connecticut and that PBPS is a Delaware LLC with its principal place of business in Connecticut.

7. Paragraph 7 of the Complaint contains legal conclusions or characterizations to which no responsive pleading is required. To the extent a response is required, Pitney Bowes denies the allegations, except admits only that Pitney Bowes has conducted business activities in Illinois.

8. Paragraph 8 of the Complaint contains legal conclusions or characterizations to which no responsive pleading is required. To the extent a response is required, Pitney Bowes denies the allegations, except admits only that Pitney Bowes has conducted business activities in Illinois.

9. Pitney Bowes denies the allegations in Paragraph 9 of the Complaint, except admits only that Trilogy and PBI signed a document titled "Master Equipment Lease Agreement" (the "MLA") on or about November 2, 1999, that a copy of the MLA is included within Exhibit A attached to the Complaint (Dkt. 94-1), and that an equipment supplement is attached as Exhibit B to the Complaint (Dkt. 94-2). Paragraph 9 of the Complaint purports to characterize the MLA, Amendment 2 to the MLA (dated May 4, 2020), and the Equipment Supplements (defined below). Pitney Bowes denies any characterization or description that is inconsistent with those documents, properly interpreted. Paragraph 9 also contains legal conclusions or characterizations to which no responsive pleading is required. Pitney Bowes specifically denies that Amendment 2 to the MLA was incorporated into any Equipment Supplement and that Pitney Bowes is bound by Amendment 2 with respect to any Equipment Supplement. To the extent a further response is required, Pitney Bowes denies the allegations.

10. Pitney Bowes denies the allegations of Paragraph 10 of the Complaint. Paragraph 10 of the Complaint also contains legal conclusions or characterizations to which no responsive pleading is required. To the extent a response is required, Pitney Bowes denies the allegations.

11. Pitney Bowes denies the allegations of Paragraph 11 of the Complaint, except admits that it was signed by Stanley J. Sutula III. Paragraph 11 of the Complaint also purports to quote or characterize Amendment 2 to the MLA. Pitney Bowes denies any characterization or description that is inconsistent with that document, properly interpreted.

12. Pitney Bowes denies the allegations of Paragraph 12 of the Complaint. Paragraph 12 of the Complaint also purports to characterize the MLA, Amendment 2 to the MLA, and the Equipment Supplements. Pitney Bowes denies any characterization or description that is inconsistent with those documents, properly interpreted.

13. Pitney Bowes denies the allegations of Paragraph 13 of the Complaint, except admits that Exhibit C lists certain of the Equipment Supplements signed by various entities (the "Equipment Supplements").

14. Pitney Bowes lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 14 of the Complaint and, on that basis, denies them.

15. Pitney Bowes denies the allegations of Paragraph 15 of the Complaint.

16. Pitney Bowes denies the allegations of Paragraph 16 of the Complaint, except admits that PBI, Pitney Bowes Global Logistics LLC, and Pitney Bowes Global Ecommerce Inc. entered into an Asset Purchase Agreement with Stord Fulfillment, LLC on or about July 24, 2024. Paragraph 16 of the Complaint also contains legal conclusions or characterizations to which no

responsive pleading is required. To the extent a response is required, Pitney Bowes denies the allegations.

17. Pitney Bowes denies the allegations of Paragraph 17 of the Complaint, except admits that on or about August 8, 2024, PBI and its relevant affiliates divested a majority of the voting control of DRF Logistics, and that HCI DRF, LLC subscribed for 81% of the voting control of DRF Logistics. Paragraph 17 of the Complaint also contains legal conclusions or characterizations to which no responsive pleading is required. To the extent a response is required, Pitney Bowes denies the allegations.

18. Pitney Bowes denies the allegations of Paragraph 18 of the Complaint, except admits that DRF filed a petition for voluntary bankruptcy in the United States Bankruptcy Court for the Southern District of Texas on August 8, 2024, and that PBI intervened in that case. Paragraph 18 of the Complaint also contains legal conclusions or characterizations to which no responsive pleading is required. To the extent a response is required, Pitney Bowes denies the allegations.

