**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KINGSBRIDGE HOLDINGS, LLC,<br>Plaintiff,<br><br>v.<br><br>PITNEY BOWES INC. and PITNEY BOWES PRESORT SERVICES, LLC,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 24 C 12906<br><br>District Judge Sara L. Ellis<br><br>Magistrate Judge M. David Weisman<br><br>JURY DEMANDED |

**REPLY IN SUPPORT OF PLAINTIFF'S**
**MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

Plaintiff Kingsbridge Holdings, LLC ("**Kingsbridge**") respectfully submits its Reply Memorandum in support of its Motion to Dismiss Defendants' Counterclaims (Dkt. 98).

**INTRODUCTION**

Nothing in Pitney Bowes Inc.'s ("**PBI**") Response (Dkt. 113 ("**Resp**.")) refutes the conclusion that PBI's recharacterization counterclaim is an impermissible collateral attack on a final Bankruptcy Court order and, as such, is barred by the doctrine of *res judicata*. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 138-39 (2009). There is no dispute that the Bankruptcy Court presiding over the chapter 11 case of PBI's subsidiary, DRF, LLC ("**DRF**"), entered a final judgment pursuant to 11 U.S.C. §365(a), which rejected the equipment leases that are the subject of PBI's recharacterization counterclaim. (Dkt. 98-2 ("**App.**") at 572-80.) There also is no dispute that as a matter of law, a debtor may only reject a lease under §365(a) if that lease is in fact a true lease and not a disguised loan. *See, e.g.*, *United Airlines, Inc. v. HSBC Bank USA, N.A.*, 416 F.3d 609, 612 (7th Cir. 2005). PBI does not even credibly dispute that, by authorizing the rejection of

the equipment leases at issue here, the Bankruptcy Court necessarily decided that the equipment leases were in fact true leases and not loans.

Despite these uncontestable facts, all of which are subject to judicial notice, and the controlling precedent which dictates the outcome here, PBI brands as "preposterous" any argument that its efforts to recharacterize the equipment leases following their rejection is a collateral attack on the Bankruptcy Court's final judgment. (Resp. 10.) But the Bankruptcy Court which entered the Rejection Order at issue here raised this very issue *sua sponte*, and told PBI that the Court could not see how it could recharacterize a lease it had already rejected pursuant to an order that is now final. (App. 954:12-955:3.) And when the Bankruptcy Court gave DRF and PBI a second chance to explain why the Bankruptcy Court was wrong, they did not take it (App. 988:18-994:1); they let the deadline to file their supplemental brief pass and instead asked to dismiss their recharacterization claim without prejudice so they could start over here (App. 998-1000). And then, without waiting for the Bankruptcy Court's decision, PBI jumped the gun and refiled its recharacterization claim in this Court.

PBI's only substantive response is that boilerplate disclaimers in the Rejection Order preserved its right to bring its recharacterization claim; an argument that the Bankruptcy Court told PBI was inadequate. (App. 989:7-21.) The Bankruptcy Court was right. As a matter of law, a reservation of rights to assert a later claim defeats the imposition of *res judicata* only if it is both express and specific as to the claim reserved. *See, e.g.*, *D&K Props. Crystal Lake v. Mut. Life Ins. Co.*, 112 F.3d 257, 261 (7th Cir. 1997). The disclaimers PBI invokes reserve no claim at all; they disclaim "admissions" by the parties and preserve unspecified rights and causes of action. That generic language cannot unwind what a final Bankruptcy Court Order has already decided.

Equally without merit is Defendants' declaratory-judgment counterclaim. It fails for a simpler reason: it is redundant. Defendants concede that their request for declaratory relief mirrors Kingsbridge's breach of contract claim, and they identify no question their counterclaim raises that the Court will not answer in ruling on Kingsbridge's complaint. Their only response is that the declarations they seek "could prevent future breach claims" under leases not before the Court. (Resp. 15.) That is not a controversy this Court can adjudicate nor is the Declaratory Judgment Act the proper procedure for Defendants to request advance permission to stop performing under even more contracts.

