**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KINGSBRIDGE HOLDINGS, LLC, | ) | |
| Plaintiff, | ) | No. 24 C 12906 |
| v. | ) | District Judge Sara L. Ellis |
| PITNEY BOWES INC. and PITNEY BOWES PRESORT SERVICES, LLC, | ) | Magistrate Judge M. David Weisman |
| Defendants. | ) | JURY DEMANDED |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO DEFENDANTS' THIRD, TWELFTH, THIRTEENTH, AND FOURTEENTH DEFENSES**

Plaintiff Kingsbridge Holdings, LLC ("**Kingsbridge**") respectfully submits its Reply Memorandum in support of its Motion for Judgment on the Pleadings with respect to Defendants' Third, Twelfth, Thirteenth, and Fourteenth Defenses (Dkt. 99).

**INTRODUCTION**

Pitney Bowes Inc. ("**PBI**") spends its Response addressing everything except the law that governs its Twelfth, Thirteenth, and Fourteenth affirmative defenses. (Dkt. 113 at 15-20 ("**Resp.**").) PBI does not dispute or seriously address Bankruptcy Code §524(e) (11 U.S.C. §524(e)) and the Seventh Circuit's decision, *CSI Worldwide, LLC v. Trumpf, Inc.,* 944 F.3d 661 (7th Cir. 2019), both of which foreclose those defenses as a matter of law by establishing that a proof of claim against a bankrupt debtor does not limit in any way a creditor's ability to recover from a non-bankrupt co-obligor. Instead of addressing binding Seventh Circuit authority or explaining how PBI could ever establish the elements of waiver, *res judicata*, or collateral estoppel given this binding Seventh Circuit authority, PBI switches gears. It now argues that these three affirmative defenses are based upon judicial estoppel even though the words "judicial estoppel"

appear nowhere in PBI's Answer. But that change of course fares no better than PBI's original articulation of these defenses because the Seventh Circuit in *CSI Worldwide* expressly rejected judicial estoppel as a basis to limit the ability of a party to collect from a non-bankruptcy co-obligor. 944 F.3d at 663. The bottom line in this Circuit (and in every other) is that "a claim in bankruptcy does not block recovery from third parties such as guarantors or jointly responsible persons." *Id*.

As to its Third Defense, in a footnote, PBI concedes its Third Defense—unclean hands—should be dismissed, but argues that the Court should nonetheless deny Kingsbridge's Motion on procedural grounds. (Resp. 17 n.9.) But that procedural argument—that Kingsbridge cannot move for judgment on the pleadings with respect to an individual affirmative defense—is wrong as a matter of law. The Court should enter judgment on all four defenses.

## ARGUMENT

### I. A Rule 12(c) Motion Is the Proper Vehicle to Eliminate Defenses That Fail as a Matter of Law.

Instead of addressing the substance of its four defenses, PBI devotes most of its Response to whether Rule 12(c) allows a court to enter judgment on an affirmative defense if the pleadings show that the defense cannot succeed as a matter of law. (Resp. 15-17.) According to PBI, the only basis on which to challenge an affirmative defense is Rule 12(f), as Rule 12(c) supposedly requires that a judgment on the pleadings dispose of the entire lawsuit. PBI is wrong on this point as explained below, but its invocation of Rule 12(f) does not save its four affirmative defenses.

That is because a motion challenging an affirmative defense under Rule 12(f), just like a Rule 12(c) motion, asks, among other things, whether the affirmative defense can withstand a challenge under Rule 12(b)(6). This Court held in *Atiq v. WSH Packaging Sys., Ltd.*, that a defense can survive a Rule 12(f) motion to strike only if "the affirmative defense [] set[s] out facts that

would withstand a Federal Rule of Civil Procedure 12(b)(6) challenge." 2025 WL 2354664, at *2 (N.D. Ill. Aug. 14, 2025) (Ellis, J.); *accord Sullens v. Graham*, 2014 WL 6765138, at *1 (N.D. Ill. Dec. 1, 2014) (a defense "incorrect as a matter of law . . . should be stricken"). As explained in the Motion and below, all four of the challenged affirmative defenses fail as a matter of law and thus would not survive a Rule 12(b)(6) motion. PBI even concedes that point for its Third Affirmative Defense. (Resp. 17 n.9.) Because the standard for deciding a Rule 12(b)(6) motion is the same as the standard for deciding a Rule 12(c) motion, a point PBI concedes (Resp. 16 n.8), it does not matter whether the Court decides Kingsbridge's Motion under Rule 12(f) or Rule 12(c). *See Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 994-95 (7th Cir. 2023). Either way, the Court should still dismiss PBI's Third, Twelfth, Thirteenth, and Fourteenth Defenses with prejudice.

