**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KINGSBRIDGE HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PITNEY BOWES INC. and PITNEY BOWES PRESORT SERVICES, LLC,<br><br>Defendants. | ) | No. 24 C 12906<br><br>Judge Sara L. Ellis |

**OPINION AND ORDER**

Kingsbridge Holdings, LLC ("Kingsbridge") filed this case against Defendants Pitney Bowes Inc. ("PBI") and Pitney Bowes Presort Services, LLC ("Presort") asserting breach of contract. In response, Defendants asserted counterclaims for recharacterization of the allegedly breached leases (the "Agreements") and declaratory relief, along with various affirmative defenses. Kingsbridge has now filed a flurry of motions seeking to dismiss Defendants' counterclaims and asking the Court to grant judgment on the pleadings or strike several of Defendants' affirmative defenses. For the reasons stated below, the Court denies the motion to dismiss but grants the motion for judgment on the pleadings and the motion to strike. The Court enters judgment for Kingsbridge on Defendants' third, twelfth, thirteenth, and fourteenth affirmative defenses and strikes Defendants' seventeenth affirmative defense.

## BACKGROUND[1]

Kingsbridge is a limited liability company employed in "various lines of business, including equipment leasing and servicing." Doc. 94 ¶ 1. Kingsbridge indirectly owns and controls Trilogy Leasing Co., LLC ("Trilogy"), another limited liability company in the equipment leasing business. On or about November 2, 1999, Trilogy entered into a Master Lease Agreement ("MLA") with PBI. The MLA provided terms that were later incorporated by reference into equipment supplements between Trilogy and PBI or its affiliates. The MLA also allowed PBI's subsidiaries and affiliates to bind PBI by executing equipment supplements with Trilogy. Thus, providing that an equipment supplement was a "true lease," any default would render PBI liable. However, if an equipment supplement was a disguised financing arrangement, rather than a "true lease," the MLA would not bind PBI for its affiliates' default. *See* Doc. 97 ¶ 19. Trilogy executed 82 equipment supplements with DRF Logistics, LLC ("DRF") as a co-lessee, 59 equipment supplements with Presort as a co-lessee, and 29 equipment supplements with PBI as the sole lessee. Trilogy later assigned its interests in these equipment supplements to Kingsbridge.

Kingsbridge alleges that PBI entered into an asset purchase agreement in 2024 in which it sold certain equipment and property leased under the MLA and equipment supplements, resulting in default. Kingsbridge further alleges that PBI sold its controlling interest in DRF in

---

[1] The Court takes the facts from Defendants' counterclaims and presumes them to be true for the purpose of resolving Kingsbridge's motions, although it includes additional factual allegations in this section from Kingsbridge's complaint for context. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court "may also take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

2024, allowing DRF "to file a bankruptcy petition without triggering a default in PB[I]'s institutional debt and constituted an event of default." Doc. 94 ¶ 18. Shortly thereafter, on August 8, 2024, DRF filed a voluntary Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas (the "bankruptcy proceedings").

After initiating the bankruptcy proceedings, DRF filed an adversary proceeding against Trilogy in the U.S. Bankruptcy Court for the Southern District of Texas (the "adversary proceedings"), seeking to recharacterize certain equipment supplements as financing agreements. The bankruptcy court ultimately did not rule on the merits of DRF's recharacterization claim. This is because, prior to trial, Kingsbridge "voluntarily reduc[ed] its claimed damages for the 25 Equipment Supplements at issue in the adversary proceeding from $76,616,370.36 to $64,420,000," which eliminated "any argument that recharacterizing the 25 leases at issue here as loans has any impact on the estate." Doc. 113 at 6. Given this development, the bankruptcy court granted Trilogy's motion to dismiss the adversary proceeding without prejudice for lack of jurisdiction.