19. Pitney Bowes denies the allegations of Paragraph 19 of the Complaint. Paragraph 19 of the Complaint also contains legal conclusions or characterizations to which no responsive pleading is required. To the extent a response is required, Pitney Bowes denies the allegations.

20. Paragraph 20 of the Complaint contains legal conclusions or characterizations to which no responsive pleading is required. To the extent a response is required, Pitney Bowes denies the allegations. Paragraph 20 of the Complaint also purports to characterize the MLA and the Equipment Supplements. Pitney Bowes denies any characterization or description that is inconsistent with those documents, properly interpreted.

21. Pitney Bowes denies the allegations contained in Paragraph 21 of the Complaint. Paragraph 21 of the Complaint also contains legal conclusions or characterizations to which no responsive pleading is required. To the extent a response is required, Pitney Bowes denies the allegations.

22. Pitney Bowes denies the allegations of Paragraph 22 of the Complaint. Paragraph 22 of the Complaint also purports to characterize the demand letter attached as Exhibit E to the Complaint, the default notice attached as Exhibit F to the Complaint, and the notice attached as Exhibit G to the Complaint. Pitney Bowes denies any characterization or description that is inconsistent with those documents, properly interpreted.

23. Pitney Bowes admits that Kingsbridge purports to seek the relief described in Paragraph 23 of the Complaint but denies that Kingsbridge is entitled to any relief, including the relief sought in Paragraph 23 of the Complaint. Paragraph 23 of the Complaint also contains legal conclusions or characterizations to which no responsive pleading is required. To the extent a response is required, Pitney Bowes denies the allegations. Paragraph 23 of the Complaint also purports to characterize the MLA and the Equipment Supplements. Pitney Bowes denies any characterization or description that is inconsistent with those documents, properly interpreted.

24. Pitney Bowes admits that Kingsbridge purports to seek the relief described in Paragraph 24 of the Complaint but denies that Kingsbridge is entitled to any relief, including the relief sought in Paragraph 24 of the Complaint. Paragraph 24 of the Complaint also contains legal conclusions or characterizations to which no responsive pleading is required. To the extent a response is required, Pitney Bowes denies the allegations. Paragraph 24 of the Complaint also purports to characterize the MLA and the Equipment Supplements. Pitney Bowes denies any characterization or description that is inconsistent with those documents, properly interpreted.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Kingsbridge has failed to state a claim, in whole or in part, upon which relief may be granted. Included in, but not limiting, such challenge, Pitney Bowes reasserts all grounds set forth in its previously-filed motion to dismiss as if fully reasserted here.

### SECOND DEFENSE

Kingsbridge is estopped from asserting claims relating to Equipment Supplements that continue to be paid or for which Kingsbridge has failed to collect the subject equipment.

### THIRD DEFENSE

Kingsbridge's claims are barred, in whole or in part, by the doctrine of unclean hands because Kingsbridge has wrongfully continued to receive payments under certain Equipment Supplements that it has assigned to other parties without passing through those payments to the other parties.

### FOURTH DEFENSE

Kingsbridge has failed to mitigate its damages because, among other things, Kingsbridge failed to reclaim and collect equipment.

### FIFTH DEFENSE

Kingsbridge's claims for damages are barred, in whole or in part, to the extent an award of damages would result in the unjust enrichment of Kingsbridge.

### SIXTH DEFENSE

Kingsbridge's breach of contract claims are barred, in whole or in part, to the extent Kingsbridge's claims purport to rely on documents that are not contracts.

**SEVENTH DEFENSE**

Kingsbridge's claims fail to the extent it is not the true party-in-interest or otherwise lacks standing to assert its claims.

**EIGHTH DEFENSE**

Kingsbridge's claims fail because it lacks privity of contract with Pitney Bowes.

**NINTH DEFENSE**

Kingsbridge's claims fail because its allegations would frustrate the purpose of the Parties' contracts.

**TENTH DEFENSE**

Kingsbridge's claims fail due to improper notice of breach.

**ELEVENTH DEFENSE**

Kingsbridge's claims fail for lack of consideration.