Both counterclaims should be dismissed with prejudice.

## ARGUMENT

### I. The Court Should Dismiss PBI's Recharacterization Claim.

*Res judicata* bars PBI's recharacterization counterclaim. The doctrine has three elements: an identity of the parties or their privies, an identity of the causes of action, and a final judgment on the merits. Kingsbridge's opening memorandum showed that each is satisfied. PBI was an admitted intervenor in DRF's bankruptcy and DRF's privy, which establishes the first element. (Dkt. 98-1 at 9-13 ("**Mot.**").) The recharacterization counterclaim and the Rejection Motion turn on the same operative facts, the character of the same equipment leases, which establishes the second. (Mot. 13.) And the Rejection Order is a final order that necessarily decided that the equipment leases are true leases, which establishes the third. (Mot. 8-9, 13-14.)

PBI does not contest the first two elements. It resists dismissal on only two grounds: that a motion to dismiss is the wrong vehicle to decide the defense of *res judicata*, and that the third element fails because the Rejection Order did not decide the character of the equipment leases. Both arguments fail.

### A. PBI's Procedural Argument Lacks Merit.

PBI first argues that *res judicata* can never support dismissal under Rule 12(b)(6). (Resp. 8-9.) PBI's cited authority refutes its argument. Dismissal on *res judicata* grounds is proper where "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (affirming Rule 12(b)(6) dismissal on *res judicata*).[1] *Parungao,* which PBI cites (Resp. 9), describes this case exactly. Just as in *Parungao*, here, the Court can determine that *res judicata* applies based upon the Bankruptcy Court Rejection Order, which is subject to judicial notice, and the face of the counterclaim which seeks to recharacterize the very same equipment leases that are the subject to the Rejection Order. There are no disputed facts that bear on this analysis because whether the Rejection Order precludes recharacterization is a question of the Rejection Order's legal effect, which is answered entirely by the Bankruptcy Court record and the law. PBI identifies no additional fact that discovery could supply or that would change the result.

The cases PBI cites establish only that an affirmative defense cannot support dismissal when it turns on facts outside the pleading. None of PBI's cases hold that a defense apparent from the pleading or judicially noticeable material cannot. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019); *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010); *see also Logan v. Wilkins*, 644 F.3d 577, 582-83 (7th Cir. 2011) (affirming Rule 12(b)(6) dismissal because allegations of complaint revealed claim was time-barred). PBI's refrain that pleadings need not anticipate affirmative defenses also misses the mark, because PBI pleaded

[1] *See also Watkins v. United States*, 854 F.3d 947, 949-51 (7th Cir. 2017) (court could take judicial notice of an earlier state-court complaint and dismiss based on an affirmative defense).

the facts that establish *res judicata* in this case: it seeks to recharacterize as loans the very same leases the Bankruptcy Court necessarily had to find were true leases and not loans to order their rejection under §365(a). Where the pleading and judicially noticeable court orders establish that a claim is barred, Rule 12(b)(6) dismissal is appropriate. *Parungao*, 858 F.3d at 457.

### B. The Rejection Order Bars PBI's Recharacterization Counterclaim.

The Rejection Order necessarily decided that the Equipment Supplements are in fact true leases, which forecloses PBI's efforts to have this Court declare that they are not. In its Response, PBI does not dispute that in both the Fifth Circuit, where the Rejection Order was entered, and in this Circuit, §365(a) only authorizes rejection if an unexpired lease is a true lease, and that leases disguised as loans cannot be rejected. *See In re Sanchez Energy Corp.*, 159 F.4th 309, 320-23 (5th Cir. 2025); *United Airlines,* 416 F.3d at 612. In fact, this is the rule everywhere. *See, e.g.*, 3 COLLIER ON BANKRUPTCY ¶365.02[3] (16th ed.). Therefore, when the Bankruptcy Court rejected the equipment leases "pursuant to sections 365(a) and 105(a)" and found that the Rejection Motion's "legal and factual bases" established just cause, it necessarily had to be finding that the equipment leases were leases and not loans because true leases are the only type of unexpired lease §365(a) can reach. (App. 572-73.) That ruling therefore bars PBI's recharacterization claim.