The fact that Rule 12(f) also examines the legal sufficiency of an affirmative defense also renders moot PBI's argument that the *Iqbal/Twombly* plausibility standard should not apply. (Resp. 16-17.) Kingsbridge's Motion is not based on the sufficiency or plausibility of the facts that PBI has pled; it is based on the fact that no set of facts would establish these defenses because they fail as a matter of law.

PBI's argument that Rule 12(c) cannot be used to challenge the legal sufficiency of an affirmative defense also is wrong. Rule 12(h)(2)(B) expressly provides that the failure "to state a legal defense to a claim may be raised … by a motion under Rule 12(c)…." Fed. R. Civ. P. 12(h)(2)(B); *see McIntosh v. Antonino*, 71 F.3d 29, 38 (1st Cir. 1995) (citing Rule 12(h)(2)(B) and explaining that a plaintiff has the power to obtain an early decision on an affirmative defense by bringing a motion under Rule 12(c)).

Consistent with Rule 12(h)(2)(B), courts in this Circuit allow parties to test the legal sufficiency of an affirmative defense through a Rule 12(c) motion. *See EEOC v. Star Transp., Inc.*, 2014 WL 12736151, at *1-2 (C.D. Ill. Sept. 20, 2014) (entering partial judgment on an entire affirmative defense and rejecting the argument that the relief belonged in a motion to strike); *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 842, 849 (N.D. Ill. 2008) (granting judgment on the pleadings on two affirmative defenses).

In its Response, PBI ignores Rule 12(h)(2)(B) and instead argues that Rule 12(c) is available only if the Rule 12(c) motion disposes of the entire lawsuit. This is an incorrect reading of the Rule for at least two reasons. *First*, Rule 12(h)(2)(B) does not condition the use of Rule 12(c) on only those circumstances where the entire lawsuit would be dismissed. Instead, it states that Rule 12(c) is available to test the legal basis of a "defense to a claim" singular. And that is how Kingsbridge is using Rule 12(c) here. *Second*, because challenging an affirmative defense would rarely result in a judgment disposing of an entire case, PBI's position would essentially mean that only a defendant could move under Rule 12(c) and only then if judgment on the pleadings were available on every count of the complaint. PBI's argument is refuted by both Rule 12(h)(2)(B), which expressly contemplates that Rule 12(c) may be used to address the legal sufficiency of a defense, and Rule 12(c), which states that "a party"—meaning either a plaintiff or a defendant—may move for judgment on the pleadings.

Not surprisingly, PBI cites no authority that actually supports its position. Instead, it cites two cases—*Kenall Mfg. Co. v. Cooper Lighting, LLC*, 354 F. Supp. 3d 877 (N.D. Ill. 2018) and *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662 (7th Cir. 2011)—both of which are readily distinguishable. (Resp. 16.) In *Kenall,* a plaintiff sought judgment on the pleadings on the issue of liability, leaving damages to be decided at a later date. 354 F. Supp. 3d at 893. The *Kenall* court

held only that Rule 12(c) bars carving a single claim into adjudicated and unadjudicated pieces; *Kenall* says nothing about entering judgment on the entirety of a discrete affirmative defense. Nor does it suggest, as PBI incorrectly argues, that a Rule 12(c) motion must dispose of the entire lawsuit. *Id*. at 893-98.

PBI's citation to *Edgenet* is no better. PBI truncates a quote from *Edgenet* to support its argument that a Rule 12(c) motion must "resolve the entire suit." (Resp. 16.) But that is not what the *Edgenet* court held. The full sentence reads: "When the complaint itself contains everything needed to show that the defendant must prevail on an affirmative defense, then the court can resolve the suit on the pleadings under Rule 12(c)." 658 F.3d at 665. PBI quotes only the conditional half of that sentence, drops its operative clause, and replaces it with a paraphrase of its own, so that the standard becomes one "that would resolve the entire suit." (Resp. 16.) *Edgenet* says no such thing. Its actual language confirms that a court may resolve a case on the pleadings whenever the complaint establishes a defense; it does not limit Rule 12(c) to motions that dispose of the entire suit.