## LEGAL STANDARD

The legal standard for a motion to dismiss a counterclaim is the same as the standard applied to a motion to dismiss a complaint. *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the counterclaim must assert a facially plausible

claim and provide fair notice to the counterdefendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Kingsbridge also moves for judgment on the pleadings and to strike certain affirmative defenses. "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp*., 862 F.3d 588, 595 (7th Cir. 2017). When the movant seeks to "dispose of the case on the basis of the underlying substantive merits . . . the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993).

On the other hand, Federal Rule of Civil Procedure 12(f) allows the Court to strike an affirmative defense when it is insufficient on the face of the pleadings. Fed. R. Civ. P. 12(f); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Although the Seventh Circuit has not yet decided whether *Twombly* and *Iqbal* apply to affirmative defenses, the majority of district courts in the Circuit have found that they do. *See Connectors Realty Grp. Corp. v. State Farm Fire & Cas. Co.*, No. 19 C 743, 2021 WL 1143513, at *3 (N.D. Ill. Mar. 25, 2021) ("This Court has followed the majority view in this District that affirmative defenses must follow the plausibility standard under *Twombly* and *Iqbal*."); *City of E. St. Louis v. Pharmacia LLC*, No. 3:21-CV-232, 2022 WL 613278, at *1 n.1 (S.D. Ill. Mar. 2, 2022) ("[D]espite some disagreement among the district courts in this Circuit, the majority seems to find the heightened pleading standards of *Twombly* and *Iqbal* applicable to defendants attempting to plead

affirmative defenses."); *Teamsters Loc. Union No. 75 v. Cent. Contractors Serv*., No. 18-CV-05843, 2020 WL 5994496, at *8 (N.D. Ill. Oct. 9, 2020) ("[T]he 'majority view' is that the heightened standard enunciated in [*Iqbal* and *Twombly*] applies to affirmative defenses."). The Court adopts this majority view, meaning that an affirmative defense must be pled with "sufficient factual matter" to be "plausible on its face." *Iqbal*, 556 U.S. at 678. And where an affirmative defense alleges fraud or mistake, the heightened requirements of Federal Rule of Civil Procedure 9(b) apply. *See RBG Plastic, LLC v. Webstaurant Store*, No. 1:18-CV-05192, 2020 WL 7027601, at *6 (N.D. Ill. Nov. 30, 2020) (striking affirmative defense for not complying with Rule 9(b)); *Lowe v. Diversified Consultants, Inc*., No. 12 C 2009, 2012 WL 3776715, at *1 (N.D. Ill. Aug. 30, 2012) (same).

## ANALYSIS

### I. Motion to Dismiss Counterclaims

#### A. Counterclaim I

Kingsbridge first moves to dismiss Counterclaim I, which seeks a declaration recharacterizing the Agreements as financing agreements. Kingsbridge argues that *res judicata* bars this counterclaim, pointing to an order from the bankruptcy proceedings authorizing the rejection of the Agreements under 11 U.S.C. § 356(a) (the "Rejection Order"). Because § 356(a) allows rejection only of unexpired leases or executory contracts, Kingsbridge argues that the bankruptcy court necessarily must have found that the Agreements were true leases prior to authorizing rejection. *See United Airlines, Inc. v. HSBC Bank USA, N.A.*, 416 F.3d 609, 612 (7th Cir. 2005) ("[E]very appellate court that has considered the issue holds . . . that only a 'true lease' counts as a 'lease' under § 365."). Defendants disagree, arguing that *res judicata* does not apply because the Rejection Order did not address the merits of recharacterization.

"The three requirements for *res judicata* under federal law are: (1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits." *Cent. States, S.E. & S.W. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002). "In order to be barred by issue preclusion, or by claim preclusion where the issue was litigated, the prior decision must have been on the merits of the issue" and "the party against whom the prior judgment is asserted must have had an effective opportunity to litigate the issue in the prior proceedings." *Jones v. City of Alton*, 757 F.2d 878, 885 (7th Cir. 1985) (citations omitted). "For 'while the purpose of the doctrine is to prevent a party from litigating the same issue twice, it should not be used to preclude a party from litigating the matter at all.'" *Id.* (citation omitted). As the party asserting *res judicata*, Kingsbridge "bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Id.* The Court agrees with Defendants that Kingsbridge has not met its burden of showing that the Rejection Order addressed the issue of recharacterization on the merits.