**TWELFTH DEFENSE**

Kingsbridge is estopped from seeking damages that are contrary to its amended proof of claim, filed in *In re DRF Logistics, LLC, et al.*, Case No. 24-90447 (CML) (Bankr. S.D. Tex.) (the "Bankruptcy Proceeding").

**THIRTEENTH DEFENSE**

Kingsbridge has waived the right to seek damages that are contrary to its amended proof of claim in the Bankruptcy Proceeding.

**FOURTEENTH DEFENSE**

Res judicata and collateral estoppel preclude Kingsbridge from seeking damages that are contrary to its amended proof of claim filed in the Bankruptcy Proceeding.

**FIFTEENTH DEFENSE**

Kingsbridge cannot collect or recover damages to the extent such damages have already been paid.

**SIXTEENTH DEFENSE**

Accord and satisfaction bar Kingsbridge from recovering damages to the extent other agreements have already resolved any of Kingsbridge's claims.

**SEVENTEENTH DEFENSE**

Kingsbridge's claims are barred by the doctrines of mutual mistake, unilateral mistake, and/or because Kingsbridge fraudulently induced PBI to enter into Amendment 2 and/or Amendment 3 to the MLA.

**EIGHTEENTH DEFENSE**

Kingsbridge's claims are barred to the extent that the MLA, including any alleged amendments, are vague, ambiguous, and/or do not apply retroactively.

**NINETEENTH DEFENSE**

Kingsbridge's claims are barred because Kingsbridge has not suffered any injury, loss, or damages.

**TWENTIETH DEFENSE**

Kingsbridge's claims are barred because Amendment 2 and Amendment 3 to the MLA were not prospectively or retrospectively incorporated into any Equipment Supplements or, in the alternative, Amendment 2 applies only into those Equipment Supplements that were executed contemporaneously therewith, and Amendment 3 applies only to those Equipment Supplements that were expressly enumerated therein.

**TWENTY-FIRST DEFENSE**

Kingsbridge's claims are barred because Amendment 2 and Amendment 3 to the MLA do not bind PBI and PBPS with respect to some or all of the Equipment Supplements.

**TWENTY-SECOND DEFENSE**

Kingsbridge's claims are barred because their interpretation of Amendment 2 and Amendment 3 to the MLA is commercially unreasonable.

**TWENTY-THIRD DEFENSE**

Kingsbridge's claims are barred to the extent Kingsbridge's claimed damages would constitute an unreasonable penalty, are disproportionate to any loss by Kingsbridge, or would constitute unreasonable liquidated damages.

## PBI'S AND PBPS'S COUNTERCLAIMS

PBI and PBPS, by and through their undersigned attorneys, hereby submit these counterclaims against Kingsbridge.

### SUMMARY OF COUNTERCLAIMS

1. PBI's and PBPS's counterclaims seek (1) recharacterization of certain alleged leases as financing agreements, the Recharacterization Equipment Supplements (as defined below), and (2) declaratory relief relating to the proper interpretation of the Parties' contracts and establishing that Kingsbridge is not the true party-in-interest for the Equipment Supplements under which it has sued in this case.

2. With respect to recharacterization, PBI and/or its affiliates entered into the MLA and the Recharacterization Equipment Supplements with Kingsbridge's affiliate, Trilogy Leasing Co., LLC ("Trilogy"). Trilogy then assigned its interests in the Recharacterization Equipment Supplements to Kingsbridge. The Recharacterization Equipment Supplements provide the basis for the largest portion of the damages that Kingsbridge seeks in this case.

3. PBI seeks to recharacterize the Recharacterization Equipment Supplements as financing agreements rather than as "true leases."