PBI resists this conclusion on three grounds. First, it argues that it is not clear what the Bankruptcy Court found in the Rejection Order and therefore *res judicata* cannot apply. Second, it argues that the Bankruptcy Court reserved its right to bring the recharacterization claim. And finally, it contends that the Rejection Order was only a conditional ruling and should not be given preclusive effect. The Court should reject each of these arguments.

### 1. The Rejection Order Necessarily Found That The Equipment Supplements Were True Leases.

PBI argues that the Rejection Order did not decide whether the Equipment Supplements are true leases. Neither argument it offers for that reading holds up. *First*, PBI contends that Kingsbridge is engaging in "pure speculation" when it claims that the Bankruptcy Court necessarily had to find that the equipment leases were true leases to order their rejection. (Resp. 9-10, 13.) In support of this argument, PBI cites two inapposite decisions: *Desmond v. Taxi Affiliation Servs. LLC*, 344 F. Supp. 3d 915 (N.D. Ill. 2018) and *Lemanski v. Lemanski*, 87 Ill. App. 2d 405 (2d Dist. 1967). (Resp. 9-10.) In *Desmond*, the first court—a bankruptcy court—declined to appoint a chapter 11 trustee and in doing so, explicitly stated that it was not addressing the question of whether the debtor's owners committed fraud. When a bankruptcy trustee was subsequently appointed and sued the debtor's owners for fraud, the district court held that the bankruptcy court's ruling was not a preclusive ruling exonerating defendants of fraud claims because the bankruptcy court was clear that it was not deciding whether a fraud had been committed. *Desmond,* 344 F. Supp. 3d at 922-23. In *Lemanski*, the first court's judgment was ambiguous as to whether that court had determined that a spouse had failed to prove both alleged acts of cruelty or only one of the two necessary acts of cruelty under Illinois' former divorce laws; therefore, in the second divorce case, the first order was not given preclusive effect when the spouse raised one of the earlier alleged acts of cruelty. 87 Ill. App. 2d at 409.

Here, there is no ambiguity. The Bankruptcy Court "determined that the legal and factual bases set forth in the [§365 rejection] Motion establish just cause for the relief granted herein [*i.e.*, rejection under Section 365]." (App. 572-73.) And the essential predicate for rejection under §365 is that the contract being rejected is a true lease. *Sanchez Energy*, 159 F.4th at 320-23; *United*

*Airlines,* 416 F.3d at 612. To suggest that the Bankruptcy Court did not find that the equipment leases were true leases would be to suggest that the Bankruptcy Court was not following the law. And there is nothing in the Rejection Order that even remotely suggests that the Bankruptcy Court was flouting established precedent and granting DRF relief that was not authorized under the Bankruptcy Code.

*Second*, PBI argues that in both *Sanchez* and *United Airlines*, the bankruptcy courts resolved the lease-vs-loan question on a developed factual record, but that observation is beside the point (and in any event, incorrect with respect to *Sanchez*). (Resp. 11-12.) The point of both these decisions is that they establish a categorical rule: the powers granted to a chapter 11 debtor/trustee under §365 reach only true leases; no court can authorize rejection of a disguised loan. *Sanchez Energy*, 159 F.4th at 320-23; *United Airlines,* 416 F.3d at 612.