PBI's treatment of its Third Defense exposes the absurdity of its position. PBI concedes that its unclean hands defense is meritless and cannot survive as a matter of law. (Resp. 17 n.9.) Yet it asks the Court to keep the defense in the case for one reason only—that Kingsbridge sought its dismissal under Rule 12(c)—which PBI (wrongly) claims cannot resolve an individual affirmative defense. As discussed above, Rule 12(c) exists to resolve claims and defenses that can be decided as a matter of law, and PBI offers no reason its admittedly deficient Third Defense should survive, except its procedural argument that is unsupported by any case law.

As explained below, because all of these defenses are without legal merit, the Court should enter judgment dismissing the Third, Twelfth, Thirteenth, and Fourteenth Defenses from this case.

## II. Kingsbridge's Proof of Claim Does Not Cap What PBI Owes.

The Twelfth, Thirteenth, and Fourteenth Defenses rest on a single proposition: that Kingsbridge's proof of claim filed in the bankruptcy case of PBI's subsidiary and co-obligor, DRF, LLC ("**DRF**"), limits what Kingsbridge may recover from PBI. PBI never rebuts the controlling and extensive case law that refutes its position (Resp. 17-18), and for good reason. Section 524(e) provides that the discharge of the debtor's debt "does not affect the liability of any other entity" for that debt, and the Seventh Circuit has applied that rule to bar the very defenses at issue here. 11 U.S.C. §524(e); *CSI Worldwide*, 944 F.3d at 663. The Bankruptcy Code provisions that reduced Kingsbridge's claim against DRF do not apply to PBI. The Bankruptcy Code barred Kingsbridge from recovering unmatured interest from the estate, 11 U.S.C. §502(b)(2), and allowed fees and charges only to an oversecured creditor, *id.* §506(b); neither limit applies to a non-debtor co-obligor like PBI. *First Fid. Bank v. McAteer*, 985 F.2d 114, 118-19 (3d Cir. 1993); *FB Acquisition Prop. I, LLC v. Gentry (In re Gentry)*, 807 F.3d 1222, 1228 (10th Cir. 2015).

Although its defenses all rest on confining Kingsbridge's recovery to its bankruptcy proof of claim, PBI makes little effort to address the authority that forecloses them. It does not distinguish *CSI Worldwide* or the §524(e) cases, it does not dispute that the amounts Kingsbridge seeks from PBI were not capable of being recovered from DRF once DRF filed for bankruptcy, and it answers the Bankruptcy Code only by calling Kingsbridge's arguments "strawmen." (Resp. 19.) Faced with §524(e), PBI abandons the waiver, *res judicata*, and collateral estoppel labels it pleaded in its Answer and defends all three defenses on the basis of judicial estoppel. (Resp. 18-19.)[1] That doctrine does not apply here for at least three reasons.

---

[1] Each doctrine would fail in any event. *Res judicata* requires a final judgment on the merits, and collateral estoppel requires that an issue actually be litigated and decided; the Bankruptcy Court neither adjudicated the amount of Kingsbridge's claim nor reached the merits of Kingsbridge's motion for summary judgment. Waiver requires the intentional relinquishment of a known right, which Kingsbridge's reduction of a claim

***First***, in *CSI Worldwide*, the Seventh Circuit expressly rejected the very same argument that PBI makes here. In that case, a defendant seeking to evade its liability like PBI is doing here, argued that judicial estoppel barred the plaintiff's recovery because the plaintiff had filed a claim in a co-obligor's bankruptcy case. 944 F.3d at 662-63. The Seventh Circuit rejected this argument, holding that as a matter of law, a creditor "has not prevailed by collecting the debt" from the co-obligor's bankruptcy estate. *Id*. at 663. In other words, an essential element of judicial estoppel is not met because seeking to collect what is recoverable from two co-obligors is never, as a matter of law, viewed as taking inconsistent positions in two courts—a necessary element of a judicial estoppel defense. Here, that conclusion is even more true as Kingsbridge has not collected a penny from DRF's bankruptcy estate.