Importantly, a motion to assume or reject "is brought in the bankruptcy court as a contested matter, which is a procedural vehicle designed to decide quickly those matters that move ahead the administration of the estate." *In re Hooker Invs., Inc.*, 131 B.R. 922, 930 (Bankr. S.D.N.Y. 1991). "The standard to determine whether to approve a motion to reject under § 365 of the Code is the so-called business judgment test, which requires a showing that the rejection of a contract would benefit the estate." *Id.* at 927 (collecting cases). The scope of the inquiry on a rejection motion is therefore "a limited one intended to allow the Debtor to expeditiously rid itself of a burdensome contract while continuing towards its goal of reorganization," meaning that it is "not the appropriate time for the debtor to raise counterclaims against the creditor." *Id.* at 930–31*; see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1098–99

(2d Cir. 1993) ("At heart, a motion to assume should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed issues.").

For this reason, multiple courts have rejected similar arguments to those made by Kingsbridge here. In *Hooker Investments*, for example, the defendants argued that the debtor, who had previously rejected an executory contract, was "precluded from seeking to void the contract through the pending adversary proceeding." 131 B.R. at 924. The defendants' "theory [was] that pursuant to § 365(g)(1) of the Code, a court order approving the rejection of an executory contract not only constitutes a judgment that the debtor breached the contract as of the date immediately prior to the filing of the petition but affirms the validity of the contract that was breached." *Id.* at 926. The bankruptcy court disagreed, noting first that "[d]ifferent showings must be made to support the respective proceedings." *Id.* at 927. The bankruptcy court further highlighted "the procedural context" of the rejection motion, explaining that:

> [T]he Rejection Motion which the Defendants argue should give rise to res judicata was brought as a contested matter just days after the Debtor filed its petition. . . . Requiring the Debtor to raise and litigate the more complex allegations . . . raised in the adversary proceeding would thwart Congress' intent in directing that a rejection motion be resolved as a "fast track," contested matter. To hold otherwise would essentially force a debtor to carry a potentially burdensome contract pending the resolution of an adversary proceeding, a course which might expose the estate to very substantial administrative expenses in the event the debtor were unsuccessful in setting the agreement aside. I cannot fathom that this result was intended under the Code and therefore find that res judicata is no bar to the Debtor's suit.

*Id.* at 930.

Similarly, in *In re Orion*, the Second Circuit explained that "[a]t heart, a motion to assume should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate." 4 F.3d at 1098. Because bankruptcy courts apply the business judgment standard, a ruling on a motion to assume or reject is "[i]n no way . . . a formal ruling on the underlying disputed issues" and "thus will receive no collateral estoppel effect." *Id.* at 1099; *see also In re IMG Healthcare, LLC*, No. 06-10059, 2006 WL 2802208, at *4 (Bankr. E.D. La. Sept. 28, 2006) ("[T]he only issue adjudicated by this court to date is that the MCENO lease, along with others, was rejected by the debtor effective January 30, 2006. Again, no substantive issues relating to the lease were adjudicated, and the doctrine of *res judicata* does not apply to those issues."). While these cases are not binding, the Court finds their reasoning persuasive. The bankruptcy court's Rejection Order was based on the application of the business judgment standard, Doc. 98-2 at 573 ("[I]t appear[s] that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors[.]"), rather than an adjudication of the substantive recharacterization issue.