4. Although styled as leases, the plain terms of the Recharacterization Equipment Supplements make clear the Parties' true intentions when the agreements were signed. Under the terms of the Recharacterization Equipment Supplements, and, to the extent incorporated, the MLA, Kingsbridge and/or Trilogy would provide the necessary financing for PBI's affiliates to purchase certain equipment, which was custom-designed for installation in the facilities of PBI's affiliates, and for PBI's affiliates to repay Trilogy and/or Kingsbridge for this funding through principal and interest payments. The intention of the Parties when negotiating the Recharacterization Equipment Supplements can be inferred from the fact that they understood that the Recharacterization

Equipment Supplements would transfer to PBI's affiliates the titles to the underlying Fixtures (defined below). Further, the Fixtures have nominal fair market values at the end of the applicable terms for the Recharacterization Equipment Supplements, with purchase options to be exercised by PBI's affiliates for such nominal values.

5. In addition to recharacterization, PBI and PBPS seek a declaration clarifying that Kingsbridge's sweeping claims must be narrowed by the logical interpretation of the Parties' contracts and that Kingsbridge is not the true party-in-interest with respect to the Equipment Supplements that Kingsbridge identifies in its Complaint, which include, but is much broader than, the Recharacterization Equipment Supplements.

6. Accordingly, Defendants respectfully request that the Court recharacterize the Recharacterization Equipment Supplements and grant the requested declaratory relief.

**THE PARTIES**

7. PBI is a Delaware corporation registered to do business in Illinois, with its headquarters in Shelton, Connecticut.

8. PBPS is a Delaware limited liability company registered to do business in Illinois, with its corporate headquarters in Shelton, Connecticut.

9. Kingsbridge is a Nevada limited liability company registered to do business in Illinois, with its principal place of business in Lake Forest, Lake County, Illinois.

**JURISDICTION AND VENUE**

10. Jurisdiction is proper pursuant to Federal Rule of Civil Procedure 13(b) and 28 U.S.C. § 1367. PBI's counterclaim arises out of the same series of transactions and occurrences as alleged in Kingsbridge's Complaint. However, at the time this action was filed, PBI's counterclaim was the subject of an already-filed action, captioned *DRF, LLC v. Trilogy Leasing*

*Co., LLC*, Adv. Proc. No. 24-03205 (Bankr. S.D. Tex.) (the "Adversary Proceeding"). That case is expected to be dismissed on jurisdictional grounds in the near future.

11. The Court has personal jurisdiction over Kingsbridge because Kingsbridge filed its Complaint in this District and has therefore consented to personal jurisdiction in this Court.

12. Venue is proper in this District under 28 U.S.C. § 1391(b), and because Kingsbridge filed its Complaint in this District and thus has consented to venue in this Court.

## FACTUAL BACKGROUND

13. On or about November 2, 1999, PBI and Trilogy entered into the MLA.[1] By its own terms, the MLA was not itself a contract but provided terms that could be incorporated by reference into subsequent contracts called equipment supplements, which were each intended to be a separate agreement. *See* Compl. Ex. A § 1.

14. Thereafter, PBI or its affiliates entered into the Equipment Supplements with Trilogy.

15. Trilogy subsequently assigned its interests in the Equipment Supplements to Kingsbridge.

### A. Certain of the Equipment Supplements Are Disguised Financing Agreements.

16. A subset of the Equipment Supplements were not true leases, but were instead intended to be financing agreements and should be recharacterized as such.

17. The Equipment Supplements that PBI seeks to recharacterize are as follows:

a. the Equipment Supplement Number 15, dated May 10, 2019, identified in Kingsbridge's Complaint;

[1] The MLA is included within Exhibit A attached to Kingsbridge's Complaint.

b. the Equipment Supplement Number 22, dated May 4, 2020, identified in Kingsbridge's Complaint;

c. the Equipment Supplement Number 23, dated May 4, 2020, identified in Kingsbridge's Complaint;

d. the Equipment Supplement Number 24, dated May 4, 2020, identified in Kingsbridge's Complaint;

e. the Equipment Supplement Number 46, dated October 22, 2020, identified in Kingsbridge's Complaint;

f. the Equipment Supplement Number 47, dated October 22, 2020, identified in Kingsbridge's Complaint

g. the Equipment Supplement Number 24-1, dated August 27, 2021, identified in Kingsbridge's Complaint;