And if there is any question about what the Rejection Order necessarily found (and there is not), that question was answered by the Bankruptcy Court that entered the Rejection Order. At the January 20, 2026 pretrial conference in the adversary proceeding, the Bankruptcy Court judge explained that he had "looked at the order approving the rejection" and "read the Fifth Circuit *Sanchez* decision," and could not reconcile recharacterization with a final §365 rejection. (App. 936:14-955:20.) The Bankruptcy Court stated: "I don't know how you can then recharacterize a rejected lease that is, under a final order, rejected as a lease because it can't be an executory contract . . . And so the question is: How do I take up – if that's a final order and if 365 is what it is and you can't kind of unring what [the] – the effect of a 365 rejection, then I don't know – I don't know how I can take up recharacterize[ation]." (App. 954:14-16; 954:24-955:3.) The Bankruptcy Court cancelled the trial and directed DRF and PBI to brief whether, given the §365 rejection, it could still entertain the recharacterization claim. (App. 957:24-958:18.) These

statements by the very court that entered the order in question establish that the Rejection Order necessarily found that the equipment leases at issue were in fact true leases and not loans. For if that were not the Bankruptcy Court's finding, there would have been no need for the Bankruptcy Court to raise its concerns that the recharacterization complaint was a collateral attack on a final order.

### 2. The Rejection Order's Reservations Do Not Preserve A Recharacterization Claim.

Invoking the boilerplate disclaimers in paragraph 4 of the Rejection Order, PBI argues that the Bankruptcy Court reserved the question of whether the equipment leases should be recharacterized as disguised loans for a later determination. But that boilerplate was insufficient as a matter of law to reserve anything. In both this Circuit, and the Fifth Circuit where the Rejection Order was entered, a reservation overcomes *res judicata* only if it is express and the reserved claim is specific. *D&K Props. Crystal Lake*, 112 F.3d at 261; *accord In re United Operating LLC*, 540 F.3d 351, 355 (5th Cir. 2008) (reservation must be "specific and unequivocal"). None of the disclaimers PBI cites meets that standard.

Subclause (ii) states that the order is not "an admission that the [Fixture Agreements] constitute 'true' leases rather than financing transactions." (App. 574, ¶4(ii).) But a court does not make admissions; it makes findings of fact and conclusions of law. Disclaiming an admission cannot undo the §365(a) determination that the Rejection Order made. *EEOC v. Safeway Stores, Inc.*, 714 F.2d 567 (5th Cir. 1983), illustrates the point. There, an employer that resolved Title VII charges through a conciliation agreement, while disclaiming any admission of a violation, could not later contest its liability because that was an essential element of the relief it had accepted. *Id.* at 574-75. DRF and PBI likewise accepted the benefit of the Rejection Order—the termination of

their obligation to pay rent as of September 30, 2024—which is relief §365(a) makes available only for true leases. (Mot. 5, 8-9.) The disclaimer of an admission could not have reserved a right to relitigate the lease-vs-loan determination on which that relief depended.

Subclause (iii) preserves the right to "dispute the amount of, basis for, or validity of any claim." (App. 574, ¶4(iii).) A reservation to dispute a claim is not a reservation to assert one, and a reservation of a defense, no less than a claim, must be express and specific. See *Access 4 All, Inc. v. Grandview Hotel Ltd. P'ship*, 2006 WL 566101, at *2-3 (E.D.N.Y. Mar. 3, 2006) (general reservation of the right to challenge fees did not preserve a standing defense that had to be reserved explicitly); *Polak v. Riverside Marine Constr., Inc.*, 22 F. Supp. 3d 109, 125 (D. Mass. 2014) (reservation of "all rights and defenses" did not preserve a claim at odds with the consent order). The Bankruptcy Court drew the same line when DRF pressed this reservation argument in the adversary litigation: its reservations let the parties "assert" and "come argue" claims, but "that doesn't mean that the legal effect of what happened didn't happen either." (App. 989:7-19.)

Subclause (vii) preserves "any claims or causes of action that may exist against any creditor or interest holder." (App. 574, ¶4(vii).) A blanket reservation of unspecified causes of action is the opposite of specific, and it does not identify the recharacterization claim against Kingsbridge. In *D&K Properties,* the Seventh Circuit held that a reservation of "all causes of action existing" did not preserve specific claims against a specific party. 112 F.3d at 260-61; *United Operating*, 540 F.3d at 355-56 (same). Subclause (vii) fares no better, therefore, than the others that PBI cites.