***Second***, even assuming *CSI Worldwide* does not bar this defense as a matter of law, Kingsbridge has never taken an inconsistent position. It has always maintained that it will recover the full amount of its damages from PBI. When Kingsbridge's subsidiary Trilogy Leasing Co., LLC ("**Trilogy**") first moved for summary judgment in the Bankruptcy Court adversary proceeding, it offered to limit its claim against the estate "without prejudice to its rights to recover its full claim against PBI," and DRF acknowledged that reservation in its own opposition. (*See DRF, LLC v. Trilogy Leasing Co., LLC*, Adv. 24-03205 (Bankr. S.D. Tex.), Adv. Dkt. 129 at 4 n.3 (Ex. A hereto); Dkt. 98-2 at 889-90 at ¶ 54[2].) Kingsbridge reduced its estate claim only after PBI and DRF disclosed, for the first time in opposing summary judgment approximately three weeks before trial, their theory that recharacterization of the equipment leases would strip "unmatured

---

against DRF's estate was not. PBI's failure to support each of these defenses forfeits them. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

[2] Certain of the filings from DRF's chapter 11 case and the adversary proceeding were included in an Appendix filed in support of Kingsbridge's Motion to Dismiss Defendants' Counterclaims found at Dkt. 98-2.

interest" from the claim. While Kingsbridge disagreed that its claims contained unmatured interest, litigating over this difference made no economic sense given the miniscule distribution percentage. And so Kingsbridge voluntarily reduced its proof of claim to eliminate the amount that PBI claimed was uncollectible unmatured interest because DRF was in bankruptcy. In doing so, the Bankruptcy Court was told *by DRF* that Kingsbridge would continue to claim these amounts from PBI in this lawsuit. (*See* Dkt. 98-2 at 934:16-935:4.) And PBI itself acknowledged the same point, telling the Bankruptcy Court: "So the problem is, is that the 7 million that they have reduced against the debtor, they have not reduced against PBI." (*Id*. at 947:5-7.) Everyone understood—the Bankruptcy Court, DRF, and PBI—that Kingsbridge's claim reduction was intended to eliminate an amount that was allegedly unrecoverable from DRF because of DRF's bankruptcy filing, but was fully recoverable from PBI because PBI is not a debtor in a bankruptcy case. Simply put, claiming from DRF only the amounts the Bankruptcy Code allows, while pursuing the full contract measure from PBI, is not a contradiction, as *CSI Worldwide* holds.

***Third,*** even assuming *CSI Worldwide* does not bar this defense and even if the positions were inconsistent (they are not), the Bankruptcy Court never accepted Kingsbridge's position that recharacterization would not affect DRF's estate, and judicial estoppel reaches only a party that "succeeded in persuading a court to accept" its earlier position. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). The Bankruptcy Court never ruled on Trilogy's jurisdictional motion or reached its estate-impact argument, because the court *sua sponte* identified a more serious problem with DRF's and PBI's case. Having entered a final order rejecting the equipment leases at issue in the adversary proceeding and at issue here as leases under 11 U.S.C. §365, the Bankruptcy Court was concerned that it could not later declare the same agreements were not leases without, in its words, "undoing [its] final order." (Dkt. 98-2 at 989:24; *see id*. at 954:24-955:3.) As the cases PBI

cites confirm, judicial estoppel applies only where a litigant first convinces "one judicial body to adopt" a contention and then tells "another judicial body that those contentions were false." *Konstantinidis v. Chen*, 626 F.2d 933, 938-39 (D.C. Cir. 1980). Neither happened here. The Bankruptcy Court adopted no Kingsbridge contention, and neither Trilogy nor Kingsbridge made an inconsistent, let alone "false" statement to any court.

Judicial estoppel's third consideration, an unfair advantage, is also absent. *See New Hampshire*, 532 U.S. at 751. DRF has paid nothing on the claim, the projected distribution is three to ten cents on the dollar, and Kingsbridge will withdraw its bankruptcy claim if it collects here first. (Dkt. 99-1 at 6-7 ("**Mot.**").) No double recovery is possible.

## III. PBI's Suggestion Of Bad Faith Rests On A Distortion Of The Record.

The Twelfth, Thirteenth, and Fourteenth defenses fail as a matter of law on a record the Court may judicially notice, and Kingsbridge's good faith is not an element of any of them. But PBI does not confine its opposition to the law. It accuses Kingsbridge of misleading the Bankruptcy Court, telling this Court that Kingsbridge "tell[s] two different courts two different things," and that its CEO either "was being honest . . . or he was not." (Resp. 19.) The accusation is false. The public record shows that PBI manufactured the adversary dispute, hid its purpose behind privilege when Kingsbridge tried to test it, and has tried to abandon the case the moment the Bankruptcy Court questioned its merits, in the hope of avoiding a ruling on the merits.