The language in the underlying motion for authority to reject certain agreements and the Rejection Order itself only further bolsters this conclusion. In its motion, DRF did not address recharacterization beyond stating that:

> For the avoidance of doubt, the Debtors believe the Fixture Agreements are not "true" leases but instead disguised financings. To avoid incurring unnecessary costs to the detriment of the Debtors' estates, however, the Debtors—in their business judgment—seek to reject the Fixture Agreements as alternative relief in the event the Court finds the Fixture Leases are leases.

*Id.* at 427. Similar limiting language appeared in the Rejection Order, in which the bankruptcy court expressly stated that "[n]othing contained in the Motion or this Order or any actions taken by the Debtors pursuant to the relief granted in this Order is intended to be or shall be deemed as . . . an admission that the Fixture Agreements constitute 'true' leases rather than financing transactions or an admission that Trilogy holds title to the equipment leased thereunder." *Id.* at 574.[2] And neither the motion nor the Rejection Order contained any substantive analysis regarding the merits of recharacterization.

The history of the adversarial proceedings also undermines a finding that the Rejection Order clearly resolved the recharacterization issue. Following the entry of the Rejection Order, DRF, PBI, and Trilogy proceeded to litigate the recharacterization issue in the adversary proceeding for almost two years. Whether and to what extent the Rejection Order addressed recharacterization were questions not raised until a January 20, 2026 pretrial conference, during which the same bankruptcy judge who issued the Rejection Order stated that he "started thinking about" the "order approving the rejection" and noted that § 356 allowed rejection only of executory contracts or unexpired leases. *Id.* at 936. The bankruptcy judge told the parties that he did not know what the legal effect of the Rejection Order was on recharacterization and requested briefing on the issue. *Id.* at 936–41. Even after the parties briefed this issue, however, the bankruptcy court was still uncertain. *Id.* at 988 ("[W]hat is the legal effect of the rejection order as to this litigation? I don't know the answer."). Because the bankruptcy judge was "not

[2] While Kingsbridge argues that these disclaimers did not reserve Defendants' rights to bring a recharacterization claim, this argument misses the point. Kingsbridge bears the burden of establishing that the Rejection Order addressed the recharacterization issue on the merits, and these disclaimers undermine such a finding. Because Kingsbridge has not established that *res judicata* bars this claim, the question of whether Defendants' reservation of rights is sufficient to overcome *res judicata* is not at issue.

comfortable proceeding until [he] kn[e]w the answer to the question," he asked for further briefing from the parties on this issue. *Id.* at 988–91. The parties did not submit the requested briefing, and the bankruptcy court did not resolve the issue before dismissing the adversary proceeding for lack of jurisdiction. *See* Doc. 141 at 1; Doc. 141-1 at 1.

Given the above, the Court cannot conclude that Kingsbridge has demonstrated with clarity and certainty that the Rejection Order addressed recharacterization on the merits. The Court therefore denies the motion to dismiss Counterclaim I.

**B. Counterclaim II**

Kingsbridge also moves to dismiss Counterclaim II as duplicative of Kingsbridge's breach of contract claim and Defendants' affirmative defenses. Courts routinely dismiss counterclaims that mirror the plaintiff's claims or the defendant's own affirmative defenses "on the grounds that such pleadings are duplicative and merely complicate the pleadings." *Penn Mut. Life Ins. Co. v. GreatBanc Tr. Co.*, No. 09 C 6129, 2010 WL 2928054, at *5 (N.D. Ill. July 21, 2010) (collecting cases); *see also Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1065 (N.D. Ill. 2013) ("[C]ourts routinely dismiss counterclaims that seek to generate an independent piece of litigation out of issues that are already before the court; this includes counterclaims that merely restate an affirmative defense, as well as those which simply seek the opposite effect of the complaint."). However, counterclaims with the *potential* to afford different or additional relief than a ruling on the plaintiff's claims or the affirmative defenses alone should not be dismissed. *See, e.g.*, *Illiana Realty, LLC v. Whebbe Pink Dogwood I, LLC*, No. 120CV01165, 2020 WL 6434492, at *3 (C.D. Ill. Nov. 2, 2020) ("While it is not certain what will occur in discovery, the counterclaim *may potentially afford* different and additional relief as opposed to if the Court ruled on Plaintiff's claims alone. The door to additional relief should not

be closed at this point in the proceedings based on the available facts."); *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1039 (N.D. Ill. 2014) ("Because Defendant's counterclaim seeking a cancellation of Plaintiff's mark based upon fraud may potentially afford Defendant different or additional relief than a finding of invalidity alone, the claim is not duplicative of Defendant's trademark invalidity defense.").