h. the Equipment Supplement Number 68, dated November 12, 2021, identified in Kingsbridge's Complaint;

i. the Equipment Supplement Number 69, dated November 12, 2021, identified in Kingsbridge's Complaint;

j. the Equipment Supplement Number 70, dated November 12, 2021, identified in Kingsbridge's Complaint;

k. the Equipment Supplement Number 77, dated March 29, 2022, identified in Kingsbridge's Complaint;

l. the Equipment Supplement Number 78, dated July 12, 2022, identified in Kingsbridge's Complaint;

m. the Equipment Supplement Number 46-1, dated December 7, 2022, identified in Kingsbridge's Complaint;

n. the Equipment Supplement Number 068-1, dated December 7, 2022, identified in Kingsbridge's Complaint;

o. the Equipment Supplement Number 069-1, dated December 15, 2022, identified in Kingsbridge's Complaint;

p. the Equipment Supplement Number 70-1, dated December 15, 2022, identified in Kingsbridge's Complaint;

q. the Equipment Supplement Number 70-2, dated April 4, 2023, identified in Kingsbridge's Complaint;

r. the Equipment Supplement Number 70-3, dated June 6, 2023, identified in Kingsbridge's Complaint;

s. the Equipment Supplement Number 80, dated June 23, 2023, identified in Kingsbridge's Complaint;

t. the Equipment Supplement Number 69-2, dated July 1, 2023, identified in Kingsbridge's Complaint;

u. the Equipment Supplement Number 70-5, dated July 1, 2023, identified in Kingsbridge's Complaint;

v. the Equipment Supplement Number 81, dated July 6, 2023, identified in Kingsbridge's Complaint;

w. the Equipment Supplement Number 70-4, dated July 13, 2023, identified in Kingsbridge's Complaint;

x. the Equipment Supplement Number 78-1, dated September 1, 2023, identified in Kingsbridge's Complaint; and

y. the Equipment Supplement Number 78-2, dated October 2, 2023, identified in Kingsbridge's Complaint.

(collectively, including all amendments and addendums to the Equipment Supplements, the "Recharacterization Equipment Supplements" and, the equipment financed thereunder, the "Fixtures").[2]

18. The Recharacterization Equipment Supplements were all entered into between Trilogy and one of either DRF, LLC (f/k/a Pitney Bowes Global Logistics LLC) or DRF Logistics, LLC (f/k/a Pitney Bowes Global Ecommerce, Inc.) (together, "DRF"). The DRF entities were former indirect subsidiaries of PBI.

19. Kingsbridge's Complaint alleges that PBI is jointly and severally liable for the Equipment Supplements pursuant to Amendment 2 to the MLA. However, Amendment 2 was not incorporated into the Recharacterization Equipment Supplements (or any other Equipment Supplements) and does not bind PBI for some or all of the Recharacterization Equipment Supplements because the Recharacterization Equipment Supplements are, in fact, disguised financings rather than "true leases."

20. The main features of the Recharacterization Equipment Supplements and, to the extent incorporated, the MLA, all support recharacterization. That is, (1) the monthly "rent" payments were structured to provide Trilogy with a set yield, not structured at a fair market rent for new, custom Fixtures, (2) the burdensome termination provisions disincentivized any termination before term end, (3) the Fixtures were custom-designed by DRF for its own unique

---

[2] Pitney Bowes reserves the right to amend the list of Equipment Supplements for which it seeks recharacterization, as appropriate following discovery or if Kingsbridge further amends its claims.

facilities, (4) DRF assumed the obligations of ownership, and (5) the buyout option was structured to ensure buyout at term end.

"Rent" Payments

21. The terms and payment structures of the Recharacterization Equipment Supplements provided Trilogy/Kingsbridge with a set yield for extending the financing. The structure of the monthly "rent" payments underscores the true nature of the Recharacterization Equipment Supplements. The monthly "rent" payments under the Recharacterization Equipment Supplements are calculated utilizing a formula that takes into account the purchase price of the Fixtures (*i.e.*, the initial amount of funding provided by Trilogy/Kingsbridge)[3] and a set interest rate. *See* Schedule 2 to the Recharacterization Equipment Supplements. No attempt was made to determine an appropriate rental amount for use of the Fixtures based upon market rates for comparable equipment leases. Instead, the formulation in the Recharacterization Equipment Supplements ensured that Kingsbridge would receive a specified rate of return on the amounts loaned in connection with the brand-new equipment installed by DRF and that the transactions would result in a set yield negotiated by Trilogy/Kingsbridge.