In short, none of the reservations that PBI cites were sufficient to undo the preclusive effect of the Rejection Order; a point that the Bankruptcy Court—the court that entered the Rejection Order—also made when it told DRF and PBI that this argument was an insufficient response to its

question asking how it could recharacterize the equipment leases in question in light of the Rejection Order. (App. 989:7-990:17.)

### 3. The Rejection Order Is Not A Conditional Ruling.

PBI also attempts to recast the Rejection Order as a "conditional" or "preemptive" ruling entered "in the alternative" before the Bankruptcy Court decided the character of the equipment leases—another argument DRF and PBI tried in the Bankruptcy Court, with no success. (Resp. 11-12; *see* App. 989:3-6.) The Rejection Order, however, does not state it is "conditional" or "preemptive" or that the Bankruptcy Court is ordering rejection while simultaneously also reserving its ruling on whether the equipment leases are true leases. The absence of that language is important because the law is well established that the preclusive effect of an order is fixed by its text, which courts read within the order's four corners. *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971); *Matter of PFO Glob., Inc.*, 26 F.4th 245, 255 (5th Cir. 2022) ("the plain text [of the court order] controls"); *Robinson v. Vollert*, 602 F.2d 87, 92 (5th Cir. 1979) (a court order is "to be construed only by reference to the 'four corners' of the order itself"); *Heckmann Bldg. Prods. Inc. v. Hohmann & Barnard, Inc.*, 866 F. Supp. 2d 965, 973 (N.D. Ill. 2012) (court orders are construed like contracts and confined to their terms).

The Rejection Order's operative paragraph rejects the equipment leases "pursuant to sections 365(a) and 105(a)" and finds the Rejection Motion's "legal and factual bases" establish just cause, without any conditional or alternative language. (App. 572-73.) There is nothing conditional about that text and it is that text that controls.

PBI's reliance on DRF's Rejection *Motion* to support its argument that the Rejection *Order* was only conditional is misplaced. For starters, the Rejection Motion does not state it is requesting only "conditional" or "preemptive" rejection of the equipment leases. (App. 422-431.) Instead, it

asks the Bankruptcy Court to order rejection and attaches a proposed order which is substantively the same as the Rejection Order the Bankruptcy Court ultimately entered. (*Compare* Ex. A hereto[2] with App. 572-80.) If DRF wanted the Rejection Order to grant only conditional or preemptive relief, it needed to ask for that relief clearly; it did not. And it certainly should have included that in the draft order it submitted so that the Bankruptcy Court could address the merits of whether such relief was appropriate.

More importantly, the Rejection Motion is not the order; so it does not matter that DRF cited to its pending recharacterization adversary proceeding in the Motion. A court order stands on its own and its text, not some inference one might draw from the moving papers, is what controls. *See, e.g.*, *Armour & Co.*, 402 U.S. at 681-82. The Bankruptcy Court noted this point when DRF made a similar argument in the Adversary Proceeding. When DRF argued that the rejection was a preemptive, alternative measure that left recharacterization open, the Bankruptcy Court doubted that "the concept of preemptive rejection" was even "[Bankruptcy] Code-based" and explained that whatever the parties intended, the "legal effect of what happened" did not turn on it. (App. 989:3-19.) PBI fares no better repeating that argument here.

PBI's caselaw does not bridge the gap. *Ziccarelli v. Dart* involved an order that expressly granted a new trial under Rule 59 in the alternative to judgment as a matter of law; the Rejection Order contains no comparable alternative holding. 142 F.4th 477, 489 (7th Cir. 2025). *In re Picnic "N Chicken* rested on a rejection order the opinion does not quote and a lessor who expressly reserved issues for an adversary proceeding; here the order's text is unconditional and DRF and

[2] Exhibit A to the Rejection Motion, which was DRF's proposed order, was inadvertently omitted from the Appendix that Kingsbridge filed of the Bankruptcy Court filings. It is attached hereto for the Court's convenience and is found at Bankr. Ct. Dkt. 309-1.