As PBI told the Bankruptcy Court when it intervened, "[i]f DRF prevails and the [agreements] are properly characterized as debt, PBI will have additional defenses to liability." (Dkt. 98-2 at 721, ¶24.) DRF had no comparable interest. As a liquidating debtor that rejected the leases and wanted nothing more to do with the equipment, its estate would owe the same unsecured claim whether the agreements were leases or loans. (Mot. 5-6.) Recharacterization could help only PBI, the non-debtor.

Given the limited nature of bankruptcy jurisdiction under 28 U.S.C. §1334(b), Trilogy challenged the Bankruptcy Court's jurisdiction on the ground that recharacterizing 25 leases could not affect the estate. It sought discovery to test PBI's contrary theory and got nothing but obfuscation. DRF's corporate representative could not identify any impact recharacterization would have on the estate and invoked privilege when pressed for one. PBI's designated 30(b)(6) witness, an outside bankruptcy consultant, offered a different possibility—that recharacterization could save DRF equipment-return costs—but Kingsbridge had never sought those costs in its bankruptcy claim. (Adv. Dkt. 131 at 3-5 (Ex. B hereto).) Kingsbridge even offered to limit its estate claim while reserving its claim against PBI, and DRF never responded, because a resolution that left Kingsbridge free to pursue PBI did nothing for PBI. (Ex. A at 4 n.3.)

Only when opposing summary judgment, approximately three weeks before trial, did PBI and DRF first assert that recharacterization would strip "unmatured interest" from Kingsbridge's claim, thereby reducing that claim by approximately $12 million. (Dkt. 98-2 at 885, ¶45.) The theory was a non-sequitur. Unmatured interest is not recoverable from a bankruptcy debtor whether the obligation is a lease or a loan, because rejection of the leases made Kingsbridge's claim an unsecured claim under 11 U.S.C. §502(g)(1), which meant that unmatured interest was uncollectible in a bankruptcy under 11 U.S.C. §502(b)(2). But Kingsbridge took PBI and DRF at their word anyway, accepting DRF's and PBI's representation that the difference between Kingsbridge's claim, and the amount they asserted Kingsbridge was owed, was unmatured interest. Kingsbridge reduced its bankruptcy claim to $64,420,000—the amount DRF admitted it owed—on the basis that DRF and PBI argued: that the eliminated amount constituted unmatured interest.[3]

[3] PBI, which directed the litigation, may now regret manufacturing the unmatured interest theory at the eleventh hour to avoid summary judgment, but it must live with the consequences.

Reducing a claim against DRF to exclude what no bankruptcy creditor could recover, to end a trial that would change nothing for DRF, Trilogy, or Kingsbridge, is not an admission that the same number caps a different party's liability.[4]

PBI's defenses do not fail because of how the bankruptcy dispute unfolded; they fail because 11 U.S.C. §524(e) and binding precedent foreclose them. PBI's suggestion of bad faith and perjury is a distraction from that conclusion. Moreover, a litigant like PBI that drops a claim to avoid an adverse ruling, only to refile it elsewhere, is in no position to accuse its adversary of playing two courts against each other.

## CONCLUSION

For these reasons and those in its opening memorandum, Kingsbridge respectfully requests that the Court enter judgment on the pleadings dismissing Defendants' Third, Twelfth, Thirteenth, and Fourteenth Affirmative Defenses with prejudice.

Dated: June 12, 2026

Respectfully submitted

/s/ *Dean Panos*

Dean N. Panos
Catherine Steege
Thomas E. Quinn
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2952
Email: dpanos@jenner.com
csteege@jenner.com
tquinn@jenner.com

[4] PBI's thinly veiled "perjury" accusation against Kingsbridge's CEO rests on a similar misunderstanding of the law and a misreading of the claim form. It points to the line stating the "amount necessary to cure any default" as of the petition date. (Resp. 18.) That line states the claim against the estate, not what a non-debtor co-obligor like PBI owes, for the reasons given above and in Kingsbridge's opening motion.

*Attorneys for Plaintiff Kingsbridge Holdings, LLC*