Here, the parties argue over whether and to what extent Counterclaim II is duplicative of Kingsbridge's breach of contract claim and Defendants' affirmative defenses. Given the early stage of the case, it is not readily apparent which party is correct. Because the dismissal of a duplicative claim has no substantive impact on the scope of a case, the Court finds it appropriate to defer this determination until the record is more fully developed. *See Steines v. Menrisky*, No. 16 C 6370, 2017 WL 2243097, at *6 (N.D. Ill. May 23, 2017) ("[D]ismissing a duplicative claim has no substantive impact—after all, a plaintiff can recover only once for any particular injury, no matter how many claims or counts concerning that injury are alleged. Accordingly, rather than engage in this largely inconsequential matter at the pleading stage, the court will do so at summary judgment or before trial, when a more fully developed record will enable the court to more accurately ascertain whether the claims actually are duplicative."). The Court therefore denies the motion to dismiss Counterclaim II.

## II. Motion for Judgment on the Pleadings

Kingsbridge next moves for judgment on the pleadings with respect to Defendants' third, twelfth, thirteenth, and fourteenth affirmative defenses. As a preliminary matter, the Court must address Defendants' argument that judgment on the pleadings is not appropriate for eliminating affirmative defenses. *See* Doc. 113 at 16–17. Specifically, Defendants argue that "[f]ederal courts have historically 'prohibited piecemeal disposition of litigation'" and therefore a Rule

12(c) motion is appropriate only where the affirmative defense "would resolve the entire suit." *Id.* None of the cases Defendants cite support this argument, and the Seventh Circuit has expressly confirmed that a motion for judgment on the pleadings under Rule 12(c) is an "appropriate vehicle for resolving an affirmative defense." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020); *see also Equal Emp. Opportunity Comm'n v. Star Transp., Inc.*, No. 13-CV-1240, 2014 WL 12736151, at *1 (C.D. Ill. Sept. 20, 2014) ("A motion for partial judgment on the pleadings on a defense is procedurally proper."); *City of Joliet v. Mid-City Nat'l Bank of Chicago*, No. 05 C 6746, 2012 WL 638735, at *8 (N.D. Ill. Feb. 22, 2012) (granting motion for judgment on the pleadings with respect to certain affirmative defenses). For this reason, the Court will not deny the motion on procedural grounds.

Beyond their procedural objection, Defendants "do[] not oppose the substance of Kingsbridge's motion for judgment on the pleadings with respect to Pitney Bowes' Third Affirmative Defense." Doc. 113 at 17 n.9. The Court therefore grants judgment to Kingsbridge on PBI's third affirmative defense.

Turning to the twelfth, thirteenth, and fourteenth affirmative defenses, these defenses all seek to bar Kingsbridge from recovering damages greater than those asserted in Kingsbridge's amended proof of claim in the bankruptcy case. Specifically, the twelfth affirmative defense is based on judicial estoppel, the thirteenth affirmative defense is based on waiver, and the fourteenth affirmative defense is based on claim and issue preclusion. Notably, however, PBI's response brief sets forth no substantive arguments regarding waiver, claim preclusion, and issue preclusion. Instead, PBI's arguments focus only on the standard for judicial estoppel. *See* Doc. 113 at 18–19. PBI has therefore abandoned its thirteenth and fourteenth affirmative defenses, and the Court grants judgment to Kingsbridge on these defenses. *See Alioto v. Town of Lisbon*,