Termination Provisions

22. The Parties structured termination provisions for the Recharacterization Equipment Supplements to ensure Trilogy/Kingsbridge received the set yield on its financing. Specifically, the Recharacterization Equipment Supplements penalize DRF for early termination of the agreements, financially incentivizing DRF to continue making monthly payments until the expiration of the terms of such Recharacterization Equipment Supplements, at which point DRF could purchase the Fixtures for a nominal price that would be less than or equal to the early

[3] The original purchase price the Defendant paid for the Fixtures is listed in each Equipment Supplement.

termination penalty. Indeed, Section 11.2 of the MLA, where incorporated, provides that if DRF were to invoke an early termination of the Recharacterization Equipment Supplements, DRF could either (i) find a replacement lessee and reimburse Trilogy/Kingsbridge for any shortfall in future amounts owed or (ii) return the equipment to Trilogy/Kingsbridge and pay an agreed upon termination value (equal to approximately 105% of the initial purchase price of the equipment minus the amount of lease payments made). *See* Compl. Ex. A. As a result, the Parties knew that DRF never intended to terminate the Recharacterization Equipment Supplements and return the Fixtures before the expiration of the applicable terms.

Custom Equipment

23. All of the Fixtures were custom designed and installed into DRF's facilities, making it costly and highly labor-intensive to remove and return the Fixtures. The Fixtures installed in DRF's leased facilities were large, custom pieces of equipment, selected and designed by DRF into custom systems that were designed to fit DRF's bespoke spaces, making the Fixtures effectively worthless in any other setting or location. Kingsbridge/Trilogy played no role in selecting the equipment, negotiating prices with manufacturers, or arranging for and designing the installation of the Fixtures. In addition, DRF was assigned all rights under the manufacturers' warranties for the Fixtures. This is consistent with the termination provision in Section 11.2 of the MLA, where incorporated, which made it economically implausible for DRF to exercise an early termination of the Recharacterization Equipment Supplements. These contractual obligations of DRF under the Recharacterization Equipment Supplements evidence the Parties' understanding that DRF was always intended to be the actual and only owner (not lessee) of the Fixtures.

Obligations of DRF

24. Pursuant to the Recharacterization Equipment Supplements, DRF also assumed many of the obligations normally associated with outright ownership of the Fixtures, including that DRF must:

a. "pay any and all taxes, assessments, fees and other governmental charges" related to sale, purchase, ownership, and use of the Fixtures, *see* Compl. Ex. A § 4(a);

b. pay "all costs incurred in transporting and delivering . . . and install[ing]" the Fixtures, *see* Compl. Ex. A § 4(b);

c. pay "all costs, expenses, fees and charges incurred in connection with the use and operation of" the Fixtures, including "repairs, maintenance, storage and servicing," *see* Compl. Ex. A § 4(c);

d. "bear the risk of damage, loss, theft or destruction, partial or complete" of the Fixtures, *see* Compl. Ex. A § 9;

e. maintain the Fixtures and bear the cost of any alterations or modifications "necessary or desirable for the maintenance" of the Fixtures, *see* Compl. Ex. A § 10; and

f. insure the Fixtures, free of costs and expenses to Kingsbridge, *see* Compl. Ex. A § 19.

25. DRF's agreement to undertake these additional costs and obligations, typically handled by the lessor under a lease agreement, further evidence the Parties' intent that DRF would be the only owner of the Fixtures.