PBI reserved nothing specific. 58 B.R. 523, 527 (Bankr. S.D. Cal. 1986).[3] Because the preclusive effect of an order is determined by its text, the unquoted order in *Picnic "N Chicken* cannot provide any guidance to this Court concerning what the Rejection Order here decided.

***

The Court should dismiss PBI's recharacterization claim on the basis that it is barred.

## II. The Court Should Dismiss Defendants' Claim For Declaratory Relief.

Defendants' declaratory judgment counterclaim should be dismissed as redundant of Kingsbridge's breach of contract claim and Defendants' own affirmative defenses. (Mot. 14-15.) Courts routinely dismiss declaratory counterclaims that do no more than mirror the opposing party's claim, because such a claim "serves no useful purpose" where the substantive suit "would resolve the issues" it raises. *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002).

Defendants' reliance on *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC* is misplaced. There, a defense verdict on the breach claim would not have resolved whether the defendants were "legally justified" in terminating the leases, so the declaratory counterclaim raised a question the breach claim left open. 2010 WL 145792, at *2-3 (S.D. Ill. Jan. 12, 2010). Here the opposite is true. The questions Defendants' counterclaim poses are the questions this Court must answer to decide Kingsbridge's claim. Whether Amendments 2 and 3 were incorporated into the Equipment Supplements will be decided in adjudicating PBI's liability on Supplements with DRF and Presort (Amendment 2) and Kingsbridge's claims for cross-default and accelerated rent (Amendment 3). Whether Defendants breached is the breach claim itself, which Defendants

[3] *In re The Elder-Beerman Stores Corp.*, 201 B.R. 759 (Bankr. S.D. Ohio 1996), also does not support PBI's argument. It did not involve a rejection motion or rejection order, and the characterization issue was expressly reserved for a pending adversary proceeding, with the debtor's payments held in escrow pending that determination. *Id*. at 761, 765.

concede is the "flip-side" of Kingsbridge's claim. (Resp. 14 n.7.) And whether Kingsbridge is the true party-in-interest will be resolved in determining its right to recover. No declaration is needed to reach any of these issues; ruling on Kingsbridge's claim reaches them all.

Defendants' remaining argument confirms the redundancy. They say the declarations would interpret provisions that "potentially" govern equipment leases not at issue here and "could" prevent "future" breach claims. (Resp. 15.) That is not a present controversy; it is a request to construe contracts not before the Court in order to forestall disputes that may never arise. A declaratory judgment requires "a substantial controversy . . . of sufficient immediacy and reality." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Stripped of its framing, Defendants' request asks the Court to bless in advance their decision not to perform under leases it will not construe in this case. The Declaratory Judgment Act does not authorize that relief. It would be a pure advisory decision over which this Court would not have jurisdiction. *See People of State of Ill. ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 941 (7th Cir. 1983) (explaining that the Declaratory Judgment Act "could not enlarge the jurisdiction conferred on [the federal courts] by Article III and therefore could not empower them to give advisory opinions"); *N. Texas Equal Access Fund v. Thomas More Soc'y*, 728 F. Supp. 3d 887, 897 (N.D. Ill. 2024) (same). Count II should be dismissed.

## CONCLUSION

For these reasons and those in its opening memorandum, Kingsbridge respectfully requests that the Court dismiss Defendants' two Counterclaims with prejudice.

Dated: June 12, 2026

Respectfully submitted

/s/ *Dean Panos*

Dean N. Panos
Catherine Steege
Thomas E. Quinn
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2952
Email: dpanos@jenner.com
csteege@jenner.com
tquinn@jenner.com

*Attorneys for Plaintiff Kingsbridge Holdings, LLC*