651 F.3d 715, 721 (7th Cir. 2011) ("It is a longstanding rule that a plaintiff waives his claims when he fails to develop arguments or fails to respond to alleged deficiencies in a motion to dismiss."); *E-Link Plastic & Metal v. Mossime*, No. 23 CV 16802, 2024 WL 5444302, at *1 (N.D. Ill. Dec. 2, 2024) ("Defendant Mossime does not respond or contest Plaintiff's motion on a number of affirmative defenses . . . . By failing to respond, Defendant has waived any argument about preserving these asserted affirmative defenses, and they are dismissed.").

With respect to the twelfth affirmative defense, Kingsbridge first argues that 11 U.S.C. § 524(e) and *CSI Worldwide, LLC v. TRUMPF Inc.*, 944 F.3d 661 (7th Cir. 2019), prevent Defendants from maintaining this defense. As an overview, in *CSI Worldwide*, the Seventh Circuit overruled the district court's finding that plaintiff's earlier claim against defendant's co-debtor in bankruptcy proceedings barred it from later seeking to recover from the defendant. 944 F.3d at 662–63. In doing so, the Seventh Circuit explained that "[f]iling a claim in bankruptcy does not foreclose claims against non-bankrupt obligors" because it is "common and proper" to seek to recover a debt from multiple debtors. *Id.* Similarly, § 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

While this authority is instructive, it does not get Kingsbridge to the result it seeks. As Defendants explain in their response, the issue is not that Kingsbridge seeks to recover from multiple different entities. Rather, the issue is that Kingsbridge's amended proof of claim in the bankruptcy proceedings sought $69,711,387.12, whereas Kingsbridge now seeks damages "in excess of $100 million." Doc. 94 ¶ 23. According to Defendants, judicial estoppel bars Kingsbridge from taking these "contrary position[s]" and seeking these higher damages. Doc. 113 at 18 ("Having expressly manipulated its claim to destroy the bankruptcy court's

jurisdiction, Kingsbridge should not now be allowed to change its position just because it now wants to seek greater damages here."); *see also Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005), *as amended* (Nov. 21, 2005) ("The doctrine of judicial estoppel prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued in an earlier legal proceeding.").

In its reply, however, Kingsbridge argues that these different damages figures do not actually reflect contrary positions. This argument is more persuasive. Although Kingsbridge's amended proof of claim in the bankruptcy proceedings sought a different damages figure than Kingsbridge currently seeks in this case, Defendants do not allege that Kingsbridge represented to the bankruptcy court that this lower figure was the full extent of the damages it would seek in this case. To the contrary, Defendants admits that Kingsbridge's counsel was clear with "the bankruptcy court that Kingsbridge had reduced its claim specifically to 'eliminate[] any argument that recharacterizing the 25 leases at issue here as loans has any impact on the estate' and to 'avoid the expense of a lengthy trial.'" Doc. 113 at 18 (citation omitted). And PBI itself acknowledged in front of the bankruptcy court that, although Kingsbridge reduced its claim against DRF, it had not committed to similarly reducing its claim against PBI. Doc. 98-2 at 947:5–7.

Upon review of these facts, the Court finds *In re Oparaji*, 698 F.3d 231 (5th Cir. 2012), to be particularly instructive. There, the debtor alleged that a creditor had adopted inconsistent positions in its amended proofs of claims and "invoked the doctrine of judicial estoppel to prevent [the creditor] from proceeding with its increased claim." *Oparaji*, 698 F.3d at 236. The district court agreed with the debtor, acknowledging that while "judicial estoppel is typically applied to bar *debtors* from pursuing claims that they failed to disclose to their creditors, . . . the

importance of full disclosure is not lessened in the case of a material non-disclosure of a *creditor*." *Id.* (citation omitted). On appeal, the Fifth Circuit reversed the district court's invocation of judicial estoppel, noting that "the District Court has not identified any statute or judicial precedent that imposes a legal responsibility on [the creditor] to seek the full amount to which it is entitled in each amended claim." *Id.* Additionally, the Fifth Circuit highlighted the fact that the creditor had made no "explicit commitment" to fully retire the debtor's debt. *Id.* For these reasons, the creditor's later increase of its claim was not inconsistent with its earlier, lower claim as a matter of law. *Id.* at 237.