Buyout Option

26. Following the expiration of the Recharacterization Equipment Supplements, DRF could exercise a nominal buyout option for DRF to purchase the Fixtures for an amount that, in most cases, was equal to the lesser of (i) 25% of the initial purchase price for such Fixtures or (ii) the fair market value of such Fixtures. *See* Addendum 2 to the Recharacterization Equipment Supplements. Because the Fixtures were custom-designed by DRF for custom installation into DRF's bespoke facilities and modified by DRF to fit those spaces, the Fixtures have little to no use elsewhere, and, accordingly, a low fair market value. The costs incurred to remove the Fixtures would likely be much higher than the value any Party could obtain from reselling the Fixtures upon expiration of the Recharacterization Equipment Supplements. Additionally, removing the Fixtures would be time-consuming and labor-intensive. It would also be destructive to DRF as an operating business. Not only would removal and replacement of the Fixtures have caused significant delay in DRF's operations, but replacing the Fixtures would have been prohibitively expensive and economically irrational. As a result, it would not have been reasonable for the Parties to expect that DRF would have done anything other than buy out the Fixtures to avoid incurring additional and higher costs.

27. On information and belief, in the weeks prior to filing the Adversary Proceeding, DRF engaged in initial market testing to determine the value of the Fixtures. There were no willing buyers for such Fixtures, further demonstrating that the Fixtures are essentially worthless if removed from DRF's leased facilities.

**B. The MLA and Amendments**

28. PBI and Trilogy entered into the MLA on or about November 2, 1999.

29. The MLA, by its own terms, is not a contract. Instead, it was "executed solely for incorporation purposes and does not constitute a lease of equipment, in and of itself." *See* Compl. Ex. A § 1.

30. Amendment 2 to the MLA was executed on or about May 4, 2020, contemporaneously with several Equipment Supplements. *See* Compl. Ex. A, Amendment 2.

31. Amendment 2 was never expressly incorporated into any Equipment Supplement.

32. On its face, Amendment 2 does not apply retroactively to existing Equipment Supplements.

33. Amendment 3 to the MLA was executed on or about November 10, 2022. *See* Compl. Ex. A, Amendment 3.

34. On its face, Amendment 3 to the MLA applies only to "Equipment Supplement Numbers 47, 50, 51 and 77 and any Equipment Supplement entered into after August 1, 2022" but not to "any Equipment Supplement entered into prior to such date."

35. Amendment 3 was never expressly incorporated into any Equipment Supplement.

**C. Kingsbridge Is Not the True Party-In-Interest.**

36. On information and belief, Kingsbridge assigned its interests in some or all of the Equipment Supplements to third-parties that have not been made parties to this litigation (the "Assignees").

37. On information and belief, the Assignees are the true parties-in-interest for the Equipment Supplements that were assigned to them.

38. In some instances, PBI or its affiliates have since been assigned the rights to certain of the Equipment Supplements that are at issue in this case. In such instances, PBI or its affiliates are the true parties-in-interest for those Equipment Supplements.

39. For example, on information and belief, Kingsbridge assigned its rights in certain Equipment Supplements to Mitsubishi HC Capital America, Inc. ("Mitsubishi").

40. On May 9, 2025, Mitsubishi filed a complaint against PBI and PBPS in the Superior Court of the State of Delaware, civil action number N25C-05-103 EMD, asserting breach of contract claims and related damages with respect to the Equipment Supplements that were assigned to Mitsubishi (the "Mitsubishi Equipment Supplements").

41. On or about October 29, 2025, PBI and Mitsubishi settled Mitsubishi's claims relating to the Mitsubishi Equipment Supplements and assigned any remaining rights in the Mitsubishi Equipment Supplements to PBI.

**COUNT I**

**Declaration Recharacterizing Leases as Financing Arrangements**

42. The allegations set forth above are incorporated herein by reference.

43. Trilogy and DRF entered into the Recharacterization Equipment Supplements.

44. On information and belief, Trilogy then assigned its interests in the Recharacterization Equipment Supplements to Kingsbridge.

45. Kingsbridge alleges that PBI is jointly and severally liable with DRF under the MLA and the Recharacterization Equipment Supplements.