While *In re Oparaji* is not binding, the same logic applies to the facts of this case. As discussed, Defendants notably do not allege that Kingsbridge ever explicitly committed to reducing its claim against them. Nor have Defendants provided any authority requiring Kingsbridge to seek recovery of its full damages against DRF and Defendants in the proof of claim. Thus, Kingsbridge's amended proof of claim and current damages claim do not reflect contrary or inconsistent positions, and Defendants' judicial estoppel affirmative defense fails as a matter of law. The Court grants judgment to Kingsbridge on Defendants' twelfth affirmative defense.

## III. Motion to Strike

Finally, Kingsbridge moves to strike Defendants' seventeenth affirmative defense, which asserts in a single sentence that "Kingsbridge's claims are barred by the doctrines of mutual mistake, unilateral mistake, and/or because Kingsbridge fraudulently induced PBI to enter into Amendment 2 and/or Amendment 3 to the MLA." Doc. 97 at 9. Kingsbridge argues that this affirmative defense "does not even come close to meeting the Rule 9(b) standard for pleading fraud or mistake, let alone Rule 8's plausibility standard." Doc. 100-1 at 2. Defendants do not

dispute that their seventeenth affirmative defense does not meet the heightened Rule 9(b) standard, and instead cite only to cases declining to apply this heightened standard to affirmative defenses. *See, e.g.*, *Markel Ins. Co. v. United Emergency Med. Servs., LLC*, No. 2:16-CV-220, 2017 WL 94272, at *1 (N.D. Ind. Mar. 10, 2017) (This Court continues to agree with those cases declining to apply the 'plausibility' standard of *Iqbal* and *Twombly* to affirmative defenses."). Because the Seventh Circuit has not yet decided whether *Twombly* and *Iqbal* apply to affirmative defenses, this Court joins the majority of district courts in this Circuit holding that they do. *See, e.g.*, *Sanchez v. Crown Equip. Co.*, No. 25 C 5443, 2026 WL 1893936, at *1 (N.D. Ill. July 1, 2026) ("While the Seventh Circuit has not addressed whether the *Twombly*-*Iqbal* standard applies to affirmative defenses, judges in this district have generally found these requirements to apply." (citation omitted)); *Connectors Realty*, 2021 WL 1143513, at *3; *Pharmacia LLC*, 2022 WL 613278, at *1 n.1; *Teamsters Loc. Union*, 2020 WL 5994496, at *8. And because the seventeenth affirmative defense alleges fraud and mistake, the Court further applies the heightened requirements of Federal Rule of Civil Procedure 9(b). *See RBG Plastic*, 2020 WL 7027601, at *6; *Lowe*, 2012 WL 3776715, at *1.

Defendants do not dispute that they have failed to meet the heightened requirements of Rule 9(b); the Court thus strikes the seventeenth affirmative defense without prejudice. *See RBG Plastic*, 2020 WL 7027601, at *6 (striking affirmative defense without prejudice to allow defendant the opportunity to "provide a more fulsome set of allegations").

## CONCLUSION

For the foregoing reasons, the Court denies Kingsbridge's motion to dismiss Defendants' counterclaims [98] but grants judgment on the pleadings to Kingsbridge on Defendants' third, twelfth, thirteenth, and fourteenth affirmative defenses [99]. The Court strikes Defendants' seventeenth affirmative defense without prejudice [100].

Dated: September 17, 2026

SARA L. ELLIS
United States District Judge