46. Recharacterization of the Recharacterization Equipment Supplements would provide PBI with additional defenses against Kingsbridge's allegation that PBI is jointly and severally liable for one or more of the Recharacterization Equipment Supplements.

47. Each material term of the Recharacterization Equipment Supplements compels the conclusion that the Recharacterization Equipment Supplements do not constitute true leases and instead should be recharacterized as financing arrangements.

48. PBI requests a judgment recharacterizing the Recharacterization Equipment Supplements as financing agreements.

**COUNT II**

**Declaratory Relief**

49. The allegations set forth above are incorporated herein by reference.

50. Trilogy entered into each of the Equipment Supplements with one of PBI or its affiliates.

51. On information and belief, Trilogy then assigned its interests in the Equipment Supplements to Kingsbridge.

52. Kingsbridge alleges that PBI is jointly and severally liable for each of the Equipment Supplements.

53. On information and belief, Kingsbridge assigned all or some of its rights under the Equipment Supplements to the Assignees.

54. In some cases, the rights under the Equipment Supplements were subsequently assigned back to PBI or its affiliates.

55. PBPS and PBI have continued to make payments pursuant to some or all of the Equipment Supplements that each signed.

56. Amendment 2 to the MLA does not bind PBI or PBPS and does not apply to some or all of the Equipment Supplements.

57. Amendment 3 to the MLA does not bind PBI or PBPS and does not apply to some or all of the Equipment Supplements.

58. PBI and PBPS request declaratory relief that (i) Amendment 2 to the MLA was not incorporated into any Equipment Supplements; (ii) to the extent that Amendment 2 to the MLA

applies to any Equipment Supplements, it applies only to those executed contemporaneously therewith; (iii) Amendment 3 to the MLA was not incorporated into any Equipment Supplements; (iv) to the extent Amendment 3 applies to any Equipment Supplements, it applies only to those expressly enumerated in Amendment 3; (v) there has been no breach of contract; and (vi) Kingsbridge is not the true party-in-interest for the Equipment Supplements and that, for those Equipment Supplements that were assigned to PBI or its affiliates, that PBI or its affiliates are the true party-in-interest.

****

59. PBI reserves the right to raise any additional defenses, cross-claims, counterclaims, and third-party claims not asserted herein of which it may become aware through discovery or other investigation, as may be appropriate at a later time.

## PRAYER FOR RELIEF

WHEREFORE, Pitney Bowes respectfully requests that judgment be entered as follows:

A. A declaration recharacterizing the Recharacterization Equipment Supplements as financing agreements.

B. A declaration that:

i. Amendment 2 to the MLA was not incorporated into any Equipment Supplement;

ii. to the extent that Amendment 2 to the MLA applies to any Equipment Supplements, it applies only to those executed contemporaneously therewith;

iii. Amendment 3 to the MLA was not incorporated into any Equipment Supplement;

iv. to the extent Amendment 3 applies to any Equipment Supplements, it applies only to those expressly enumerated in Amendment 3;

v. there has been no breach of contract; and

vi. Kingsbridge is not the true party-in-interest for the Equipment Supplements and that, for those Equipment Supplements that were assigned to PBI or its affiliates, that PBI or its affiliate are the true party-in-interest.

C. Granting such other and further relief as the Court deems just and proper.

Dated: April 7, 2026

**PITNEY BOWES INC. and**
**PITNEY BOWES PRESORT SERVICES, LLC**

By: *_/s/ David Pustilnik_*
Christopher Esbrook
David Pustilnik
ESBROOK P.C.
321 N. Clark, Suite 1930
Chicago, IL 60654
(312) 319-7680
christopher.esbrook@esbrook.com
david.pustilnik@esbrook.com

and

Mitchell A. Karlan, *pro hac vice*
Mary Beth Maloney, *pro hac vice*
Jonathan Fortney, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2315
mkarlan@gibsondunn.com
mmaloney@gibsondunn.com
jfortney@gibsondunn.com

and

Thomas A. Manakides, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
(949) 451-4000
tmanakides@gibsondunn.com

*Attorneys for Defendants Pitney Bowes Inc. and Pitney Bowes Presort Services, LLC*